IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSAN B. LONG,<br>    360 Newhouse II<br>    Syracuse University<br>    Syracuse, NY 13244-2100,<br><br>and<br><br>DAVID BURNHAM,<br>    1100 G Street NW, Suite 500<br>    Washington, DC 20005,<br><br>        Plaintiffs,<br><br>        v.<br><br>IMMIGRATION AND CUSTOMS ENFORCEMENT,<br>    500 12th Street, SW<br>    Washington, DC 20536,<br><br>        Defendant. | Civil Action No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This action is brought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), to produce records responsive to a FOIA request for certain data from the Enforcement Integrated Database (EID), an ICE-owned and operated electronic database which includes information related to investigations and operations conducted by ICE. For several years, Plaintiffs have requested, through FOIA, updates to the data contained in the same EID fields from ICE. Despite providing the same information at issue here in response to prior requests, ICE responded to Plaintiffs' recent request by stating that the requested EID information does not

exist and that producing it would constitute the "creation" of records. ICE's withholding of the records violates FOIA and DHS's FOIA regulations.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Venue is proper under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

3.  Plaintiff Susan B. Long is an Associate Professor of Managerial Statistics at the Martin J. Whitman School of Management at Syracuse University. Professor Long serves as Co-Director of the Transactional Records Access Clearinghouse (TRAC), a data gathering, data research, and data distribution organization associated with Syracuse University. TRAC was established in 1989 and has its main offices at Syracuse University and in Washington, D.C. The purpose of TRAC is to provide the American people and institutions of oversight, such as Congress, news organizations, and public interest groups, with comprehensive information about the staffing, spending, and enforcement activities of the federal government.

4.  Plaintiff David Burnham is Co-Director of TRAC, a long-time journalist, and an Associate Research Professor at the S.I. Newhouse School of Public Communications at Syracuse University. Burnham is based in Washington, D.C.

5.  Defendant ICE is an agency of the federal government of the United States and has possession of and control over the records Plaintiffs seek.

## LEGAL FRAMEWORK

6.  FOIA requires agencies to promptly disclose records responsive to a FOIA request. Records must be disclosed unless they fall under one of nine specific exemptions in the Act. 5 U.S.C. § 552(a)(3).

7. The Electronic Freedom of Information Act Amendments of 1996 clarified that "an agency record" subject to FOIA's disclosure requirements includes a record "maintained by an agency in any format, including an electronic format." 5 U.S.C. § 552(f). Releasing records from an electronic database does not constitute the creation of new records (which FOIA does not require). 5 U.S.C. § 552(a)(3)(B)-(D).

8. On November 22, 2016, DHS amended its FOIA regulations, effective December 22, 2016. *See* 81 Fed. Reg. 83,625 (2016). The amended regulation clarifies that "[c]reating a computer program that produces specific requested fields or records contained within a well-defined database structure is usually considered business as usual" and thus is required when necessary to respond to a FOIA request. *Id.* at 83,634-35 (to be codified at 44 C.F.R. § 5.4(i)(2)(ii)).

**FACTUAL BACKGROUND**

9. Immigration enforcement records are the source of a significant amount of the data TRAC gathers, regularly updates, and makes available on its public website, http://trac.syr.edu/immigration.

10. The Secure Communities Program is one of several that have been used to target noncitizens who have engaged in criminal activity for removal. Secure Communities, along with a temporary successor called the Priority Enforcement Program (PEP), have been in operation since 2008. PEP succeeded Secure Communities from November 20, 2014, until Secure Communities was reinstated by executive order on January 25, 2017.

11. Secure Communities and its successor depend upon the computerized automatic matching of fingerprint records submitted to the FBI by local law enforcement agencies. As a part of their regular routine, local law enforcement agencies fingerprint individuals when they are taken

into custody on local matters and submit these fingerprint records to the FBI in order to confirm the person's identity, and to obtain any criminal records the FBI has on that individual for local use.

12. The FBI automatically transmits the fingerprint records it receives on to DHS where that agency matches the fingerprints against its own databases and, when there is a match, determines whether the arrestee may be deportable. Based on ICE's priorities and resources, the agency may then issue an immigration detainer. The detainer is generally a request that the arresting agency hold the alien for a period of time beyond when the individual would be normally held to allow ICE to take that individual into its own custody.

13. In 2012, as part of its efforts to provide the public with information on immigration enforcement practices, Plaintiffs submitted a FOIA request to ICE to obtain anonymous case-by-case information about each person whom ICE had deported as a result of the Secure Communities Program, including any successor programs.

14. Since February 2013, Plaintiffs have requested this data on a regular monthly cycle. Each request asked for an itemized list of data items from a predetermined start date updated through the time of the request so that the agency's response would include the most recent time period. For example, in April 2016, Plaintiffs sought data from FY 2015 through April 2016, and in May 2016, Plaintiffs sought data from FY 2015 through May 2016. Over time, the number of fields of information requested grew as Plaintiffs learned of additional relevant fields of information that were included in the EID.

15. Starting in August of 2012, ICE began providing Plaintiffs with computer extracts furnished as Excel spreadsheet files derived from its EID in response to each of Plaintiffs' requests

for updated anonymous case-by-case data on deportations as a result of Secure Communities or its replacement. Such responses continued until January 2017.

16. In August 2016, Plaintiffs submitted their monthly FOIA request to ICE asking for data covering FY 2015 through August 2016. In its response dated January 4, 2017, (ICE tracking no. 2016-ICFO-54702), ICE omitted many of the data fields it had regularly provided in response to Plaintiffs' monthly requests. The response letter did not explain or even mention the omission of this data from the computer extract that ICE furnished.

17. By letter dated January 10, 2017, ICE responded to Plaintiffs' January 2016 FOIA request (ICE tracking no. 2016-ICFO-14043) covering data for FY 2015 through December 2015. Although the August 2016 request and the January 2016 request included 15 months of overlap, ICE's responses were different.

18. Specifically, among the data items that were provided in ICE's response to the January 2016 request that were not included in ICE's response to the August 2016 request are data responsive to the following 27 requests, which Plaintiffs refer to for the remainder of the Complaint as the "disappearing fields":

| Request Number | Requested Information from EID on Anonymous Case-by-Case Basis |
|---|---|
| 7 | Priority levels based upon November 20, 2014 announced criteria. |
| 17 | ICE fugitive (yes/no) and if yes: a. date of previous removal order b. whether previous removal order was an expedited removal order. |
| 18 | Prior removal or return (yes/no) and if yes: a. date of previous removal or return b. whether was a previous return rather than a previous removal. |
| 19 | EWI (yes/no) and if yes: a. date of previous entry without inspection b. number of previous recorded entry without inspections. |
| 20 | Visa Violator: a. overstayed visa (yes/no) b. other type of visa violator (yes/no). |

5

| | |
|---|---|
| **22** | Was I-247/I-247D issued for individual before removal (yes/no), and date issued. |
| **23** | Was I-247N issued for individual before removal (yes/no), and date issued. |
| **26** | City, county and state of the jail or facility in which the individual was detained prior where the I-247/I-247D/I-247N was sent. |
| **27** | Detainer Threat Level (or corresponding Notice Threat Level). |
| **43** | Charged with a crime (yes/no) [any charge, not restricted to convictions]. |
| **54** | Information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received). |
| **55** | Information on every charge not just the most serious for which a conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.)). |
| **57** | Aggravated felon (yes/no). |
| **60** | Latest program code before departure. |
| **61** | Case category at the time of latest arrest. |
| **62** | Program code at the time of latest arrest. |
| **63** | Date of latest arrest. |
| **64** | Name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation streamline, other border patrol program, 287(g), etc.). |
| **65** | The apprehension method associated with the latest apprehension. |
| **66** | Ordered removed by court, where order has become final (yes/no). |
| **67** | Date of latest court removal order that has become final. |
| **68** | Administratively ordered removed, where order has become final (yes/no). |
| **69** | Date of latest administrative removal order. |
| **70** | Reinstatement of prior removal order (yes/no). |
| **71** | Date of latest reinstatement of prior removal order. |
| **74** | Prior removal (yes/no). |
| **75** | Date of latest prior removal. |

19. Data in response to these requests had been regularly provided in ICE's earlier responses to Plaintiffs' monthly requests for these data items.

20. ICE's failure to continue to provide these requested fields of information impedes the public's ability to be informed about the government's immigration policies and actions.

21. On January 17, 2017, Plaintiffs filed an administrative appeal of ICE's January 4, 2017 response and requested that the "disappearing fields" be provided. The appeal noted:

> The vast majority of these information categories were not provided, and for most no explanation was given. … The agency had routinely provided records covering 60 information fields to exactly identical requests that Long and Burnham had submitted covering … part of FY 2015. The response to this request covering all of FY 2015 and part of FY 2016 provided only 33 fields. For example, past releases included such items as … the detainer prepare date, the apprehension method, records on all charges (not simply the most serious criminal conviction). This information was among the long list of requested fields of information that were not provided.

22. In a letter dated February 14, 2017, ICE responded to Plaintiffs' appeal and claimed that the "fields of information that were not provided are data fields that do not exist in the EID" and that ICE was not required to "create" records under FOIA:

> It is well settled that "the FOIA imposes no duty on the agency to create records," and "an agency is not required by FOIA to create a document that does not exist in order to satisfy a request." The FOIA also does not require agencies to conduct research by "answer[ing] questions disguised as a FOIA request" and that agencies are "not required, by FOIA or by any other statute, to dig out all the information that might exist, in whatever form or place it might be found, and to *create* a document that answers plaintiff's question."
>
> To the extent that a data field that you have requested exists in the EID, ICE conducted a search of the database to retrieve that data field and provided that information. To the extent that your FOIA request has asked questions, ICE has not answered those questions. If the information requested does not exist in a searchable form and would require ICE to create new records via calculations or conducting data analysis, ICE has not provided that information because the agency is not obligated to create new records in response to a FOIA request.

(Citations omitted.)

## CLAIM FOR RELIEF

23. ICE's determination constitutes the final decision by the Defendant with respect to Plaintiffs' August 2016 request. Plaintiffs have exhausted applicable administrative remedies.

24. ICE's refusal to provide the disappearing fields in response to the Plaintiffs' August 2016 request is a violation of FOIA and DHS's regulations implementing FOIA.

25. Under 5 U.S.C. § 552(a)(4), Plaintiffs are entitled to declaratory and injunctive relief compelling the release of the withheld agency records.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that this Court:

A. Declare that ICE's withholding of the requested records is unlawful;

B. Order ICE to provide the requested records to Plaintiffs within 14 days of the Court's order;

C. Award Plaintiffs their costs and reasonable attorney fees; and

D. Grant all other appropriate relief.

Dated: June 8, 2017   Respectfully submitted,

/s/ Sean M. Sherman
Sean M. Sherman (D.C. Bar No. 1046357)
Scott L. Nelson (D.C. Bar No. 413548)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*