## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| SUSAN B. LONG, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DAVID BURNHAM, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 17-1097 (APM) |
| | ) | |
| v. | ) | |
| | ) | |
| IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, | ) | |
| | ) | |
| Defendant. | ) | |

---

## DECLARATION OF SUSAN B. LONG

I, Susan B. Long, declare as follows:

1.      I am an Associate Professor of Managerial Statistics at the Martin J. Whitman School of Management at Syracuse University, and am one of the plaintiffs in this case.

2.      Along with plaintiff David Burnham, I serve as Co- Director of the Transactional Records Access Clearinghouse (TRAC), a data gathering, data research, and data distribution organization associated with Syracuse University. TRAC was established in 1989 and has its main offices at Syracuse University and in Washington, D.C.

3.      The purpose of TRAC is to provide the American people and institutions of oversight, such as Congress, news organizations, and public interest groups, with comprehensive information about the staffing, spending, and enforcement activities of the federal government. News organizations, public interest groups, businesses, scholars, lawyers, and the government itself are among those who rely on TRAC's data. Immigration enforcement records are the source

of a significant amount of the data TRAC gathers, regularly updates, and makes available on its public website, http://trac.syr.edu/immigration.

4.      My Co-Director and co-plaintiff David Burnham is a long-time journalist, and an Associate Research Professor at the S.I. Newhouse School of Public Communications at Syracuse University. Mr. Burnham is based in Washington, D.C.

5.      The Secure Communities Program implemented by defendant United States Immigration and Customs Enforcement (ICE) is one of several that have been used by the agency to target noncitizens for removal who have engaged in criminal activity.

6.      Secure Communities, along with a temporary successor called the Priority Enforcement Program (PEP), has been in operation since 2008. PEP succeeded Secure Communities from November 20, 2014, until Secure Communities was reinstated by executive order on January 25, 2017.

7.      Secure Communities and PEP have depended upon the computerized automatic matching of fingerprint records submitted to the Federal Bureau of Investigation (FBI) by local law enforcement agencies. As a part of their regular routine, local law enforcement agencies fingerprint individuals taken into custody on local matters and submit these fingerprint records to the FBI to confirm their identities, and to obtain any criminal records the FBI has on them for local use. The FBI now automatically transmits the fingerprint records it receives on to the Department of Homeland Security (DHS), ICE's parent agency, where that agency matches the fingerprints against its own databases and, when there is a match, determines whether the arrestee may be deportable. Based on ICE's priorities and resources, the agency may then issue an immigration detainer. The detainer is a request that the arresting agency hold the individual for a period of time

beyond when the individual would otherwise be held to allow ICE to take that individual into its own custody.

8.     ICE issues detainers using a form called an I-247. Over time, there have been variations to the I-247 form, which have sometimes resulted in different letter designations, such as I-247D and I-247N.

9.     Professor Burnham and I began requesting database records documenting ICE enforcement activities starting in 2006.

10.     In 2012, as part of TRAC's efforts to provide the public with information on immigration enforcement practices, we submitted a FOIA request to ICE to obtain anonymous case-by-case information about each person whom ICE had deported as a result of the Secure Communities Program.

11.     Since February 2013, we have requested this data on a regular monthly cycle. Each monthly request sought records from a predetermined start date updated through the most recently completed month at the time of the request. For example, in May 2016, we sought records from fiscal year (FY) 2015 through April 2016, and in June 2016, we sought data from FY 2015 through May 2016.

12.     Attached as Exhibit A is a true and correct copy of the monthly FOIA request we sent to ICE in early January 2016 covering data for FY 2015 through December 2015 (the December 2015 Request).

13.     Attached as Exhibit B is a true and correct copy of the monthly FOIA request we sent to ICE at the end of August 2016, covering data for FY 2015 through August 2016 (the August 2016 Request).

14.    With few exceptions, the specific requests in the August 2016 Request are substantively identical to the requests in the December 2015 Request. I created a chart that provides a side-by-side comparison of the requests. Attached as Exhibit C is a true and correct copy of that chart.

15.    ICE has refused to identify by their actual names or by other descriptors all the fields that exist in the EID. We have sought information including the names of all fields in the Enforcement Integrated Database ("EID") through separate FOIA requests, but the agency has withheld those records citing FOIA exemption 7(E). That dispute is also pending before this Court. *See Long v. ICE*, No. 14 Civ. 109 (D.D.C.).

16.    Thus, in order to obtain fields and data elements from the EID, our FOIA requests have included many numbered requests describing the fields and data elements that we seek from the EID. For example, for each individual deported, our requests have included a numbered request for the fields or data elements in the EID that contain the "[c]ity, county and state of the jail or facility in which the individual was detained prior where the [detainer] was sent." Over time, the number of requests for fields or data elements grew as we learned of additional relevant fields or data elements contained in the EID.

17.    Starting in August 2012, ICE began providing us with computer extracts furnished as Excel spreadsheet files derived from the EID in response to each of our monthly requests for updated data.

18.    ICE responded to the August 2016 Request on January 4, 2017. A true and correct copy of ICE's cover letter in response to the August 2016 Request is attached as Exhibit D. The response was accompanied by an Excel spreadsheet with 33 fields of data.

19.     ICE responded to the December 2015 Request on January 10, 2017. A true and correct copy of ICE's cover letter in response to the December 2015 Request is attached as Exhibit E. The response was accompanied by an Excel spreadsheet with 60 fields of data.

20.     Because ICE kept us unaware of the names of all the specific fields in the EID, data elements responsive to several of our numbered requests could be contained within a single field in the EID. For example, in the December 2015 Request we made separately numbered requests for any fields or data elements from the EID containing information related to whether each individual deported was "ordered removed by court, where the order has become final (yes/no)" (request 66) and whether that individual was "[a]dministratively ordered removed, where order has become final (yes/no)" (request 68). In response to these two separately numbered requests for fields or data elements contained in the EID, ICE provided only one field containing data from the EID that ICE's spreadsheet labeled "Final Order Yes No."

21.     Similarly, sometimes data elements responsive to a single numbered request could be contained within multiple fields or data elements in the EID. For example, in response to a numbered request in the December 2015 Request for the "[c]ity, county and state of the jail or facility in which the individual was detained prior where the [detainer] was sent" (request 26), ICE provided two fields with data from the EID, described in its Excel spreadsheet as "Detainer Facility City" and "Detainer Facility State."

22.     Over time, we learned that the EID contains many fields and data elements that indicate either the existence or nonexistence of some event or state of facts. We learned that these typically were labeled by ICE as "Yes No" fields. For example, we discovered from ICE's responses to requests identical to requests 66 and 68 of the December 2015 Request that the EID contains a field or data element ICE has described as "Final Order Yes No" that provides whether

there has been an order in an individual's deportation case that had become final. The field as provided in ICE's previous responses to our requests contains only data indicating the existence or nonexistence of such an order. Similarly, we discovered from ICE's responses to a request for a field or data element in the EID recording whether removed individuals had committed aggravated felonies that the EID contains a field or data element that ICE has referred to as "Aggravated Felony Yes No," recording the existence or nonexistence of such a felony.

23.     In order to describe the fields and data elements in the EID structured in this "Yes No" format, but without knowledge of the real names of EID fields, our numbered requests often describe fields and data elements by following ICE's "yes/no" pattern. For example, our requests have sought, for each individual deported, the fields or data elements contained in the EID that indicate whether the individual was an "aggravated felon (yes/no)," whether there had been a "prior removal (yes/no)," and whether there had been a "reinstatement of prior removal order (yes/no)." The numbered requests formatted in this pattern are not questions—indeed, none includes a question mark—and ICE regularly understood and responded to these numbered requests with the fields and data elements in the EID that indicated the existence or nonexistence of the specified event or state of facts.

24.     Thus, in response to requests 66 and 68 in the December 2015 Request—"ordered removed by court, where order has become final (yes/no)," and "administratively ordered removed, where order has become final (yes/no)"—ICE provided a responsive field with data from the EID it called "Final Order Yes No."

25.     Further, when a field exists in the EID with responsive information to a request, but the field is not in a yes/no format, ICE FOIA staff understood that because these requests were not questions, ICE should provide the field or data element matching the request because the presence

6

of information in the field or data element was equivalent to a "yes." Thus, for example, in response to request 70—"Reinstatement of prior removal order (yes/no)"—ICE provided a responsive field it called "Reinstated Final Order." And in response to requests 17 through 21 of the December 2015 Request, ICE provided a field labeled "Non-Criminal ICE Priorities," which included data that recorded whether the individual removed was an "immigration fugitive" (request 17), a "repeat immigration violator" (request 18), or an "EWI; Visa Violator or Overstay" (requests 19, 20, and 21).

26.    Fields and data elements in EID were sometimes used to record which checkbox was checked on an official ICE form giving the reason(s) for an enforcement action, or to record a particular category it used for management reporting purposes. The data elements in these fields might be recorded in the EID with "yes" or "no" entries, or "T" or "F" (for true or false), or yes would be indicated by a specific code (such as a "1" or a "Y" or a "Yes") while the absence of any entry would signify a no.

27.    Our monthly requests have consistently sought fields and data elements that exist in the EID, and not the creation of records. Until the events giving rise to this litigation, ICE had no trouble understanding that our requests reasonably described fields and data elements existing in the EID. In its response to the August 2016 Request, dated January 4, 2017, however, ICE omitted many of the EID fields it had regularly provided in response to our monthly requests covering earlier, overlapping time periods. Indeed, less than a week later, on January 10, 2017, ICE provided those very fields in response to the same requests in our December 2015 Request.

28.    For example, in the August 2016 Request, as in prior requests including the December 2015 Request, we included a request (request 65) seeking the fields or data elements in the EID that record information about the "apprehension method associated with the latest

apprehension" for each individual removed. In responses to prior requests, including the December 2015 Request, ICE recognized that this request described fields or data elements that exist in the EID, and ICE provided a field referred to in ICE's spreadsheet as "Latest Apprehension Method" in response. In response to the August 2016 Request, ICE did not provide the field "Latest Apprehension Method" or any other responsive fields or data elements.

29.    Similarly, request 60 in the December 2015 and August 2016 Requests sought the fields or data elements in the EID that record the "latest program code before departure" for each individual. In response to the request in the December 2015 Request and other prior requests, ICE recognized that this request described fields or data elements that exist in the EID, and ICE provided a field referred to in ICE's spreadsheet as "Removal Current Program Code" in response. In response to the August 2016 Request, ICE did not provide the field "Removal Current Program Code" or any other responsive fields or data elements.

30.    Request 22 of the August 2016 Request sought the fields or data elements in the EID containing records related to whether, for each individual removed, there "[w]as [a detainer] issued for individual before removal (yes/no), and date issued." In response to the corresponding identical requests in our past monthly FOIA requests, including the December 2015 Request, ICE understood that we were seeking the fields or data elements in the EID listing the date of any detainers prepared, and ICE routinely provided a field with data from the EID called "Detainer Prepare Date." In response to the August 2016 Request, ICE did not provide the field "Detainer Prepare Date" or any other responsive field or data elements.

31.    All told, even though the period covered by the requests overlapped for the 15 months from the beginning of FY 2015 through December 2015, 27 fields containing data elements responsive to 25 of our numbered requests were provided in ICE's response to the December 2015

Request but were not included in ICE's response to the August 2016 Request. We refer to these 27 fields as the "disappearing fields." Like "Latest Apprehension Method," "Removal Current Program Code," and "Detainer Prepare Date," each of the disappearing fields corresponds with requests in the December 2015 and August 2016 Requests that reasonably describe fields and data elements that exist in the EID.

32.     I have compiled a table of the disappearing fields that were omitted from the response to the August 2016 Request but provided in the response to the December 2015 Request, as well as the specific numbered requests to which those fields were responsive. A true and correct copy of the table is attached as Exhibit F.

33.     ICE claims that it provided records in response to request 63 for "date of latest arrest." *See* Jones Decl. ¶ 42. Previously, ICE provided a field it called "Latest Apprehension Date" in response to that request, but ICE omitted that field from its response to the August 2016 Request. Although we did receive a field labeled "Arrest Date," our comparison of the "Arrest Date" field with the "Latest Apprehension Date" field has led us to conclude that the two are not coextensive because: (1) there is nothing to indicate that it is the "latest" arrest date, as opposed to simply one arrest date among others, (2) other fields in the EID use the terms "arrest" and "apprehension," indicating that they may have different meanings in the EID, and (3) the data in the "Latest Apprehension Date" field from earlier requests that overlap with the August 2016 Request does not match the data in the "Arrest Date" field. Contrary to ICE's claim, we do not believe that ICE has provided fields or data elements responsive to this request.

34.     ICE claims that it provided records in response to request 71 for the "Date of latest reinstatement of prior removal order" "in response to other requested items." Jones Decl. ¶¶ 47-48. Contrary to ICE's claim, the data provided by ICE in response to our requests does  not provide

the responsive information ICE earlier provided with respect to this request, which consisted of a field ICE called "Reinstated Final Order Date."

35. The disappearing fields had been regularly provided in ICE's responses to corresponding requests in our prior monthly requests.

36. For example, with respect to our request for the fields or data elements in the EID reflecting, for each individual removed, "[i]nformation on every charge not just the most serious for which a conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.))" (request 55), ICE has historically provided a number of fields with data from the EID, including Criminal Charge, Criminal Charge Code, Criminal Charge Date, Criminal Charge Status, Criminal Conviction Date, Criminal Conviction Sentence Days, Criminal Conviction Sentence Months, and Criminal Conviction Sentence Years. In response to the August 2016 Request, ICE did not provide these fields or any other responsive fields or data elements.

37. Similarly, with respect to our request for the fields or data elements in the EID related to whether a removed individual had a "prior removal (yes/no)" (requests 74), in the past, ICE provided a field with data from the EID labeled "Prior Removal." Again, this field was omitted from the response to the August 2016 Request and ICE did not provide any other responsive fields or data elements.

38. The response letter to the August 2016 Request did not explain or even mention the omission of the disappearing fields from the Excel spreadsheet that ICE furnished.

39. On January 17, 2017, we filed an appeal of ICE's response to the August 2016 Request with the agency. A true and correct copy of that appeal is attached as Exhibit G.

40.     In a letter dated February 14, 2017, ICE denied our appeal. A true and correct copy of ICE's letter is attached as Exhibit H.

41.     On June 8, 2017, we filed the complaint in this action alleging that ICE's failure to provide the disappearing fields violated FOIA.

42.     ICE filed its answer on July 27, 2017.

43.     On November 3, 2017, ICE moved for summary judgment.

44.     We have continued to submit requests for the disappearing fields on a monthly basis.  We now specify in the monthly requests that if ICE contends calculations are required then ICE should provide the fields and data elements that ICE would use for these calculations. A true and correct copy of our request dated February 7, 2017 is attached as Exhibit I.

45.     Despite the revised requests, ICE continues to respond in the same manner as the way it responded to the August 2016 Request and has provided neither the disappearing fields nor any alternative responsive fields. A true and correct copy of ICE's response to the February 7, 2017 request is attached as Exhibit J.

46.     On May 9, 2017 we filed a complaint against ICE in the Northern District of New York related to other, partially overlapping FOIA requests for fields and data elements contained within the EID covering the period from FY 2015 through November 2016. *Long v. U.S. ICE*, No. 17 Civ. 506 (N.D.N.Y. 2017) (the New York case). A true and correct copy of the complaint in the New York case is attached as Exhibit K.

47.     On November 8, 2017, ICE moved for summary judgment in the New York case. A true and correct copy of ICE's memorandum of law in support of ICE's motion for summary judgment in the New York case is attached as Exhibit L.

48.    A true and correct copy of the declaration of Marla Jones, submitted in support of ICE's motion for summary judgment in the New York case is attached as Exhibit M.

49.    Exhibit 3 in support of ICE's motion for summary judgment in the New York case was an Excel spreadsheet of fields from the EID that ICE had previously provided by letter dated January 10, 2017, in response to our FOIA request dated November 30, 2016 for "the latest anonymous data concerning Form I-247/I-247D requests issued for FY 2015 through November 2016." I have prepared a chart of the fields ICE provided in this response. A true and correct copy of the chart is attached as Exhibit N.

50.    Exhibit 4 in support of ICE's motion for summary judgment in the New York case was an Excel spreadsheet of fields from the EID that ICE had previously provided by letter dated October 6, 2017, in response to our FOIA request dated November 30, 2016 for "the latest anonymous data concerning Form I-247N requests issued for November 2016." I have prepared a chart of the fields ICE provided in this response. A true and correct copy of the chart is attached as Exhibit O.

51.    In the New York case, in response to a request identical to request 57 for "aggravated felon (yes/no)," ICE provided a field with data from the EID labeled "Aggravated Felony Yes No."

52.    In the New York case, in response to requests for the "Date Form I-247D was issued" and the "Date Form I-247N was issued," ICE provided a field labeled "Prepare Date" referring to these detainers.

53.    On May 17, 2010, I submitted a FOIA request to ICE for anonymous alien-by-alien data covered by the Enforcement Case Tracking System and related modules for individuals on whom charging documents were issued from October 1, 2004 to the date of the request. On April 5,

2012, ICE provided its third and final response to that request, with data from the EID for calendar years 2008 through 2010. A true and correct copy of ICE's cover letter in response is attached as Exhibit P.

    54.    The data provided from the EID in response to the May 17, 2010 request for calendar years 2008 through 2010 was provided as an Excel spreadsheet. The spreadsheet included a field called "person relationship," and within that field were many people identified as "spouse." A true and correct copy of a relevant excerpt of that Excel spreadsheet is attached as Exhibit Q.

    Executed December 8, 2017, in Syracuse, New York.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Susan B. Long

# EXHIBIT A

Dear FOIA Director Pavlik-Keenan:

Up until the issuance of the November 20, 2014 memorandum from Acting ICE
Director Thomas S. Winkowski (Subject: Secure Communities) each month, ICE
posted on its public website monthly statistics on removals and returns
derived from Secure Communities. (See, for example,
http://www.ice.gov/doclib/foia/sc-stats/nationwide_interop_stats-fy2013-to-
date.pdf.) While Secure Communities is being discontinued, according to the
November 20th memorandum, ICE is putting in place a program that will
continue to rely on IDENT matches with fingerprint-based biometric data
submitted to the Federal Bureau of Investigation.

Under the provisions of the Freedom of Information Act we are requesting the
latest anonymous case-by-case information on each removal and return for FY
2015 through December 2015 that was the result of such IDENT/IAFIS
interoperability matches whether carried out under Secure Communities or
under the program that is replacing Secure Communities. We further ask that
this be provided in machine-readable form, such as in a spreadsheet or csv
file. We further asked to be separately provided with the complete
definitions of any codes used originally to record data in each field, and
the code they correspond with.

For each individual removed/returned, we ask to be provided with the
following items of information:

1. state and county that originated the fingerprint submission resulting in
Alien IDENT Match
2. law enforcement agency that originated the fingerprint submission
resulting in Alien IDENT Match
3. date of submission that resulted in Alien IDENT Match
4. LESC Level (LESC1,LESC2, or LESC3)
5. ICE Area of Responsibility (AOR)
6. Secure Communities seriousness of criminal conviction (L1,L2,L3)
7. Priority levels based upon November 20, 2014 announced criteria
8. date of departure
9. port of departure
10. country departed to
11. category of departure (voluntary return, voluntary departure, removal,
withdrawal under docket control, etc.
12. administrative removal
13. expedited removal
14. reinstatement of previous removal order
15. return
16. voluntarily returned to their home country
17. ICE fugitive (yes/no)
18. prior removal or return (yes/no)
19. EWI (yes/no)
20. Visa Violator (yes/no)
21. Overstayed Visa (yes/no)
22. Was detainer issued for individual before removal (yes/no)
23. Date detainer issued
24. Name of the jail or facility in which the individual was detained where

the detainer was sent
25. Code of the jail or facility in which the individual was detained where the detainer was sent
26. City, county and state of the jail or facility in which the individual was detained prior where the detainer was sent
27. Detainer Threat Level
28. Was person serving a sentence at time detainer issued (yes/no)
29. gender
30. country of birth
31. country of citizenship
32. age
33. year of birth
34. at any time prior to departure a legal permanent resident (yes/no)
35. date of original entry
36. date of last entry
37. original entry status
38. last entry status
39. earliest date reflecting presence in the U.S.
40. U.S. citizen spouse (yes/no)
41. U.S. citizen parents (yes/no)
42. U.S. citizen child (yes/no)
43. charged with a crime (yes/no) [any charge, not restricted to convictions]
44. most serious criminal charge [any charge, not restricted to convictions]
45. date of most serious criminal charge [any charge, not restricted to convictions]
46. status of most serious criminal charge [any charge, not restricted to convictions]
47. NCIC code for most serious criminal charge [any charge, not restricted to convictions]
48. convicted of a crime (yes/no)
49. level of most serious criminal conviction (felony, misdemeanor, citation, etc.)
50. most serious criminal conviction offense
51. date of most serious criminal conviction
52. sentence for most serious criminal conviction
53. NCIC code for most serious criminal conviction offense
54. information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received)
55. information on every charge not just the most serious for which a conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.))
56. ICE Threat Level
57. aggravated felon (yes/no)
58. latest processing disposition code before departure
59. latest case category before departure
60. latest program code before departure
61. case category at time of latest arrest
62. program code at time of latest arrest
63. date of latest arrest
64. name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation streamline, other border patrol

program, 287(g), etc.)
65. the apprehension method associated with the latest apprehension
66. ordered removed by court, where order has become final (yes/no)
67. date of latest court removal order that has become final
68. administratively ordered removed, where order has become final (yes/no)
69. date of latest administrative removal order
70. reinstatement of prior removal order (yes/no)
71. date of latest reinstatement of prior removal order
72. most serious charge code for latest removal
73. most serious charge section for latest removal
74. prior removal (yes/no)
75. date of latest prior removal
76. EID sequence number used to uniquely identify each individual
77. Detainer ID so detainer record can be associated with DHS data on other actions related to this detainer

Form and format requested. We ask that the information relating to the same alien be provided in a form and format in which all information relating the same alien can be readily associated. We also ask that the data be released in an electronic format retaining the data structure such as in a csv file or xls file. In the event the agency is not willing to provide the information in the form and format we have requested, we ask that prior to creating the extract that we be consulted for our further input concerning any alternative form or format that is proposed.

Definitions of all codes used in these tables be provided. A number of the requested fields utilize some sort of abbreviation or code to record the information. Our FOIA request includes a request for a current copy of any code files or other records which translate each code into its corresponding meaning.

Supplemental FOIA request for records used in making copies. We further specifically ask under the Freedom of Information Act to be provided with copies of all records indicating the method used -- including but not limited to scripts, commands, batch files, programs and queries -- to produce the copies of the information requested in this letter. We further request any outputs and logs prepared during the process of running these scripts/commands/programs and queries, or prepared to check that the copies are complete and accurate in all particulars.

We request that we be classified as educational and media requestors and request a full waiver of fees. As to the basis for our classification and fee waiver requests, we refer you to -- and incorporate by reference -- the extensive information we previously submitted as part of our similar March 31, 2015 request for case-by-case information on removals and returns for FY 2015 through March 2015 resulting from use of IDENT/IAFIS interoperability. Please let us know if you would like us to furnish a copy.

Finally, we call your attention to the strict time limits set for furnishing requested records under 5 U.S.C. 552. We would very much appreciate your prompt action and response on this request. Should you have any questions, or if we can be of any assistance, please feel free to contact us. You can reach Long at (315) 443-3563 or by email at suelong@syr.edu. Thank you very much.

Susan B. Long and David Burnham, Professors and TRAC Co-directors
Transactional Records Access Clearinghouse (TRAC)
Suite 360 Newhouse II
Syracuse University
Syracuse, New York 13244
315-443-3563
http://trac.syr.edu

# EXHIBIT B

Dear FOIA Director Pavlik-Keenan:

Up until the issuance of the November 20, 2014 memorandum from Acting ICE Director Thomas S. Winkowski (Subject: Secure Communities) each month, ICE posted on its public website monthly statistics on removals and returns derived from Secure Communities. (See, for example, http://www.ice.gov/doclib/foia/sc-stats/nationwide_interop_stats-fy2013-to-date.pdf.) While Secure Communities is being discontinued, according to the November 20th memorandum, ICE is putting in place a program that will continue to rely on IDENT matches with fingerprint-based biometric data submitted to the Federal Bureau of Investigation.

Under the provisions of the Freedom of Information Act we are requesting the latest anonymous case-by-case information on each removal and return for FY 2015 through August 2016 that was the result of such IDENT/IAFIS interoperability matches whether carried out under Secure Communities or under the program that is replacing Secure Communities. We further ask that this be provided in machine-readable form, such as in a spreadsheet or csv file. We further asked to be separately provided with the complete definitions of any codes used originally to record data in each field, and the code they correspond with.

For each individual removed/returned, we ask to be provided with the following items of information:

1. state and county that originated the fingerprint submission resulting in Alien IDENT Match
2. law enforcement agency that originated the fingerprint submission resulting in Alien IDENT Match
3. date of submission that resulted in Alien IDENT Match
4. LESC Level (LESC1,LESC2, or LESC3)
5. ICE Area of Responsibility (AOR)
6. Secure Communities seriousness of criminal conviction (L1,L2,L3)
7. Priority levels based upon November 20, 2014 announced criteria
8. date of departure
9. port of departure
10. country departed to
11. category of departure (voluntary return, voluntary departure, removal, withdrawal under docket control, etc.
12. administrative removal
13. expedited removal
14. reinstatement of previous removal order
15. return
16. voluntarily returned to their home country
17. ICE fugitive (yes/no) and if yes:
a. date of previous removal order
b. whether previous removal order was an expedited removal order
18. prior removal or return (yes/no) and if yes:
a. date of previous removal or return
b. whether was a previous return rather than a previous removal
19. EWI (yes/no) and if yes:
a. date of previous entry without inspection
b. number of previous recorded entry without inspections

20. Visa Violator:
a. overstayed visa(yes/no)
b. other type of visa violator (yes/no)
21. Custody history:
a. ever been in ICE custody (yes/no)
b. date was last detained by ICE
c. reason last ICE detention ended (release reason)
d. date was last in ICE ATD custody
e. reason last ATD custody ended
22. Was I-247/I-247D issued for individual before removal (yes/no), and date issued
23. Was I-247N issued for individual before removal (yes/no), and date issued
24. Name of the jail or facility in which the individual was detained where the I-247/I-247D/I-247N was sent
25. Code of the jail or facility in which the individual was detained where the I-247/I-247D/I-247N was sent
26. City, county and state of the jail or facility in which the individual was detained prior where the I-247/I-247D/I-247N was sent
27. Detainer Threat Level (or corresponding Notice Threat Level)
28. Was person serving a sentence at time I-247/I-247D/I-247N issued (yes/no)
29. gender
30. country of birth
31. country of citizenship
32. age
33. year of birth
34. at any time prior to departure a legal permanent resident (yes/no)
35. date of original entry
36. date of last entry
37. original entry status
38. last entry status
39. earliest recorded date reflecting presence in the U.S.
40. U.S. citizen spouse (yes/no)
41. U.S. citizen parents (yes/no)
42. U.S. citizen child (yes/no)
43. charged with a crime (yes/no) [any charge, not restricted to convictions]
44. most serious criminal charge [any charge, not restricted to convictions]
45. date of most serious criminal charge [any charge, not restricted to convictions]
46. status of most serious criminal charge [any charge, not restricted to convictions]
47. NCIC code for most serious criminal charge [any charge, not restricted to convictions]
48. convicted of a crime (yes/no)
49. level of most serious criminal conviction (felony, misdemeanor, citation, etc.)
50. most serious criminal conviction offense
51. date of most serious criminal conviction
52. sentence for most serious criminal conviction
53. NCIC code for most serious criminal conviction offense
54. information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received)
55. information on every charge not just the most serious for which a

conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.))
56. ICE Threat Level
57. aggravated felon (yes/no)
58. latest processing disposition code before departure
59. latest case category before departure
60. latest program code before departure
61. case category at time of latest arrest
62. program code at time of latest arrest
63. date of latest arrest
64. name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation streamline, other border patrol program, 287(g), etc.)
65. the apprehension method associated with the latest apprehension
66. ordered removed by court, where order has become final (yes/no)
67. date of latest court removal order that has become final
68. administratively ordered removed, where order has become final (yes/no)
69. date of latest administrative removal order
70. reinstatement of prior removal order (yes/no)
71. date of latest reinstatement of prior removal order
72. most serious charge code for latest removal
73. most serious charge section for latest removal
74. prior removal (yes/no)
75. date of latest prior removal
76. EID sequence number used to uniquely identify each individual
77. Detainer or Notice ID so I-247/I-247D/I-247N record can be associated with DHS data on other actions related to this detainer/notice.

Form and format requested. We ask that the information relating to the same alien be provided in a form and format in which all information relating the same alien can be readily associated. We also ask that the data be released in an electronic format retaining the data structure such as in a csv file or xls file. In the event the agency is not willing to provide the information in the form and format we have requested, we ask that prior to creating the extract that we be consulted for our further input concerning any alternative form or format that is proposed.
Definitions of all codes used in these tables be provided. A number of the requested fields utilize some sort of abbreviation or code to record the information. Our FOIA request includes a request for a current copy of any code files or other records which translate each code into its corresponding meaning.

Supplemental FOIA request for records used in making copies. We further specifically ask under the Freedom of Information Act to be provided with copies of all records indicating the method used -- including but not limited to scripts, commands, batch files, programs and queries -- to produce the copies of the information requested in this letter. We further request any outputs and logs prepared during the process of running these scripts/commands/programs and queries, or prepared to check that the copies are complete and accurate in all particulars.

We request that we be classified as educational and media requestors and

request a full waiver of fees. As to the basis for our classification and fee waiver requests, we refer you to -- and incorporate by reference -- the extensive information we previously submitted as part of our similar March 31, 2015 request for case-by-case information on removals and returns for FY 2015 through March 2015 resulting from use of IDENT/IAFIS interoperability. Please let us know if you would like us to furnish a copy.

Finally, we call your attention to the strict time limits set for furnishing requested records under 5 U.S.C. 552. We would very much appreciate your prompt action and response on this request. Should you have any questions, or if we can be of any assistance, please feel free to contact us. You can reach Long at (315) 443-3563 or by email at suelong@syr.edu. Thank you very much.

Susan B. Long and David Burnham, Professors and TRAC Co-directors
Transactional Records Access Clearinghouse (TRAC)
Suite 360 Newhouse II
Syracuse University
Syracuse, New York 13244
315-443-3563
http://trac.syr.edu

# EXHIBIT C

| Side-by-Side Comparison of December 2015 Request and August 2016 Request | |
| --- | --- |
| **December 2015 Request** | **August 2016 Request** |
| 1. state and county that originated the fingerprint submission resulting in Alien IDENT Match | 1. state and county that originated the fingerprint submission resulting in Alien IDENT Match |
| 2. law enforcement agency that originated the fingerprint submission resulting in Alien IDENT Match | 2. law enforcement agency that originated the fingerprint submission resulting in Alien IDENT Match |
| 3. date of submission that resulted in Alien IDENT Match | 3. date of submission that resulted in Alien IDENT Match |
| 4. LESC Level (LESC1,LESC2, or LESC3) | 4. LESC Level (LESC1,LESC2, or LESC3) |
| 5. ICE Area of Responsibility (AOR) | 5. ICE Area of Responsibility (AOR) |
| 6. Secure Communities seriousness of criminal conviction (L1,L2,L3) | 6. Secure Communities seriousness of criminal conviction (L1,L2,L3) |
| 7. Priority levels based upon November 20, 2014 announced criteria | 7. Priority levels based upon November 20, 2014 announced criteria |
| 8. date of departure | 8. date of departure |
| 9. port of departure | 9. port of departure |
| 10. country departed to | 10. country departed to |
| 11. category of departure (voluntary return, voluntary departure, removal, withdrawal under docket control, etc. | 11. category of departure (voluntary return, voluntary departure, removal, withdrawal under docket control, etc. |
| 12. administrative removal | 12. administrative removal |
| 13. expedited removal | 13. expedited removal |
| 14. reinstatement of previous removal order | 14. reinstatement of previous removal order |
| 15. return | 15. return |
| 16. voluntarily returned to their home country | 16. voluntarily returned to their home country |
| 17. ICE fugitive (yes/no) | 17. ICE fugitive (yes/no) and if yes: |
| **[item not included in December 2015 Request]** | a. date of previous removal order |
| **[item not included in December 2015 Request]** | b. whether previous removal order was an expedited removal order |
| 18. prior removal or return (yes/no) | 18. prior removal or return (yes/no) and if yes: |
| **[item not included in December 2015 Request]** | a. date of previous removal or return |
| **[item not included in December 2015 Request]** | b. whether was a previous return rather than a previous removal |
| 19. EWI (yes/no) | 19. EWI (yes/no) and if yes: |
| **[item not included in December 2015 Request]** | a. date of previous entry without inspection |
| **[item not included in December 2015 Request]** | b. number of previous recorded entry without inspections |
| 20. Visa Violator (yes/no) | 20. Visa Violator: |
| 21. Overstayed Visa (yes/no) | a. overstayed visa(yes/no) |

| | |
|---|---|
| **[item not included in December 2015 Request]** | b. other type of visa violator (yes/no) |
| **[item not included in December 2015 Request]** | 21. Custody history: |
| **[item not included in December 2015 Request]** | a. ever been in ICE custody (yes/no) |
| **[item not included in December 2015 Request]** | b. date was last detained by ICE |
| **[item not included in December 2015 Request]** | c. reason last ICE detention ended (release reason) |
| **[item not included in December 2015 Request]** | d. date was last in ICE ATD custody |
| **[item not included in December 2015 Request]** | e. reason last ATD custody ended |
| 22. Was detainer issued for individual before removal (yes/no) | 22. Was I-247/I-247D issued for individual before removal (yes/no), and date issued |
| 23. Date detainer issued | 23. Was I-247N issued for individual before removal (yes/no), and date issued |
| 24. Name of the jail or facility in which the individual was detained where the detainer was sent | 24. Name of the jail or facility in which the individual was detained where the I-247/I-247D/I-247N was sent |
| 25. Code of the jail or facility in which the individual was detained where the detainer was sent | 25. Code of the jail or facility in which the individual was detained where the I-247/I-247D/I-247N was sent |
| 26. City, county and state of the jail or facility in which the individual was detained prior where the detainer was sent | 26. City, county and state of the jail or facility in which the individual was detained prior where the I-247/I-247D/I-247N was sent |
| 27. Detainer Threat Level | 27. Detainer Threat Level (or corresponding Notice Threat Level) |
| 28. Was person serving a sentence at time detainer issued (yes/no) | 28. Was person serving a sentence at time I-247/I-247D/I-247N issued (yes/no) |
| 29. gender | 29. gender |
| 30. country of birth | 30. country of birth |
| 31. country of citizenship | 31. country of citizenship |
| 32. age | 32. age |
| 33. year of birth | 33. year of birth |
| 34. at any time prior to departure a legal permanent resident (yes/no) | 34. at any time prior to departure a legal permanent resident (yes/no) |
| 35. date of original entry | 35. date of original entry |
| 36. date of last entry | 36. date of last entry |
| 37. original entry status | 37. original entry status |
| 38. last entry status | 38. last entry status |
| 39. earliest date reflecting presence in the U.S. | 39. earliest recorded date reflecting presence in the U.S. |

| | |
|---|---|
| 40. U.S. citizen spouse (yes/no) | 40. U.S. citizen spouse (yes/no) |
| 41. U.S. citizen parents (yes/no) | 41. U.S. citizen parents (yes/no) |
| 42. U.S. citizen child (yes/no) | 42. U.S. citizen child (yes/no) |
| 43. charged with a crime (yes/no) [any charge, not restricted to convictions] | 43. charged with a crime (yes/no) [any charge, not restricted to convictions] |
| 44. most serious criminal charge [any charge, not restricted to convictions] | 44. most serious criminal charge [any charge, not restricted to convictions] |
| 45. date of most serious criminal charge [any charge, not restricted to convictions] | 45. date of most serious criminal charge [any charge, not restricted to convictions] |
| 46. status of most serious criminal charge [any charge, not restricted to convictions] | 46. status of most serious criminal charge [any charge, not restricted to convictions] |
| 47. NCIC code for most serious criminal charge [any charge, not restricted to convictions] | 47. NCIC code for most serious criminal charge [any charge, not restricted to convictions] |
| 48. convicted of a crime (yes/no) | 48. convicted of a crime (yes/no) |
| 49. level of most serious criminal conviction (felony, misdemeanor, citation, etc.) | 49. level of most serious criminal conviction (felony, misdemeanor, citation, etc.) |
| 50. most serious criminal conviction offense | 50. most serious criminal conviction offense |
| 51. date of most serious criminal conviction | 51. date of most serious criminal conviction |
| 52. sentence for most serious criminal conviction | 52. sentence for most serious criminal conviction |
| 53. NCIC code for most serious criminal conviction offense | 53. NCIC code for most serious criminal conviction offense |
| 54. information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received)<br><br>55. information on every charge not just the most serious for which a conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.)) | 54. information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received)<br><br>55. information on every charge not just the most serious for which a conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.)) |
| 56. ICE Threat Level | 56. ICE Threat Level |
| 57. aggravated felon (yes/no) | 57. aggravated felon (yes/no) |
| 58. latest processing disposition code before departure | 58. latest processing disposition code before departure |
| 59. latest case category before departure | 59. latest case category before departure |
| 60. latest program code before departure | 60. latest program code before departure |
| 61. case category at time of latest arrest | 61. case category at time of latest arrest |

| | |
|---|---|
| 62. program code at time of latest arrest | 62. program code at time of latest arrest |
| 63. date of latest arrest | 63. date of latest arrest |
| 64. name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation streamline, other border patrol program, 287(g), etc.) | 64. name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation streamline, other border patrol program, 287(g), etc.) |
| 65. the apprehension method associated with the latest apprehension | 65. the apprehension method associated with the latest apprehension |
| 66. ordered removed by court, where order has become final (yes/no) | 66. ordered removed by court, where order has become final (yes/no) |
| 67. date of latest court removal order that has become final | 67. date of latest court removal order that has become final |
| 68. administratively ordered removed, where order has become final (yes/no) | 68. administratively ordered removed, where order has become final (yes/no) |
| 69. date of latest administrative removal order | 69. date of latest administrative removal order |
| 70. reinstatement of prior removal order (yes/no) | 70. reinstatement of prior removal order (yes/no) |
| 71. date of latest reinstatement of prior removal order | 71. date of latest reinstatement of prior removal order |
| 72. most serious charge code for latest removal | 72. most serious charge code for latest removal |
| 73. most serious charge section for latest removal | 73. most serious charge section for latest removal |
| 74. prior removal (yes/no) | 74. prior removal (yes/no) |
| 75. date of latest prior removal | 75. date of latest prior removal |
| 76. EID sequence number used to uniquely identify each individual | 76. EID sequence number used to uniquely identify each individual |
| 77. Detainer ID so detainer record can be associated with DHS data on other actions related to this detainer | 77. Detainer or Notice ID so I-247/I-247D/I-247N record can be associated with DHS data on other actions related to this detainer/notice. |

# EXHIBIT D

*Freedom of Information Act Office*

**U.S. Department of Homeland Security**
500 12ᵗʰ St SW, Stop 5009
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

January 04, 2017

Recd 1-11-17

Susan Long
Transactional RecordsAccess Clearinghouse
Syracuse University
360 Newhouse II
Syracuse, NY 13244-2100

**RE:    ICE FOIA Case Number 2016-ICFO-54702**

Dear Ms. Long:

This letter is the final response to your Freedom of Information Act (FOIA) request to U.S.
Immigration and Customs Enforcement (ICE), dated August 31, 2016, for the latest anonymous
case-by-case information on each removal and return for FY 2015 through August 2016 that was
the result of such IDENT/IAFIS interoperability matches whether carried out under Secure
Communities or under the program that is replacing Secure Communities (see attached request
for 77 specific details).

ICE has considered your request under both the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5
U.S.C. § 552a. Information about an individual that is maintained in a Privacy Act system of
records may be accessed by that individual[1] unless the agency has exempted the system of
records from the access provisions of the Privacy Act.[2]

A search of the ICE Office of Enforcement and Removal Operations (ERO) for records
responsive to your request produced 1 Excel spreadsheet that is responsive to your request. After
review of those documents, ICE has determined that portions of the 1 Excel spreadsheet will be
withheld pursuant to Exemptions (b)(6), (b)(7)(C) and (b)(7)(E) of the Privacy Act and FOIA as
described below.

ICE has applied FOIA Exemptions 6 and 7(C) to protect from disclosure the names, e-mail
addresses, and phone numbers of DHS employees contained within the documents.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the
release of which would cause a clearly unwarranted invasion of personal privacy. This requires a
balancing of the public's right to disclosure against the individual's right to privacy. The privacy
interests of the individuals in the records you have requested outweigh any minimal public

---

[1] 5 U.S.C. § 552a(d)(1).
[2] 5 U.S.C. §§ 552a(d)(5), (j), and (k).

interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**FOIA Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination.

ICE has applied FOIA Exemption 7(E) to protect from disclosure internal agency case numbers contained within the document.

**FOIA Exemption 7(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. I have determined that disclosure of certain law enforcement sensitive information contained within the responsive records could reasonably be expected to risk circumvention of the law. Additionally, the techniques and procedures at issue are not well known to the public.

If you are not satisfied with the response to this request, you have the right to appeal following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9. Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter, to:

> U.S. Immigration and Customs Enforcement
> Office of the Principal Legal Advisor
> U.S. Department of Homeland Security
> 500 12th Street,, S.W., Mail Stop 5900
> Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Provisions of the FOIA and Privacy Act allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge.[3]

---

[3] 6 CFR § 5.11(d)(4).

If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office refer to FOIA case number **2016-ICFO-54702**. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

*Howard Thomas*
*for*

Catrina M. Pavlik-Keenan
FOIA Officer

Enclosure(s):  1 Excel Spreadsheet

# EXHIBIT E



*Freedom of Information Act Office*

**U.S. Department of Homeland Security**
500 12th St SW, Stop 5009
Washington, DC 20536

**U.S. Immigration
and Customs
Enforcement**

January 10, 2017                    1/10/2017. sbl

Susan Long
Transactional RecordsAccess Clearinghouse
Syracuse University
360 Newhouse II
Syracuse, NY 13244-2100

**RE:   ICE FOIA Case Number 2016-ICFO-14043**

Dear Ms. Long:

This letter is the final response to your Freedom of Information Act (FOIA) request to U.S.
Immigration and Customs Enforcement (ICE), dated January 4, 2016. You have requested
copies of the following records:

the latest anonymous case-by-case information on each removal and return for FY 2015 through
December 2015 that was the result of such IDENT/IAFIS interoperability matches whether
carried out under Secure Communities or under the program that is replacing Secure
Communities (see attached request for 77 specific details)

ICE has considered your request under the FOIA, 5 U.S.C. § 552.

A search of the ICE Office of Enforcement and Removal Operations (ERO) for records
responsive to your request produced 1 Excel workbook that is responsive to your request. After
review of the workbook, I have determined that portions of the workbook will be withheld
pursuant to Exemptions of the FOIA as described below.

ICE has applied FOIA Exemptions 6 and 7(C) to protect from disclosure the dates of birth and
identification numbers of DHS employees and third party individuals contained within the
documents.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the
release of which would cause a clearly unwarranted invasion of personal privacy. This requires a
balancing of the public's right to disclosure against the individual's right to privacy. The privacy
interests of the individuals in the records you have requested outweigh any minimal public
interest in disclosure of the information. Any private interest you may have in that information
does not factor into the aforementioned balancing test.

**FOIA Exemption 7(C)** protects records or information compiled for law enforcement purposes
that could reasonably be expected to constitute an unwarranted invasion of personal privacy.

*Freedom of Information Act Office*

**U.S. Department of Homeland Security**
500 12th St SW, Stop 5009
Washington, DC  20536



**U.S. Immigration
and Customs
Enforcement**

This exemption takes particular note of the strong interests of individuals, whether they are
suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal
activity.  That interest extends to persons who are not only the subjects of the investigation, but
those who may have their privacy invaded by having their identities and information about them
revealed in connection with an investigation.  Based upon the traditional recognition of strong
privacy interest in law enforcement records, categorical withholding of information that
identifies third parties in law enforcement records is ordinarily appropriate.  As such, ICE has
determined that the privacy interest in the identities of individuals in the records you have
requested clearly outweigh any minimal public interest in disclosure of the information.  Please
note that any private interest you may have in that information does not factor into this
determination.

ICE has applied FOIA Exemption 7(E) to protect from disclosure internal ICE case numbers
contained within the documents.

**FOIA Exemption 7(E)** protects records compiled for law enforcement purposes, the release of
which would disclose techniques and/or procedures for law enforcement investigations or
prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if
such disclosure could reasonably be expected to risk circumvention of the law.  ICE has
determined that disclosure of certain law enforcement sensitive information contained within the
responsive records could reasonably be expected to risk circumvention of the law.  Additionally,
the techniques and procedures at issue are not well known to the public.

If you are not satisfied with the response to this request, you have the right to appeal following
the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9.  Should you wish to do so, you
must send your appeal and a copy of this letter, within 90 days of the date of this letter, to:

> U.S. Immigration and Customs Enforcement
> Office of the Principal Legal Advisor
> U.S. Department of Homeland Security
> 500 12th Street, S.W., Mail Stop 5900
> Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal."  Copies of the FOIA and DHS
regulations are available at www.dhs.gov/foia.

Provisions of the FOIA and Privacy Act allow us to recover part of the cost of complying with
your request.  In this instance, because the cost is below the $14 minimum, there is no charge.[1]

*Freedom of Information Act Office*

**U.S. Department of Homeland Security**
500 12ᵗʰ St SW, Stop 5009
Washington, DC  20536



## U.S. Immigration and Customs Enforcement

If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office and refer to FOIA case number **2016-ICFO-14043**. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison in the same manner.  Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.  You may contact OGIS as follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Catrina M. Pavlik-Keenan
FOIA Officer

Enclosure(s):  1 Excel workbook

---

¹ 6 CFR § 5.11(d)(4).

# EXHIBIT F

**CHART OF DISAPPEARING FIELDS AND CORRESPONDING REQUESTS IN DECEMBER 2015 AND AUGUST 2016 REQUESTS**

| "Disappearing Fields" from the EID Provided in Response to December 2015 Request but Withheld from Response to August 2016 Request. | Corresponding Requests in Both the December 2015 Request and the August 2016 Request Describing Fields and Data Elements in the EID. |
|---|---|
| Non-Criminal ICE Priorities | 7. Priority levels based upon November 20, 2014 announced criteria. <br><br> 17. ICE fugitive (yes/no)… <br><br> 18. Prior removal or return (yes/no)… <br><br> 19. EWI (yes/no)… <br><br> 20. Visa Violator: a. Overstayed visa (yes/no).[1] <br><br> 20. Visa Violator …b. other type of visa violator (yes/no) |
| Detainer Prepare Date | 22. Was I-247/I-247D issued for individual before removal (yes/no), and date issued. <br><br> 23. Was I-247N issued for individual before removal (yes/no), and date issued. |
| Detainer Facility City; Detainer Facility State | 26. City, county and state of the jail or facility in which the individual was detained prior where the I-247/I-247D/I-247N was sent. |
| Detainer Threat Level | 27. Detainer Threat Level (or corresponding Notice Threat Level). |
| Charged with Crime | 43. Charged with a crime (yes/no) [any charge, not restricted to convictions]. |
| Criminal Charge <br><br> Criminal Charge Code <br><br> Criminal Charge Date | 54. Information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received). |
| Criminal Charge Status | |
| Criminal Conviction Date | 55. Information on every charge not just the most serious for which a conviction has not occurred (date of charge, |
| Criminal Conviction Sentence Days | |

---

[1] In the December 2015 Request, request 20.a was numbered request 21.

| | |
|---|---|
| Criminal Conviction Sentence Months | current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.)). |
| Criminal Conviction Sentence Years | |
| Aggravated Felon | 57. Aggravated felon (yes/no). |
| Removal Current Program | 60. Latest program code before departure. |
| Case Category Time of Arrest | 61. Case category at the time of latest arrest. |
| Latest Arrest Current Program Code; Latest Arrest Current Program | 62. Program code at the time of latest arrest. |
| Latest Apprehension Date | 63. Date of latest arrest. |
| Cause Arrest Current Program | 64. Name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation streamline, other border patrol program, 287(g), etc.). |
| Latest Apprehension Method | 65. The apprehension method associated with the latest apprehension. |
| Final Order Yes No | 66. Ordered removed by court, where order has become final (yes/no).<br><br>68. Administratively ordered removed, where order has become final (yes/no). |
| Reinstated Final Order | 70. Reinstatement of prior removal order (yes/no). |
| Reinstated Final Order Date | 71. Date of latest reinstatement of prior removal order. |
| Prior Removal | 74. Prior removal (yes/no) |
| Most Recent Prior Depart Date | 75. Date of latest prior removal. |

# EXHIBIT G



# TRAC

Transactional Records Access Clearinghouse

Syracuse University

January 17, 2017

Debbie Seguin, Chief
Government Information Law Division
Office of Principal Legal Advisor
U.S. Immigration Customs Enforcement
U.S. Department of Homeland Security
Freedom of Information Office
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009

> Re:  FOIA Appeal of agency January 4, 2017 response to August 31, 2016 FOIA request for case-by-case information on anonymous case-by-case information on each removal and return for FY 2015 through August 2016 that was the result of such IDENT/IAFIS interoperability matches (2016-ICFO-54702)

Dear OPLA Appeals Officer Debbie Seguin:

Under cover of a final response dated January 4, 2017 FOIA Officer Catrina M. Pavlik-Keenan released an Excel spreadsheets provided as a final response to our above referenced request.   We are appealing this response on the following grounds.

**[1] failure to release reasonably segregable nonexempt material.**  The response redacted the entire entry in the date of birth field on the grounds of privacy.  That field provides the month, day, and year of birth.   Under the federal FOIA, agencies cannot withhold non-exempt information found in a record merely because the record also contains exempt information. Agencies have a "duty to segregate" and provide releasable information. The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." The agency did not contend that the year portion of the date was itself exempt.  Rather, it contended that because year was not recorded in a separate field by itself that FOIA did not require the agency to release it.

There should be no argument that year by itself provides meaningful information.  Further, the agency does not contend that the release of year alone raises privacy concerns; the information "year of birth" provides is too general in nature to allow indirect identification of the individual.

Nor is it particularly burdensome to "segregate" and release the 'year' portion of the date.  It is unquestionably true that the agency has established computer queries that automatically segregate out and provide the year from this field.  Use of these established computer queries had been ICE's routine practice for many years in releasing the 'year of birth' from the 'date of birth' field when responding to similar FOIA requests. Indeed, this was the agency's consistent practice in responding to scores of requests submitted by Long and Burnham.

For all of these reasons, ICE clearly erred in not providing the reasonably segregable "year" information from the recorded month, day, and year entries in the date of birth field.

**[2] Failure to search for requested records.**  Agencies have a duty to liberally construe FOIA requests to ensure responsive records are found. To fulfill its search obligations, an agency must "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents."  See Nation Magazine v. United States Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995); Valencia-Lucena v. United States Coast Guard, FOIA/PA Records Mgmt., 180 F.3d 321, 325 (D.C. Cir. 1999).

The request itemized 90 specific categories of information that were being requested.  This was provided through a numbered list of 77 items with a further breakdown within specific numbers for categories a,b,c, etc. which altogether enumerated 90 specific items.  Some of these 90 items corresponded with a single information field, while others encompassed multiple information fields.  The vast majority of these information categories were not provided, and for most no explanation was given. For the most part it appears that no search was even undertaken for many of the information categories. The agency had routinely provided records covering 60 information fields to exactly identical requests that Long and Burnham had submitted covering covering part of FY 2015.  The response to this request covering all of FY 2015 and part of FY 2016 provided only 33 fields.  For example, past releases included such items as the date of the detainer prepare date, the apprehension method, records on all charges (not simply the most serious criminal conviction).   This information was among the long list of requested fields of information that were not provided.

The search conducted was grossly insufficient and was never designed to uncover all relevant records.

**[3] Improper application of redaction markings.**  The law requires when information is redacted that "the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made."  Thus, in the absence of any redaction, no redaction marking should be applied since no information is being withheld.  This was not done in the field titled "detainer_id."   Only a subset of the removals had involved the preparation of a detainer, and thus there were blanks as well as entries originally in this column.  However, redaction markings were systematically used to replace blanks.  Since no information was in fact being withheld, redaction markings did not in fact comply with this legal requirement since they were not placed in the record where any deletion was made.   We ask that a new release be made with redaction markings correctly applied.

**[4]  Withholding of "Detainer_Id" under (b)(6) and (b)(7)C.**  ICE's response states:  "ICE has applied FOIA Exemption 6 and 7(C) to protect from disclosure the names, e-mail addresses, and phone numbers of DHS employees contained within the documents."  This explanation makes little sense since the records don't relate to DHS employees, and no information of this nature was contained within the data that were requested.

However, a field entitled "Detainer ID" was redacted.  The Detainer ID is a computer sequence number assigned to each occasion on which a detainer is prepared.  While the detainer itself relates to a person, this computer sequence number – just as a check sequence number of a check written by an individual – does not by itself identify a specific individual.   Nor are their publicly available records that would allow the public to link a detainer id to a specific individual.   In addition, ICE has not alleged that it reasonably foresees that disclosure of the complete number, or the last four digits of that number, would

harm the privacy rights of any person.   Accordingly, it was improper to withhold the entire detainer id since it is not exempt from disclosure.

   **[5]  Withholding of "Case ID" under (b)(7)e.**  A computer sequence number is assigned to each case.  ICE claimed that this was being withheld "to protect from disclosure internal agency case numbers within the document."   Such a claim however is insufficient.   First, ICE has not alleged that it reasonably foresees that disclosure of the Case ID in its entirety, or the last four digits of that number, would actually reasonably result in circumvention of the law.   Nor is this computer sequence number a "technique," "procedure," or "guideline" for law enforcement investigations or prosecutions.  Accordingly, it was improper to withhold the entire Case ID since it is not exempt from disclosure.

   Should you have any questions, or if we can be of any assistance, please feel free to contact us. You can reach Long at (315) 443-3563 or by email at suelong@syr.edu.   Thank you very much.

                    Sincerely,




                    Susan B. Long
                    Co-Director, TRAC and
                    Associate Professor
                    Martin J. Whitman School of Management
                    Syracuse University




                    David Burnham
                    Co-Director, TRAC and
                    Associate Research Professor
                    S.I. Newhouse School of Public Communications
                    Syracuse University




Enclosures:
        FOIA request and agency response letter

# EXHIBIT H

U.S. Department of Homeland Security
500 12th St. SW; STOP 5009
Washington, DC 20536-5009



**U.S. Immigration
and Customs
Enforcement**

February 14, 2017

Susan Long
Transactional Records Access Clearinghouse (TRAC)        Recd 2/23/17 ↑↗
360 Newhouse II
Syracuse, NY 13244

**RE: 2016-ICFO-54702, 2017-ICAP-00194**

Dear Dr. Long:

This is in response to your e-mail dated January 17, 2017, appealing the adverse determination by
the U.S. Immigration and Customs Enforcement (ICE), Freedom of Information Act (FOIA) Office
in response to your FOIA request, seeking the latest anonymous case-by-case information on each
removal and return for FY 2015 through August 2016 that was the result of such IDENT/IAFIS
interoperability matches whether carried out under Secure Communities or under the program that is
replacing Secure Communities.

By letter dated January 4, 2017, the ICE FOIA Office advised you that "A search of the ICE Office
of Enforcement and Removal Operations (ERO) for records responsive to your request produced 1
Excel spreadsheet that is responsive to your request. After review of those documents, ICE has
determined that portions of the 1 Excel spreadsheet will be withheld pursuant to Exemptions (b)(6),
(b)(7)(C) and (b)(7)(E) of the Privacy Act and FOIA."

By e-mail dated January 17, 2017, you appealed the withholdings and the adequacy of the search.
Specifically, you stated:

> **"[1] failure to release reasonably segregable nonexempt material.** The response
> redacted the entire entry in the date of birth field on the grounds of privacy. That
> field provides the month, day, and year of birth. Under the federal FOIA, agencies
> cannot withhold non-exempt information found in a record merely because the record
> also contains exempt information. Agencies have a "duty to segregate" and provide
> releasable information. The FOIA requires that "[a]ny reasonably segregable portion
> of a record shall be provided to any person requesting such record after deletion of
> the portions which are exempt." The agency did not contend that the year portion of
> the date was itself exempt. Rather, it contended that because year was not recorded in
> a separate field by itself that FOIA did not require the agency to release it.
>
> There should be no argument that year by itself provides meaningful information.
> Further, the agency does not contend that the release of year alone raises privacy
> concerns; the information "year of birth" provides is too general in nature to allow
> indirect identification of the individual.

Nor is it particularly burdensome to "segregate" and release the 'year' portion of the date. It is unquestionably true that the agency has established computer queries that automatically segregate out and provide the year from this field. Use of these established computer queries had been ICE's routine practice for many years in releasing the 'year of birth' from the 'date of birth' field when responding to similar FOIA requests. Indeed, this was the agency's consistent practice in responding to scores of requests previously submitted by Long and Burnham.

For all of these reasons, ICE clearly erred in not providing the reasonably segregable "year" information from the recorded month, day, and year entries in the date of birth field.

**[2] Failure to search for requested records.** Agencies have a duty to liberally construe FOIA requests to ensure responsive records are found. To fulfill its search obligations, an agency must "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." See Nation Magazine v. United States Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995); Valencia-Lucena v. United States Coast Guard, FOIA/PA Records Mgmt., 180 F.3d 321, 325 (D.C. Cir. 1999).

The request itemized 90 specific categories of information that were being requested. This was provided through a numbered list of 77 items with a further breakdown within specific numbers for categories a,b,c, etc. which altogether enumerated 90 specific items. Some of these 90 items corresponded with a single information field, while others encompassed multiple information fields. The vast majority of these information categories were not provided, and for most no explanation was given. For the most part it appears that no search was even undertaken for many of the information categories. The agency had routinely provided records covering 60 information fields to exactly identical requests that Long and Burnham had submitted covering covering part of FY 2015. The response to this request covering all of FY 2015 and part of FY 2016 provided only 33 fields. For example, past releases included such items as the date of the detainer prepare date, the apprehension method, records on all charges (not simply the most serious criminal conviction). This information was among the long list of requested fields of information that were not provided.

The search conducted was grossly insufficient and was never designed to uncover all relevant records.

**[3] Improper application of redaction markings.** The law requires when information is redacted that "the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made." Thus, in the absence of any redaction, no redaction marking should be applied since no information is being withheld. This was not done in the field titled "Detainer Id." Only a subset of the removals covered

Susan Long
Page 3

in the listing involved the preparation of a detainer, and thus there were blanks as well as entries originally in this column. However, redaction markings were systematically used to replace blanks. Since no information was in fact being withheld, redaction markings did not in fact comply with this legal requirement since they were not placed in the record where any deletion was made. We ask that a new release be made with redaction markings correctly applied.

**[4] Withholding of "Detainer_Id" under (b)(6) and (b)(7)C.** ICE's response states: "ICE has applied FOIA Exemption 6 and 7(C) to protect from disclosure the names, e-mail addresses, and phone numbers of DHS employees contained within the documents." This explanation makes little sense since the records don't relate to DHS employees, and no information of this nature was contained within the data that were requested.

However, a field entitled "Detainer ID" was redacted. The Detainer ID is a computer sequence number assigned to each occasion on which a detainer is prepared. While the detainer itself relates to a person, this computer sequence number – just as a check sequence number of a check written by an individual – does not by itself identify a specific individual. Nor are their publicly available records that would allow the public to link a detainer id to a specific individual. In addition, ICE has not alleged that it reasonably foresees that disclosure of the complete number, or the last four digits of that number, would harm the privacy rights of any person. Accordingly, it was improper to withhold the entire detainer id since it is not exempt from disclosure.

**[5] Withholding of "Case ID" under (b)(7)e.** A computer sequence number is assigned to each case. ICE claimed that this was being withheld "to protect from disclosure internal agency case numbers within the document." Such a claim however is insufficient. First, ICE has not alleged that it reasonably foresees that disclosure of the Case ID in its entirety, or the last four digits of that number, would actually reasonably result in circumvention of the law. Nor is this computer sequence number a "technique," "procedure," or "guideline" for law enforcement investigations or prosecutions. Accordingly, it was improper to withhold the entire Case ID since it is not exempt from disclosure."

*Analysis*

*"[1] failure to release reasonably segregable nonexempt material."*

With respect to [1] above, you stated that ICE should have "reasonably [segregated] 'year' information from the recorded month, day, and year entries in the date of birth field."

The Enforcement Integrated Database (EID) does not contain a data field "year of birth," which you requested in your FOIA request. ICE provided the "date of birth" data field instead. As was explained in the ICE FOIA Office's letter dated January 4, 2017, ICE has applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure information pertaining to third parties. Specifically, ICE has applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure birth dates and

Susan Long
Page 4

Detainer Ids. ICE is unable to the release the date or birth, birth year, or the Detainer Id because, in conjunction with the other information released on the spreadsheet, including, but not limited to, Entry Status, Entry Date, Charge Section, Charge Code, Final Order Date, Arrest Date, Citizenship Country, Birth Country, Gender, Detainer Detention Facility Code, Book In Date, Deported To Country, Port Of Departure, Departed Date, Detainer Detention Facility, Most Serious Criminal Conviction, and Conviction Date, the release of that information could potentially allow the individuals to be identified. Therefore, the privacy interests of the individuals in the records you have requested outweigh any minimal public interest in the disclosure of the information.

### *"[2] Failure to search for requested records."*

With respect to [2] above, you stated that "[t]he search conducted was grossly insufficient and was never designed to uncover all relevant records." In addition, you stated that you requested 90 fields of information, but that only 33 fields of information were provided.

The 57 fields of information that were not provided are data fields that do not exist in the EID.

It is well settled that "the FOIA imposes no duty on the agency to create records,"[1] and "an agency is not required by FOIA to create a document that does not exist in order to satisfy a request."[2] The FOIA also does not require agencies to conduct research by "answer[ing] questions disguised as a FOIA request"[3] and that agencies are "not required, by FOIA or by any other statute, to dig out all the information that might exist, in whatever form or place it might be found, and to *create* a document that answers plaintiff's question."[4]

To the extent that a data field that you have requested exists in the EID database, ICE conducted a search of the database to retrieve that data field and provided that information. To the extent that your FOIA request has asked questions, ICE has not answered those questions. If the information requested does not exist in a searchable form and would require ICE to create new records via calculations or conducting data analysis, ICE has not provided that information because the agency is not obligated to create new records in response to a FOIA request.

Lastly, with respect to [2] above, you stated that "…past releases included such items as the date of the detainer prepare date, the apprehension method, records on all charges (not simply the most serious criminal conviction). This information was among the long list of requested fields of information that were not provided." The fact that the agency may have released information in the past does not bind the agency to release that information again, when ICE is not obligated under the FOIA to answer questions, conduct analyses, or create records, in response to FOIA requests.

### *"[3] Improper application of redaction markings."*

---

[1] *Forsham v. Harris,* 445 U.S. 169, 186, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980) (citing *NLRB v. Sears, Roebuck & Co.,* 4212 U.S. 132, 161-62, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)).
[2] *Yeager v. DEA,* 678 F.3d 315, 321 (D.C.Cir.1982).
[3] *Hudgins v. IRS,* 620 F.Supp. 19, 21 (D.D.C.1985, *aff'd mem.,* 808 F.2d 137 (D.C.Cir.1987).
[4] *Frank v. U.S. Dep't of Justice,* 941 F.Supp. 4, 5 (1996) (emphasis added).

Susan Long
Page 5

With respect to [3] above, you stated that "redaction markings were systematically used to replace blanks. Since no information was in fact being withheld, redaction markings did not in fact comply with this legal requirement since they were not placed in the record where any deletion was made."

Upon a review of the information withheld by ICE in the initial determination on your FOIA request, specifically within the "Detainer Id" column, ICE has determined that some of the information contained in these columns, which was previously withheld, is releasable to you under the FOIA. Therefore, ICE is remanding your request to the ICE FOIA Office for reprocessing and direct response to you.

### *"[4] Withholding of "Detainer_Id" under (b)(6) and (b)(7)C."*

With respect to [4] above, you stated that "it was improper to withhold the entire detainer id since it is not exempt from disclosure." You also stated that "…the detainer itself relates to a person."

As was explained in the ICE FOIA Office's letter, dated January 4, 2017, ICE has applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from personally identifiable information pertaining to third party individuals. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in the disclosure of the information. Please understand that any litigation interest you or your client may have in that information cannot factor into this determination. With respect to the "Detainer Id" column, ICE has determined that Detainer Ids are related to an individual subject to a detainer and are therefore properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C).

### *"[5] Withholding of "Case ID" under (b)(7)e."*

With respect to [5] above, you stated that "it was improper to withhold the entire Case ID since it is not exempt from disclosure."

As was explained in the ICE FOIA Office's letter, dated January 4, 2017, ICE has applied FOIA Exemption (b)(7)(E) to protect from disclosure investigative techniques and procedures, such as internal agency case numbers which are not well known to the public. The withholding of the information under column "Case ID" was proper in all respects, and the information is exempt from disclosure under the applicable provisions of 5 U.S.C. § 552 cited above.

### *Conclusion*

Upon a complete review of the information withheld by ICE in the initial determination on your FOIA request, ICE has determined that some of the information contained in the "Detainer Id" column, which was previously withheld, is releasable to you under the FOIA. Therefore, ICE is remanding your request to the ICE FOIA Office for reprocessing and direct response to you.

Upon a complete review of the administrative record, ICE affirms the adequacy of the search conducted on your FOIA request.

Susan Long
Page 6

Should you have any questions regarding this appeal remand, please contact Ryan Stubbs, Associate Legal Advisor with the ICE Office of the Principal Legal Advisor, at Ryan.Stubbs@ice.dhs.gov.  In the subject line of the email please include the word "appeal," your appeal number, which is **2017-ICAP-00194,** and the FOIA case number, which is **2016-ICFO-54702**.

Sincerely,

*Ryan Stubbs*

*for*     Erin J. Clifford
Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S Department of Homeland Security

# EXHIBIT I

(email request sent Feb 7, 2017)

Dear FOIA Director Pavlik-Keenan:

ICE has posted on its public website monthly statistics on removals and returns derived from Secure Communities involving IDENT/IAFIS interoperability matches using fingerprint-based biometric data submitted to the Federal Bureau of Investigations. (See, for example, http://www.ice.gov/doclib/foia/sc-stats/nationwide_interop_stats-fy2013-to-date.pdf.)

Under the provisions of the Freedom of Information Act we are requesting the latest anonymous case by case information on ICE removals and returns covering FY 2015 through January 2017 that were the result of such IDENT/IAFIS interoperability matches whether carried out under Secure Communities, the Priority Enforcement Program, or subsequent program through use of these fingerprint matches. For each individual removed, we ask to be provided with the following items of information:

1 Information related to the IDENT/IAFIS interoperability match:
1.1 State and county that originated the fingerprint submission resulting in the match
1.2 Law enforcement agency (LEA) that originated the fingerprint submission resulting in the match
1.3 Date of submission resulting in the match (FY, year, month, day, etc.)
1.4 Date of any detainer prepared using the information from the match
1.5 Date ICE assumed custody using the information from the match
1.6 ICE field office and sub-office taking the subject into custody
1.7 The name of the LEA the subject was taken into custody from
1.8 The code assigned to that particular LEA

2 Information related to the removal following the IDENT/IAFIS interoperability match:
2.1 The date the subject was deported
2.2 The port the subject was deported from
2.3 The location of the port (country, city, state, county, street address, zip code, jurisdiction, etc.)
2.4 The country the subject was deported to
2.5 Information indicating whether this was an "interior" or "border" removal
2.6 Type of deportation (removal, reinstated removal order, expedited removal, voluntary return, voluntary departure, etc.)
2.7 The removal program
2.8 The processing disposition code
2.9 The case category
2.10 Was subject in custody at the time of removal
2.11 The date of the final order of removal under which the individual was deported
2.12 If deported following the reinstatement of a prior final order of removal, the date of the reinstatement
2.13 The charge section under which the individual was deported
2.14 The charge description under which the individual was deported
2.15 The apprehension date prior to the removal
2.16 The apprehension location (including landmark, county, city, state,

jurisdiction, latitude/longitude coordinates, and any other location indicator)
2.17 The apprehension method used.

3 About the individual removed:
3.1 gender
3.2 country of birth
3.3 country of citizenship
3.4 race of the individual
3.5 ethnicity of the individual
3.6 date of birth
3.7 year of birth
3.8 status --immigrant/nonimmigrant/LPR
3.9 any record reflecting presence of prior legal entry
3.10 specific type of visa entered the country on
3.11 any record reflecting that subject had overstayed his/her visa
3.12 any record reflecting presence of prior illegal entry
3.13 date of original entry
3.14 date of last entry
3.15 earliest date reflecting presence in U.S
3.16 original entry status
3.17 last entry status
3.18 U.S. citizen or LPR spouse
3.19 U.S. citizen or LPR parents
3.20 U.S. citizen or LPR child
3.21 Information on Most Serious Criminal Conviction
3.21.1 NCIC code of most serious criminal conviction
3.21.2 Description of most serious criminal conviction
3.21.3 Date of most serious criminal conviction
3.21.4 Sentence imposed (days, months, years of imprisonment)
3.21.5 Predicted or actual release date
3.21.6 Statutory charge level: felony vs misdemeanor vs petty offense
3.21.7 Location crime committed (jurisdiction, city, state, county, etc.)
3.21.8 Date offense was committed
3.21.9 Date subject was charged
3.21.10 Jurisdiction or name of court that convicted subject
3.21.11 Incarceration facility subject served time at (facility code, facility name, location such as city, county, state, zip code, street address, date incarcerated and date released or predicted to be released, etc.)
3.22 Information on each criminal charge filed against the subject
3.22.1 NCIC code of charge
3.22.2 Description of charge
3.22.3 Date of charge
3.22.4 Date of conviction
3.22.5 Status of charge (convicted, not convicted, pending, etc.)
3.22.6 Sentence imposed (days, months, years of imprisonment)
3.22.7 Predicted or actual release date
3.22.8 Statutory charge level: felony vs misdemeanor vs petty offense
3.22.9 Location crime committed (jurisdiction, city, state, county, etc.)
3.22.10 Date offense was committed
3.22.11 Jurisdiction or name of court the charge is before
3.22.12 Incarceration facility subject served time at for this charge

(facility code, facility name, location such as city, county, state, zip code, street address, date incarcerated and date released or predicted to be released, etc.)

3.23 ICE classification of subject:

3.23.1 Aggravated felon type

3.23.2 Mandatory detention required for this subject

3.23.3 Risk category

3.23.4 Seriousness Level of criminal charges

3.23.5 Seriousness Level of criminal convictions

3.23.6 Threat Levels presented under each of various systems ICE used such as Secure Communities, detainer, RC, etc.)

3.24 Priority categories for apprehension, detention and removal subject met criteria for:

3.24.1 Existing before Director Morton's June 2010 Memorandum entitled ICE Civil Immigration Enforcement Priorities effective October 1, 2010

3.24.2 Existing under Director Morton's June 2010 Memorandum entitled ICE Civil Immigration Enforcement Priorities effective October 1, 2010

3.24.3 Existing under November 20, 2014 memorandum on policies for apprehension, detention, and removal of undocumented immigrants

3.24.4 Existing after President Trumps January 2017 Executive Orders and implementing directives

3.25 Apprehension, Arrest, and Removal History of subject (including by ICE, CBP, judge or other government officer)

3.25.1 Concerning each detainer or notice prepared concerning the individual:

3.25.1.1 date Form I-247 was prepared

3.25.1.2 date Form I-247 was issued

3.25.1.3 date Form I-247 was lifted or canceled

3.25.1.4 reason it was lifted or canceled

3.25.1.5 which Form version or type of the I-247 was used

3.25.1.6 for each form type/version, which specific checkboxes on the form were filled out

3.25.1.7 the recorded information that would help determine whether or not a form checkbox item would be applicable to the subject, even if that particular checkbox was not contained on the particular version of the I-247 that was used

3.25.1.8 the name of the law enforcement agency (LEA) that the Form I-247 was made out to

3.25.1.9 the code assigned to that particular law enforcement agency

3.25.1.10 the type of law enforcement agency

3.25.1.11 the location of the law enforcement agency including city, county, state, zipcode, street address, jurisdiction, etc.

3.25.1.12 ICE area of responsibility (AOR), field office and sub-office issuing the Form I-247

3.25.1.13 ERO program issuing the Form I-247

3.25.1.14 Source of information used informing ICE that that the particular subject was in the custody of that particular LEA (for example, IDENT/IAFIS Interoperability, ICE personnel working with the LEA, LEA-initiated contact with ICE, Border Patrol, etc.)

3.25.1.15 information on the charge for the specific arrest that gave rise to particular LEA taking the individual into custody, including NCIC code, charge date, conviction date (where applicable), and status of the charge

3.25.2 if ever apprehended by ICE or CBP the date of each apprehension of individual and the corresponding apprehension method; apprehending agency,

office and program; and apprehension location (including landmark, county, city, state, jurisdiction, latitude/longitude coordinates, and any other location indicator)

3.25.3 if ever arrested by ICE or CBP the date of each arrest of individual and the corresponding arrest method; arresting agency, office and program; and arrest location (including landmark, county, city, state, jurisdiction, latitude/longitude coordinates, and any other location indicator)

3.25.4 For each period of ICE custody:

3.25.4.1 the date the subject was taken into custody and

3.25.4.2 the name of the law enforcement agency (LEA) the subject was taken into custody from

3.25.4.3 the code assigned to that particular law enforcement agency

3.25.4.4 the type of law enforcement agency

3.25.4.5 the location of the law enforcement agency including city, county, state, zipcode, street address, jurisdiction, etc.

3.25.4.6 ICE area of responsibility (AOR), field office and sub-office taking the subject into custody

3.25.4.7 ERO program taking the subject into custody

3.25.4.8 The apprehension method for taking the subject into custody

3.25.4.9 Information indicating whether this was an "interior" or "border" apprehension

3.25.4.10 Name of detention facility (including holding facility) initially booked into

3.25.4.11 Code of detention facility (including holding facility) initially booked into

3.25.4.12 Initial book-in date

3.25.4.13 Ultimate release date from ICE custody after this initial book-in

3.25.4.14 Ultimate reason for releasing from ICE custody after this initial book-in

3.25.5 If ever ordered deported (where order has become final) the name, title, office of person who ordered deportation, and the date and type of deportation ordered

3.25.6 If ever previously deported, the date of each deportation, the port deported from, the type and method of deportation, the deporting agency, office and program, the case category and processing code applicable to each deportation.

4 Identifiers used to associate information concerning the same person, detainer, event, activity, decision, facility, LEA or entity:

4.1 Computer sequence numbers used to link records in separate database tables from which any of the above information was drawn

4.2 Computer assigned numbers used to link records associated with the same subject or person, including but not limited to Subject_id, EID person id, EID civilian person id

4.3 Computer assigned numbers used to link records so that the removal can be associated with other activity or information related to this individual, including whether matching record exists in "SC Removals and Reprocessed Cases" or involving "IDENT/IAFIS Interoperability" for this person.

Definitions of all codes used. A number of the requested fields utilize some sort of abbreviation or code to record the information. Our FOIA request includes a request for a current copy of any code files, lookup tables, or other records which translate each code into its corresponding meaning.

Format requested. We ask that the data be released in an electronic format retaining the data structure such as in a csv file or xls file. Should there be any difficulty in doing this, we ask that prior to creating this extract that we be consulted for our further input concerning alternative formats that are proposed.

Fee waiver and educational/media requester classification. We request that we be classified as educational and media requestors and request a full waiver of fees. As to the basis for our classification and fee waiver requests, we refer you to -- and incorporate by reference -- the extensive information we previously submitted as part of our similar March 31, 2015 request concerning IDENT/IAFIS interoperability matches covering FY 2015 through March 2015. Please let us know if you would like us to furnish a copy.

Our request extends to existing information even where the information isn't complete or "systematic." If the agency believes that the information requested requires that a "calculation or analysis" not required by FOIA be performed on other relevant information that is recorded, then our request extends to this additional recorded information including auxiliary fields that are needed to properly perform such a calculation or analysis. We note that TRAC is more than happy to perform any such calculation or analysis ourselves.

If the agency contends that no responsive records are available for an item on the above enumerated list, then we ask that the agency ensure that it has searched each of the agency's databases – not simply the IIDS and the particular limited snapshot it contains – on which the particular type of information can be stored, keeping in mind that different items may be found on different agency databases.

Further, if the agency contends that information, as recorded, is exempt from disclosure we ask that if any portion of the information were redacted, whether the remaining portion would be itself exempt from disclosure and, if not, that this remaining portion be provided. We remind the agency of FOIA's "reasonably segregable" obligations. FOIA does not permit withholding of information that is not in itself exempt simply because it is found within other information that may be exempt from disclosure.

In closing, we note that the agency has begun withholding information fields it previously routinely provided even though it does not claim the data is exempt from disclosure. It is currently also withholding records it has that identify or describe the fields currently contained in its various databases. The agency also has been unwilling to assist us in formulating requests that would allow us to narrow our request. Should the agency be willing to provide suitable descriptive information regarding the content of its databases, or wish to assist us in some other manner so that we could narrow in on the precise items that would provide the information we seek, please let us know. We are always happy to assist you, and would be delighted to work cooperatively with the agency to that end. Thank you very much.

Susan B. Long and David Burnham, Professors and TRAC Co-Directors
Suite 360 Newhouse II

```
Syracuse University
Syracuse, New York 13244
315-443-3563
http://trac.syr.edu
```

# EXHIBIT J

*Freedom of Information Act Office*

**U.S. Department of Homeland Security**
500 12th St SW, Stop 5009
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

June 08, 2017

Susan Long
Transactional RecordsAccess Clearinghouse
Syracuse University
360 Newhouse II
Syracuse, NY 13244-2100

*Recd
6-14-17*

**RE:    ICE FOIA Case Number 2017-ICFO-18877**

Dear Ms. Long:

This letter is the final response to your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated February 07, 2017. You have requested copies of the following records:

the latest anonymous case by case information on ICE removals and returns covering FY 2015 through January 2017 that were the result of such IDENT/IAFIS interoperability matches whether carried out under Secure Communities, the Priority Enforcement Program, or subsequent program through use of these fingerprint matches. For each individual removed, we ask to be provided with the following items of information (see attached request for 125 specific details)

ICE has considered your request under the FOIA, 5 U.S.C. § 552.

A search of the ICE Office of Enforcement and Removal Operations (ERO) for records responsive to your request produced 1 Excel workbook that is responsive to your request. Portions of 1 Excel workbook will be withheld pursuant to Exemptions 6, 7(C), and 7(E) of the FOIA as described below.

ICE has applied FOIA Exemptions 6 and 7(C) to protect from disclosure of third party birth dates.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right to privacy. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**FOIA Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination.

ICE has applied FOIA Exemption 7(E) to protect from disclosure internal agency case numbers contained within the document.

**FOIA Exemption 7(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. I have determined that disclosure of certain law enforcement sensitive information contained within the responsive records could reasonably be expected to risk circumvention of the law. Additionally, the techniques and procedures at issue are not well known to the public.

If you are not satisfied with the response to this request, you have the right to appeal following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9. Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter, to:

> U.S. Immigration and Customs Enforcement
> Office of the Principal Legal Advisor
> U.S. Department of Homeland Security
> 500 12th Street, S.W., Mail Stop 5900
> Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Provisions of the FOIA and Privacy Act allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge.[1]

If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office and refer to FOIA case number **2017-ICFO-18877**. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison in the same manner. Additionally, you have a right to right to seek dispute resolution

---

[1] 6 CFR § 5.11(d)(4).

services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Catrina M. Pavlik-Keenan
FOIA Officer

Enclosure(s): Responsive Document, 1 Excel workbook

# EXHIBIT K

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

SUSAN B. LONG

and

DAVID BURNHAM,

Plaintiffs,

-against-

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT,

Defendant.

Civil Action No. XX-cv-XXXX

**COMPLAINT FOR**
**DECLARATORY AND**
**INJUNCTIVE RELIEF**

Plaintiffs Susan B. Long and David Burnham, by their undersigned attorneys, allege as follows for their Complaint:

1.  This is an action under the Freedom of Information Act, 5 U.S.C. § 552, to compel Defendant United States Immigration and Customs Enforcement to produce agency records responsive to a proper request made by Plaintiffs. Plaintiffs also request the Court's expedited consideration of this action pursuant to 28 U.S.C. § 1657.

2.  Plaintiffs founded and direct the Transactional Records Access Clearinghouse (TRAC), a data research center at Syracuse University. TRAC, which was established in 1989, gathers, analyzes and maintains a wealth of independent and nonpartisan information about federal enforcement, staffing and spending.

3.  TRAC's purpose is to provide the public with comprehensive and regularly updated information that allows for meaningful oversight of government agencies and officials. This is consistent with the core objectives of the law: "The basic purpose of FOIA is to ensure an

informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

4.    News organizations, public interest groups, businesses, scholars, lawyers, and the government itself are among those who rely on TRAC's data.

5.    Immigration enforcement records are the source of a significant amount of the data TRAC gathers, regularly updates, and makes available on its public website, http://trac.syr.edu/immigration.

6.    Defendant United States Immigration and Customs Enforcement (ICE) is a federal agency within the U.S. Department of Homeland Security responsible for enforcement of immigration law.

7.    The FOIA requests at issue seek information related to ICE's immigration enforcement actions and its interaction with other law enforcement agencies.

8.    Specifically, Plaintiffs seek information from ICE's Enforcement Integrated Database concerning Form I-247 requests. These relate to 1) Immigration Detainers ("Detainers") and 2) Requests for Voluntary Notification of Release of Suspected Priority Alien ("Notices").

9.    These actions arise when ICE considers an immigrant who has been arrested by federal, state, or local law enforcement a potential priority for removal proceedings.

10.    Detainers are requests from ICE to federal, state, and local law enforcement agencies to maintain custody of such an immigrant for up to 48 hours beyond when he or she would have otherwise been released.

11. Notices are requests from ICE to law enforcement agencies to notify ICE of the pending release of such an immigrant.

12. Since 2011, TRAC has regularly sought and received updated data through FOIA requests from ICE related to Form I-247 requests. ICE has used various versions of the form, including I-247, I-247D, I-247N and I-247A.

13. The data has allowed TRAC to publish many widely relied upon research reports, as well as to create and provide online databases that allow the public to assess over time the focus and impact of the government's immigration enforcement actions – both in their own communities and nationally.  See, for example, http://trac.syr.edu/phptools/immigration/detain.

14. Starting abruptly in January 2017, ICE began refusing to disclose much of the information produced in its previous responses to FOIA requests.

15. ICE has no lawful reason for refusing to disclose this information.

16. The withholding of these public records has a direct impact on the public's ability to be informed about the government's immigration policy and actions.

17. Prompt release of these public records is important because of the heightened and immediate public interest in this information, as evidenced by, among other things, more than a hundred news, legal and scholarly articles published in the first 100 days of the Trump administration alone citing to the TRAC database on immigration enforcement actions. See http://trac.syr.edu/tracatwork/index.html.

18. In its February 2017 implementing directive for the president's Executive Order on immigration enforcement, the Department of Homeland Security itself cited TRAC's data. See page 6 at https://goo.gl/p7C3EE.

19. Immigration and deportation policies are a matter of utmost public interest and are the subject of significant current public debate. Accurate and current information about the government's policies and actions is crucial to meaningful discussion and oversight, and the public has an urgent need for this information.

20. Defendant's failure to provide the information sought is effectively an effort to allow the agency to keep its policies secret and avoid accountability. This is at odds with the purpose of FOIA.

## PARTIES

21. Plaintiff Susan B. Long is Co-Director of TRAC and an Associate Professor of Managerial Statistics at the Martin J. Whitman School of Management at Syracuse University.

22. Plaintiff David Burnham is Co-Director of TRAC, a long-time journalist, and an Associate Research Professor at the S.I. Newhouse School of Public Communications at Syracuse University.

23. Defendant United States Immigration and Customs Enforcement is an agency of the government of the United States, and has possession of and control over the records that are the subject of Plaintiffs' FOIA request.

## JURSIDICTION AND VENUE

24. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

25. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## FACTS

26. The records Plaintiffs seek in their FOIA requests relate to their ongoing efforts to gather, analyze and maintain information about federal immigration policy and enforcement practices.

### The Detainer Requests (No. 2017-ICFO-08061)

27. On November 30, 2016, Plaintiffs submitted a FOIA request to ICE seeking anonymous data for fiscal year 2015 through November 2016 concerning Form I-247/I-247D, Immigration Detainer – Request for Involuntary Action. (Exhibit A.)

28. In a response dated January 10, 2017, ICE withheld large swaths of data from the forms, including data in 44 fields that had been disclosed in response to previous FOIA requests. (Exhibit B.)

29. On March 14, 2017, Plaintiffs filed an appeal with the agency, requesting that the withheld records be released. (Exhibit C.)

30. In a response dated April 11, 2017 (2017-ICAP-00273), the agency denied Plaintiffs' appeal. (Exhibit D.)

### The Notice Requests (2017-ICFO-08062)

31. On November 30, 2016, Plaintiffs submitted a FOIA request to ICE seeking anonymous data for November 2016 concerning Form I-247N, Request for Voluntary Notification of Release of Suspected Priority Alien. (Exhibit E.)

32. In a response dated February 2, 2017, ICE withheld large swaths of data from the forms, including data in 61 fields that had been disclosed in response to previous FOIA requests. (Exhibit F.)

33. On March 14, 2017, Plaintiffs filed an appeal with the agency, requesting that the withheld records be released. (Exhibit G.)

34. In a response dated April 11, 2017 (2017-ICAP-00302), the agency denied Plaintiffs' appeal. (Exhibit H.)

## COUNT I

35. Plaintiffs incorporate by reference every allegation above as if fully restated here.

36. Defendant ICE is subject to FOIA and must release responsive records in its possession at the time of a FOIA request or provide a lawful reason for withholding any materials for which it claims an exemption.

37. Plaintiffs have a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(A), to the records of Detainers they requested concerning form I-247/I-247D.

38. Defendant has no legal basis for refusing to release the Detainer records requested.

39. Plaintiffs have exhausted all administrative remedies available regarding their request.

40. Plaintiffs are therefore entitled to an order compelling ICE to produce records responsive to this request.

## COUNT II

41. Plaintiffs incorporate by reference every allegation above as if fully restated here.

42. Defendant ICE is subject to FOIA and must release responsive records in its possession at the time of a FOIA request or provide a lawful reason for withholding any materials for which it claims an exemption.

43. Plaintiffs have a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(A), to the records of Notices they requested concerning Form I-247N.

44. Defendant has no legal basis for refusing to disclose the Notice records requested.

45. Plaintiffs have exhausted all administrative remedies available regarding their request.

46. Plaintiffs are therefore entitled to an order compelling ICE to produce records responsive to this request.

COUNT III

47. Plaintiffs incorporate by reference every allegation above as if fully restated here.

48. Pursuant to 28 U.S.C. § 1657(a), a district court "shall expedite the consideration of any action ... if good cause therefor is shown." For purposes of this subsection, "'good cause' is shown if a right under the Constitution of the United States or a Federal Statute (including rights under section 552 of title 5) would be maintained in a factual context that indicates that a request for expedited consideration has merit." 28 U.S.C. § 1657(a).

49. In its 1984 legislative report on this provision, the House Committee on the Judiciary stated that because "expedited action by the courts" in FOIA cases "can reduce the opportunities to hamper the reporting of governmental activities, it is the intent of the Committee that the 'good cause' provision" of the statute "be liberally construed by the courts in granting requests for expedited consideration under the Freedom of Information Act." H.R. Rep. No. 98-985, 1984 U.S.C.C.A.N. 5779, 5783-84 (Aug. 31, 1984).

50. Prompt release of these public records will enable TRAC to add the information to its public database, and in turn facilitate further accurate and current reporting and analysis, to meet the heightened and immediate public interest in the federal government's Detainer and Notice activities.

51. Plaintiffs are therefore entitled to the Court's expedited consideration of this action.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that this Court:

1)  declare that Defendants' withholding of the requested records is unlawful;

2)  order Defendants to provide the requested records to Plaintiffs;

3)  expedite its consideration of this action as provided by 28 U.S.C. § 1657;

4)  award Plaintiffs their costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

5)  award such other relief as the Court deems just and proper.

DATED:  May 9, 2017                    Respectfully submitted,

MILLER KORZENIK SOMMERS RAYMAN LLP

By: _Mona Houck_____

Mona Houck
Bar roll number: 520599
mhouck@mkslex.com
Terence P. Keegan
Bar roll number: 520598
tkeegan@mkslex.com

488 Madison Avenue, Suite 1120
New York, New York 10022-5702
Tel: (212) 752-9200
Fax: (212) 688-3996

*Attorneys for Plaintiffs*

8

# EXHIBIT L

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SUSAN B. LONG | ) |
| and | ) |
| DAVID BURNHAM | )     Civil Action No. 17-cv-00506 |
| Plaintiffs, | )                   (BKS/TWD) |
| v. | ) |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT | ) |
| Defendant. | ) |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Date: November 5, 2017

GRANT C. JAQUITH
Acting United States Attorney
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261

By:    Charles E. Roberts
Assistant United States Attorney
Bar Roll No. 102454

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... i

FACTUAL BACKGROUND .................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.      GENERAL LEGAL STANDARDS ..................................................................... 1

             A.  The Freedom of Information Act ....................................................... 1

             B.  Standard of Review ........................................................................... 2

             C.  The Law of Adequate Search ............................................................. 2

    II.     ICE PERFORMED A REASONABLE SEARCH .................................................. 3

    III.    ICE IDENTIFIED AND PRODUCED RESPONSIVE,
             NON-EXEMPT AGENCY RECORDS .............................................................. 5

             A.  Applicable Legal Standard ................................................................. 5

             B.  ICE Complied with FOIA's "Agency Record" Standard in
                  Responding to Plaintiffs' Requests .................................................... 6

              C.  ICE Did Not Provide Three Categories of Data Points,
                   Which Was Appropriate Under FOIA ............................................... 8

                   1.  Certain Data Points Requested by Plaintiffs Sought to Obtain
                        Answers to Questions, Not the Production of Records ............................... 8

                   2.  Certain Data Points Requested by Plaintiffs Were Not Reasonably
                        Described and/or Did Not Exist in the Form Requested ........................... 11

                   3.  Certain Data Points Requested by Plaintiffs Do Not Exist ....................... 15

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

## Case Law

*Adamowicz v. IRS*, 552 F. Supp. 2d 355 (S.D.N.Y. 2008)...................................................3

*Adams v. FBI*, 572 F. Supp. 2d 65 (D.D.C. 2008) ..........................................................8

*Amnesty International USA v. CIA*, No. 07 Civ. 5435(LAP), 2008 WL 2519908,
    (S.D.N.Y. June 19, 2008)...........................................................................................9

*Assassination Archives & Research Ctr., Inc. v. CIA*, 720 F. Supp. 217 (D.D.C. 1989) ..............13

*Bailey v. Callahan*, Action No. 3:09MC10, 2010 WL 924251 (E.D. Va. Mar. 11, 2010) ..........13

*Barber v. Office of Info. & Privacy*, No. 02-1748, slip op. at 4 (D.D.C. Sept. 4, 2003),
    *aff'd*, No. 03-5266 (D.C. Cir. Feb. 20, 2004) ....................................................13

*Blakey v. Dep't of Justice*, 549 F. Supp. 362 (D.D.C. 1982),
    *aff'd*, 720 F.2d 215 (D.C. Cir. 1983) ....................................................................13

*Carney v. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994).............................................2, 3

*Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002).....................................................12

*Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ...............................................5

*DiViaio v. Kelley*, 571 F.2d 538 (10th Cir. 1978)...........................................................8

*Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*. 217 F. Supp. 3d 608
    (N.D.N.Y. 2016) ..........................................................................................................2

*Forsham v. Harris*, 445 U.S. 169 (1980).........................................................................12

*Frank v. Dep't of Justice*, 941 F. Supp. 4 (D.D.C. 1996) ..............................................9

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999)...............................2, 3

*Hudgins v. IRS*, 620 F. Supp. 19 (D.D.C. 1985),
    *aff'd*, 808 F.2d 137 (D.C. Cir. 1987),
    *cert. denied*, 484 U.S. 803 (1987)........................................................................8

*Iturralde v. Comptroller of Currency*, 315 F.3d 311 (D.C. Cir. 2003)...........................3

*Ivey v. Dep't of Justice Executive Office for United States Attorneys*, No. 7:13–CV–00917

(MAD/TWD), 2015 WL 507219 (N.D.N.Y. Feb. 6, 2015) ...................................2

*Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125 (D.C. Cir. 2005) ........................................5

*Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19 (D.D.C. 2000)...........................2

*Keys v. DHS*, Civ. No. 08-0726(ESH/AK), 2009 WL 614755 (D.D.C. Mar. 10, 2009) ...............13

*Kowalczyk v. DOJ*, 73 F.3d 386 (D.C. Cir. 1996) ..........................................................................13

*Krohn v. Dep't of Justice*, 628 F.2d 195 (D.C. Cir.1980)..................................................................8

*Latham v. Dep't of Justice*, 658 F. Supp. 2d 155 (D.D.C. 2009)....................................................12

*Long v. Office of Pers. Mgmt.*, 692 F.3d 185 (2d Cir. 2012)............................................................2

*Manfredonia v. SEC*, No. 08-cv-1678(SLT)(LB), 2009 WL 4505510
(E.D.N.Y. Dec. 3, 2009) .....................................................................................................12

*Marrera v. Dep't of Justice*, 622 F. Supp. 51 (D.D.C. 1985) ..........................................................4

*Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986) ......................................................................13

*Maynard v. C.I.A.*, 986 F.2d 547 (1st Cir. 1993)..............................................................................3

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233 (D.D.C. 2012)..................................................5

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)................................................................8, 12

*Oglesby v. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ................................................................4

*Perry v. Block*, 684 F.2d 121 (D.C. Cir. 1982) ...............................................................................3

*Rozema v. Dep't of Health and Human Servs.*, 167 F. Supp. 3d 324 (N.D.N.Y. 2016),
*aff'd* 682 F. App'x 72 (2d Cir. 2017)..................................................................................2

*Ruotolo v. Dep't of Justice*, 53 F.3d 4 (2d Cir. 1995)....................................................................12

*Schladetsch v. Housing and Urban Dev.*, No. 99-0175, 2000 WL 33372125
(D.D.C. Apr. 4, 2000) ...........................................................................................................6

*Spannaus v. Dep't of Justice*, 824 F.2d 52 (D.C. Cir. 1987) ........................................................12

*Stuler v. IRS*, No. 05-CV-1717, 2006 WL 891073 (W.D. Pa. Mar. 31, 2006) .............................16

ii

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997) ..................................................13

*Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985) ..................................................13

*Wilbur v. CIA*, 355 F.3d 675 (D.C. Cir. 2004) ..............................................1, 12

*Williams v. Ashcroft*, 30 F. App'x 5 (D.C. Cir. 2002) ..................................13

*Yeager v. DEA*, 678 F.2d 315 (D.C. Cir. 1982) ..........................................12

*Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985) ..........................................9

## **Statutes**

5 U.S.C. § 552(a)(3)(A),(4)(B) ..................................................1, 12, 13

5 U.S.C. § 552(b) ..................................................1

Fed. R. Civ. P 56 ..................................................2

## **Secondary**

6 C.F.R. § 5.3(b) ..................................................12

6 C.F.R. § 5.4(i)(2) ..................................................6

H.R. Rep. No. 93-876 (1974), 1974 U.S.C.C.A.N. 6271 ..................................12

H.R. Rep. No. 104-795, pt. 4, at 22,
    *reprinted in* 1996 U.S.C.C.A.N. 3448, 3465 ..................................5

Defendant United States Immigration and Customs Enforcement ("ICE") provides this memorandum in support of its motion for summary judgment in this Freedom of Information Act ("FOIA") case. ICE has satisfied all of its obligations with respect to Plaintiffs' FOIA requests. ICE has conducted adequate searches for responsive records and appropriately provided responsive records to Plaintiffs. Because no genuine disputes of material fact exist, ICE respectfully requests that the Court grant its motion for summary judgment and dismiss Plaintiffs' Complaint with prejudice.

## FACTUAL BACKGROUND

Defendant hereby incorporates its Statement of Material Facts Not in Dispute, the accompanying declarations, and the exhibits referenced therein.

## ARGUMENT

**I.     GENERAL LEGAL STANDARDS.**

**A.     The Freedom of Information Act.**

FOIA requires federal agencies to release all records responsive to a request for production unless a specific exemption is applicable. *See* 5 U.S.C. § 552(a)(3)(A),(4)(B); 5 U.S.C. § 552(b). When a FOIA requester properly exhausts his administrative remedies, he may file a civil action challenging an agency's response to its request. *See* 5 U.S.C. § 552(a)(4)(B); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). Once such an action is filed, the agency generally has the burden of demonstrating that its response to the plaintiff's FOIA request was appropriate. *See id.* at 678.

1

**B.     Standard of Review**

FOIA disputes (including, as here, the issue of the adequacy of an agency's search for documents) are generally resolved by summary judgment. *See, e.g., Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment is warranted if a movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for granting summary judgment generally was discussed by this Court in *Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan.* 217 F. Supp. 3d 608, 622 (N.D.N.Y. 2016) (Sannes, J); *see Rozema v. Dep't of Health and Human Servs.*, 167 F. Supp. 3d 324 (N.D.N.Y. 2016) (Suddaby, J.), *aff'd* 682 F. App'x 72 (2d Cir. 2017); *Ivey v. Dep't of Justice Executive Office for United States Attorneys*, No. 7:13–CV–00917 (MAD/TWD), 2015 WL 507219 (N.D.N.Y. Feb. 6, 2015) (D'Agostino J.) (discussing the use of summary judgment in FOIA cases). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search . . . are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812 (footnote omitted).

**C.     The Law of Adequate Search**

The government does not have a heavy burden in defending the searches it performed— each agency need only show "that its search was adequate." *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quoting *Carney*, 19 F.3d at 812). A search is judged by the efforts the agency undertook, not by its results: the agency must demonstrate that its search was "reasonably calculated to discover the requested documents," not that the search "actually uncovered every document extant." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). The search "need not be perfect, but rather need only be reasonable," *id.*, because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000).

Provided it is properly designed, an agency's search may be reasonable even if it does not return every responsive document. *See Adamowicz v. IRS*, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008).

Once the government submits declarations describing a reasonable search,[1] those declarations are accorded a presumption of good faith, and the Court may award summary judgment on the declarations alone. *Carney*, 19 F.3d at 812; *see Grand Cent. P'ship*, 166 F.3d at 489. Such declarations may be made by the individuals supervising each agency's search, rather than by each individual who participated. *Carney*, 19 F.3d at 814. Where an agency's declaration demonstrates that it has conducted a reasonable search, "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993); *see also Carney*, 19 F.3d at 812. "[P]urely speculative claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption. *Carney*, 19 F.3d at 813 (internal citations and quotations omitted).

## II.     ICE PERFORMED A REASONABLE SEARCH.

There is no material doubt that the searches ICE conducted for responsive records were adequate.

The ICE FOIA Office determined, based on the subject matter of Plaintiffs' FOIA requests (Dkt Nos. 1-1 and 1-5) and its knowledge of ICE operations, that there was one office that potentially had responsive records to the request: the ICE Office of Enforcement and Removal Operations ("ERO"). Accordingly, the ICE FOIA Office tasked ERO to search for records responsive to Plaintiffs' FOIA requests, instructing ERO to conduct a comprehensive search for

---

[1] To describe a reasonable search, a declaration should explain "the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials . . . were searched." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (citation and internal quotation marks omitted). The declaration need not "set forth with meticulous documentation the details of an epic search . . . ." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

records and to provide all records located during that search to the ICE FOIA Office for review and processing. An agency is not obligated to search every office that is unlikely to have responsive records. *See Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("There is no requirement that an agency search every record system."); *Marrera v. Dep't of Justice*, 622 F. Supp. 51, 54 (D.D.C. 1985) (noting that an agency is not required to "search every division or field office in response to a FOIA request").

As is the practice within ICE, designated points of contact ("POC") within each program office reviewed the FOIA request, and, based on their experience and knowledge of their program office practices and activities, forwarded the request and instructions to the individual employees or component offices within the program office that they believed were reasonably likely to have responsive records, if any. Then the individuals and component offices conducted searches of their file systems, which, in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents.

With respect to ERO, a POC within ERO's Information Disclosure Unit ("IDU") reviewed the FOIA requests and the ICE FOIA Office's instructions, and based on experience and knowledge of ERO's practices and activities, tasked the ERO Law Enforcement and Systems Analysis ("LESA") Statistical Tracking Unit ("STU") to conduct searches for responsive records. A STU analyst conducted a line-by-line review of the requested information in both FOIA Requests, taking into consideration standard reporting of detainer methodologies as well as consulting the database to query all available responsive detainer information as requested from the ICE Integrated Decision Support System ("IIDS") Pavlik-Keenan Decl. ¶¶ 33, 36; Jones Decl. ¶¶ 18, 31.

4

## III. ICE IDENTIFIED AND PRODUCED RESPONSIVE, NON-EXEMPT AGENCY RECORDS.

### A. Applicable Legal Standard.

The Supreme Court has articulated a two-part test for determining what constitutes "agency records" under the FOIA: "Agency records" are records that are (1) either created or obtained by an agency, and (2) under agency control at the time of the FOIA request. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45 (1989) (holding that court opinions in agency files are agency records); *see, e.g., Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 132 (D.C. Cir. 2005) (holding that records of agency employees detailed to National Energy Policy Development Group ("NEPDG"), chaired by the Vice President, were not agency records when "as a practical matter," detailees were employees of NEPDG, not of agency).

In responding to a FOIA request for "aggregate data," an agency need not create a new database or reorganize its method of archiving data, but if the agency already stores records in an electronic database, searching that database does not involve the creation of a new record. *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012). Likewise, sorting a pre-existing database of information to make information intelligible does not involve the creation of a new record because, as Congress noted in the legislative history to the E–FOIA Amendments, "[c]omputer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information." H.R. Rep. No. 104-795, pt. 4, at 22, *reprinted in* 1996 U.S.C.C.A.N. 3448, 3465. Sorting a database by a particular data field (e.g., date, category, title) is essentially "the application of codes or some form of programming," and thus does not involve creating new records or conducting research—it is just another form of searching that is within the scope of an agency's duties in responding to FOIA requests. *Id.* Further, extracting and compiling data does not amount to the creation of a new record as to any

5

discrete pieces of information that the agency does possess in its databases and which are sought by Plaintiffs. *See Schladetsch v. Housing and Urban Dev.*, No. 99-0175, 2000 WL 33372125, at *3 (D.D.C. Apr. 4, 2000).

DHS's regulations comply with these legal standards. The DHS regulation found at 6 C.F.R. § 5.4(i)(2) governs the "business as usual" approach that DHS, and DHS components apply when dealing with electronic records and searches. It states "[a] 'business as usual' approach exists when the component has the capability to process a FOIA request for electronic records *without* a significant expenditure of monetary or personnel resources. Components are not required to conduct a search that does not meet this business as usual criterion." 6 C.F.R. § 5.4(i)(2) (emphasis added). "Creating a computer program that produces specific requested fields or records contained within a well-defined database structure usually is considered business as usual." 6 C.F.R. § 5.4(i)(2)(ii). "However, creating a computer program to merge files with disparate data formats and extract specific elements from the resultant file is not considered business as usual[.]" *Id.* "Components are not required to perform special services and creation of a computer program for a fee is up to the discretion of the component and is dependent on component resources and expertise." *Id.*

DHS Regulation 6 C.F.R. § 5.4(i)(3) governs data links and states that "[c]omponents are not required to expend DHS funds to establish data links that provide real time or near-real-time data to a FOIA requester." 6 C.F.R. § 5.4(i)(3).

### B.     ICE Complied with FOIA's "Agency Record" Standard in Responding to Plaintiffs' Requests.

Plaintiffs' FOIA Request #1 (Dkt. No. 1-1) sought a total of 148 data points, including sub-bulleted data points contained within the 112 primary line items requested. LESA provided 72 data points to the Plaintiffs in the January 10, 2017 response (Ex. 3). There were 76 data points

that Plaintiffs requested that ICE did not provide. Jones Decl. ¶ 19. When responding to each data point that was requested, STU's initial determination was whether or not ERO has the specific data point stored in IIDS as requested in the FOIA request. If the data point exists within IIDS and does not require additional research, analysis, assumptions and/or calculations, or the creation of a new record, ICE provided the data point in in the responsive Excel spreadsheet (72 data points). See[2] Jones Decl. ¶ 20.

Plaintiffs' FOIA Request #2 (Dkt. No. 1-5) contained a total of 132 data points, including sub-bulleted data points contained within the 112 primary line items requested. LESA provided 46 data points to the Plaintiffs in the February 2, 2017 response. There were 86 data points that were requested by the Plaintiffs that ICE did not provide. Jones Decl. ¶ 32. When responding to each data point that was requested, STU's initial determination was whether or not ERO has the specific data point stored in IIDS as requested in the FOIA request. If the data point exists within IIDS and does not require additional research, analysis, assumptions and/or calculations, or the creation of a new record, ICE provided the data point in in the responsive Excel spreadsheet (46 data points.) Jones Decl. ¶ 33.

To provide the 72 data points for FOIA Request #1 (Dkt. No. 1-1), and the 46 data points for FOIA Request #2 (Dkt. No. 1-5), a STU analyst conducted a line-by-line review of the requested information taking into consideration standard reporting of detainer methodologies as well as consulting the database to query all available responsive removal information as requested from IIDS. Jones Decl. ¶ 21, 34.

---

[2] Exhibit 3 – CD of Excel Spreadsheet from January 2017 in response to FOIA request No. 1 is provided on a CD; Exhibit 4 – CD of Excel Spreadsheet from October 2017 in response to FOIA request No. 2 is provided on a CD.

**C. ICE Did Not Provide Three Categories of Data Points, Which Was Appropriate Under FOIA.**

**1. *Certain Data Points Requested by Plaintiffs Sought to Obtain Answers to Questions, Not the Production of Records.***

ICE did not produce certain data requested by Plaintiffs because the request in effect asked a question or constituted an implied question, the answers to which that do not exist in the database in the manner requested, and would require research, analysis, assumptions, and/or calculations, and thus would ultimately lead to the creation of a new record that did not previously exist. Indeed, in order to provide these requested data points, a STU analyst would have to research potential data values in IIDS, the operational use of those values inputted by officers that do exist, and make further assumptions that these data values would answer questions posed by Plaintiffs. These additional efforts would include the creation of new records in response to the questions and implied questions submitted by Plaintiffs in their FOIA request. Jones Decl. ¶¶ 24, 37. For this reason, ICE did not produce nineteen (19) data points requested in FOIA Request #1 and nineteen (19) data points requested in FOIA Request #2 (Dkt. No. 1-5). Jones Decl. ¶¶ 25, 38.

FOIA does not require agencies to conduct research by "answer[ing] questions disguised as a FOIA request[.]" *Adams v. FBI*, 572 F. Supp. 2d 65, 68 (D.D.C. 2008) (quoting *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987), *cert. denied*, 484 U.S. 803, 108 S. Ct. 47, 98 L. Ed. 2d 12 (1987) (citations omitted)). "FOIA neither requires an agency to answer questions disguised as a FOIA request . . . or to create documents or opinions in response to an individual's request for information." *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987) (internal citations omitted); *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 162 (1975); *Krohn v. Dep't of Justice*, 628 F.2d 195, 197–98 (D.C. Cir.1980); *DiViaio v. Kelley*, 571 F.2d 538, 542–43 (10th Cir. 1978);. Agencies are also "not required, by FOIA or by any other statute, to dig out all the information that might exist, in

whatever form or place it might be found, and to create a document that answers plaintiff's question." *Frank v. Dep't of Justice*, 941 F. Supp. 4, 5 (D.D.C. 1996); *see Zemansky v. EPA*, 767 F.2d 569, 574 (9th Cir. 1985). For example, in *Amnesty International USA v. CIA*, No. 07 Civ. 5435(LAP), 2008 WL 2519908, at *12–13 (S.D.N.Y. June 19, 2008), the court rejected a claim that an agency had a duty to compile a list of persons it deemed the subjects of "secret detention" and search for records related to them in order to respond to a FOIA request for "secret detention" records because, in essence, the FOIA request sought an answer to a question. *Id.*

Here, Plaintiffs sought data points disguised as questions. For example, item #8 asked: "Following the preparation of the Form I-247/I-247D, ICE administratively arrested individual (yes/no); if yes, date of ICE arrest." Dkt. No. 1-5. A response to this inquiry requires the searcher to conduct additional research/analysis/assumptions. This requires a STU analyst to assume that for a single alien, ICE issued a single detainer, when it is possible more than one was issued. It then requires that ICE assume that an arrest following an issuance of a detainer was the result of the detainer, which appears to be an implied question in Plaintiff's request. However, the EID contains no data point to reflect that ICE arrested an alien as a result of a detainer. Even overcoming these operational and reporting limitations, STU would then be required to create a new data model to: (1) identify the relationship between detainers and arrests; (2) analyze if it falls after the detainer preparation to identify the implied relationships; and (3) create a calculation based upon the findings to create a new record that did not previously exist. Jones Decl. ¶ 24.

A second example, item #25 asked: "U.S. citizen spouse (yes/no)." This would also require additional research/analysis/assumptions as there is no data set in any ICE system where ICE records the existence of a spouse, much less whether the spouse is a citizen. Dkt. No. 1-5. While an officer does have the ability to record information on relatives in case notes, there is no

9

requirement to identify citizenship much less confirm that accuracy of the self-reported information. Aside from the operational limitations, the analyst would be required: (1) to build a new data model concept to comprehensively identify an "alien" record and all reported spousal records recorded for the "alien" record in the system; (2) append the current data model in order to pull all relative information for these identified aliens who had a detainer prepared in the requested timeframe; (3) analyze citizenship claims and create a flag for U.S. citizenship while making further assumptions that an empty cell would imply either they are not married or other citizenships for spouses must be Non-U.S. Citizenship. This would result in the creation of a new record as these are all currently data elements that ICE does not track or record in a reportable manner, and thus these data elements do not exist in the IIDS database. Jones Decl. ¶ 24.

As a third example, item #9 asked: "Following the preparation of the Form I-247N, individual was booked into ICE Custody (yes/no) . . . ." Dkt. No. 1-5. This would require additional research/analysis/assumptions because it requires STU to make assumptions that the many detainers that may be issued to an alien during a time frame resulted in one detention in ICE custody that occurred on or after the detainer preparation with no indication in the system of record recorded by the officer that the particular ICE detention was a result of the detainer record as implied by the question despite there also being no defined time period post- detainer preparation to confirm this relationship. Even overcoming these operational and reporting limitations, STU would then be required to create a new data model to: (1) identify the relationship between detainers and ICE detentions; (2) analyze if it falls after the detainer preparation to identify the implied relationships; and (3) and create a calculation based upon the findings to create this new record that did not previously exist nor currently exists or is tracked by ICE. Jones Decl. ¶ 37.

10

As a fourth example, item #42 asked for "aggravated felon (yes/no)." Dkt. No. 1-5. This would require additional research/analysis/assumptions because the only values that are recorded by an officer in the system of record related specifically to aggravated felonies are to identify the type of aggravated felonies. Officers are not required to record supporting information with the Aggravated Felon Type Code or any other criminal information that is recorded in the system of record. This requires STU to: (1) build a data model to analyze all criminal information entered, including attempting to reconcile the "Aggravated Felon Type" that is provided in #43; (2) make operational assumptions based upon potential contradictory data for this new definition of an aggravated felon; and (3) create a new record to identify an aggravated felon in the system as, ICE does not track this particular data point. Jones Decl. ¶ 37.

Answering questions and creating records for these types of data requests is not required by the FOIA.

### 2. *Certain Data Points Requested by Plaintiffs Were Not Reasonably Described and/or Did Not Exist in the Form Requested.*

Certain data requested by Plaintiffs does not exist in the database as requested and would require ICE to make interpretations and assumptions before building and creating a new record based on additional analysis and calculations because Plaintiffs' requests are not reasonably specific. In order to provide records that fall into this category, a STU analyst would have to research potential data values in IIDS, the operational use of those values inputted by officers that do exist and make further assumptions that these data values satisfy the intent of the requested terms. This additional analysis will include the creation of calculations, as well as new data search and query methodologies because they relate to data that ICE does not track in the manner the data was requested. Jones Decl. ¶ 26, 39. In other words, the discrete piece of information sought by

11

Plaintiffs does not exist in the database as requested. A STU analyst would have to make interpretations and assumptions (not reasonably described by Plaintiffs) before conducting additional analysis, research, and calculations, and then create a new piece of discrete information that did not exist previously, resulting in the creation of a new record. For this reason, ICE did not produce forty (40) data points requested in FOIA Request #1 and forty (40) data points requested in FOIA Request #2. Jones Decl. ¶¶ 27, 40.

It is well-settled that "FOIA imposes no duty on the agency to create records." *Forsham v. Harris*, 445 U.S. 169, 186 (1980); *see Sears*, 421 U.S. at 161–62;. A FOIA requester "is entitled only to records that an agency has in fact chosen to create and retain" and "an agency is not required by FOIA to create a document that does not exist in order to satisfy a request." *Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982) (citing *Sears*, 421 U.S. at 161–62). Here, the agency has produced all data points requested by Plaintiffs that existed as agency records.

FOIA also requires that a request "reasonably describe" the records sought. 5 U.S.C. § 552(a)(3)(A). A reasonable description of records is "one that enables 'a professional employee of the agency who [is] familiar with the subject area of the request to locate the record with a reasonable amount of effort.'" *Ruotolo v. Dep't of Justice*, 53 F.3d 4, 10 (2d Cir. 1995) (alterations in original) (quoting FOIA's legislative history, H.R. Rep. No. 93-876 (1974), 1974 U.S.C.C.A.N. 6271). DHS's FOIA regulations require that a requestor "must describe the records that you seek in sufficient detail to enable [Department] personnel to locate them with a reasonable amount of effort. . . . To the extent possible, requesters should include specific information [about each record sought], such as the date, title or name, author, recipient, [and] subject matter of the record . . . ." 6 C.F.R. § 5.3(b).[3] The agency must be able to determine "precisely" which records are being

---

[3]    Some courts view a requestor's failure to reasonably describe the records sought as a failure to exhaust administrative remedies. A plaintiff must exhaust its administrative remedies before filing a FOIA

requested. *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (citation and internal quotation

marks omitted). The agency then is obligated to perform a "reasonable" search in response to the

request framed by the requestor. *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986);

*Zemansky v. EPA*, 767 F.2d 569, 571–73 (9th Cir. 1985). An agency, however, is "not obliged to

look beyond the four corners of the request for leads to the location of responsive documents."

*Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996); *see Williams v. Ashcroft*, 30 F. App'x 5, 6

(D.C. Cir. 2002) (agency need not look for records not sought in initial FOIA request).

FOIA requires requests to be reasonably described because "FOIA was not intended to

reduce government agencies to full-time investigators on behalf of requesters." *Assassination

Archives & Research Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989); *see Bailey v.

Callahan*, Action No. 3:09MC10, 2010 WL 924251, at *4 (E.D. Va. Mar. 11, 2010) ("FOIA

entitles citizens to the disclosure of documents, but does not oblige the government to answer their

questions or establish a research service."). FOIA "was not intended to compel agencies to become

ad hoc investigators for requesters whose requests are not compatible with their own information

retrieval systems" and agencies have "no duty to conduct research or to answer questions." *Blakey

v. Dep't of Justice*, 549 F. Supp. 362, 366–67 (D.D.C. 1982), *aff'd*, 720 F.2d 215 (D.C. Cir. 1983)

---

complaint in court. *See, e.g., Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam); *Spannaus v. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987); *Manfredonia v. SEC*, No. 08-cv-1678(SLT)(LB), 2009 WL 4505510, at *5 (E.D.N.Y. Dec. 3, 2009). In order to exhaust administrative remedies, a plaintiff must submit a valid FOIA request that complies with applicable regulations. *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002) ("An agency's obligations commence upon receipt of a valid [FOIA] request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies."); *see also Manfredonia*, 2009 WL 4505510, at *5; *Latham v. Dep't of Justice*, 658 F. Supp. 2d 155, 159 (D.D.C. 2009). A valid FOIA request is one that "reasonably describes" the records requested and "is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed . . . ." 5 U.S.C. § 552(a)(3)(A). Thus, "[a] FOIA requester may be deemed to have failed to exhaust administrative remedies when the requestor has, *inter alia*, failed to reasonably describe the records being sought . . . ." *Keys v. DHS*, Civ. No. 08-0726(ESH/AK), 2009 WL 614755, at *4 (D.D.C. Mar. 10, 2009).

(unpublished table decision); *Barber v. Office of Info. & Privacy*, No. 02-1748, slip op. at 4 (D.D.C. Sept. 4, 2003), *aff'd*, No. 03-5266 (D.C. Cir. Feb. 20, 2004) (per curiam).

Here, Plaintiffs requested data points, and many were not reasonably described and sufficiently detailed. The agency performed a reasonable interpretation and a reasonable search based on the data points listed, but to the extent that a data point was unclear, not reasonably descriptive, and not precise, the agency was not able to provide the data point beyond what a reasonable interpretation and search would produce.

For example, item #29 asked for "most serious criminal charge [any charge, not restricted to convictions]." Dkt. No. 1-5. A response to this request would require interpretations and assumptions because this field does not exist within IIDS. This would require a STU analyst to (1) interpret or create a definition of the data point requested because it doesn't exist; (2) review and develop a new method to query or pull data under this new definition which requires technical modifications that require further validation, testing, and approval; and (3) perform assumptions and calculations to create a new record that did not exist in IIDS prior to this FOIA request. Jones Decl. ¶ 26.

As a second example, item #14 asked for "earliest date reflecting presence in [the] U.S." Dkt. No. 1-5. This would require a STU analyst to make interpretations and make assumptions. First, there is no corresponding data point for "Earliest entry data". Second, because the only field for "entry date" is not a mandatory field in EARM that officers are required to enter into the database. ICE cannot confirm "earliest date" in the U.S., as an alien may have been present in the U.S. for years prior to coming into contact with ERO. This requires a STU analyst to assume the "earliest date reflecting presence in the U.S." would be the earliest entry date recorded in the system of record for the alien that has the detainer placed. Based upon these assumptions and

14

interpretations, the STU analyst would then be required to: (1) interpret or create a definition of the data point requested (including comprehensively identifying all recorded entry dates for a single alien), because the requested data point doesn't exist; (2) review and develop a new method to pull data under this new definition which requires technical modifications that require further validation, testing, and approval; and (3) finally, perform assumptions and calculations to create a new record for a data point that does not exist in IIDS for this FOIA request. Jones Decl. ¶ 26.

As a third example, item #35 asked for "most serious criminal conviction offense." Dkt. No. 1-5. A response to this request would require interpretations and assumptions because this field does not exist within IIDS. This would require a STU analyst to (1) interpret or create a definition of the data point requested because it doesn't exist; (2) review and develop a new method to query or pull data under this new definition which requires technical modifications that require further validation, testing, and approval; and (3) perform assumptions and calculations to create a new record that did not exist in IIDS prior to this FOIA request. Jones Decl. ¶ 39.

As a fourth example, item #55 (1)-(5) asked for "ICE Priority indicator(s)" with further subcategories, and do not exist in the database as written. Dkt. No. 1-5. These "ICE Priorities indicator(s)," including the subcategories, require assumptions to be made as what these indicators reference. These said "ICE Priorities indicator(s)" are not captured in the system by the officer, and operationally, have no relevancy towards the detainer population(s). From a technical standpoint in order to create a new record to satisfy this request, STU would have to (1) interpret or create develop definitions based on a series of assumptions that do not align with operational reporting or current ICE policies, (2) define the business requirements and append the data model for detainers, (3) create calculations, including a prioritization, to assign "indicators" that may or

may not be accurate, and finally (4) creates a series of new records that did not exist prior to this FOIA request. Jones Decl. ¶ 39.

Having to make interpretations and assumptions before conducting research, which would ultimately end up with the creation of new records, is not required by FOIA.

### 3. *Certain Data Points Requested by Plaintiffs Do Not Exist.*

ICE also did not produce certain data requested by Plaintiffs because such data does not exist in the database as written. Jones Decl. ¶ 28, 41. For this reason, ICE did not produce seventeen (17) data points requested in FOIA Request #1 (Dkt. No. 1-1) and twenty-seven (27) data points requested in FOIA Request #2 (Dkt. No. 1-5). Jones Decl. ¶¶ 29, 42.

For example, item #63 asked for "name of the original arresting or conviction authority." Dkt. No. 1-5. IIDS does not contain the name of the original arresting or conviction authority, and there is nowhere that requires the officer to record this information operationally in ERO's databases. Jones Decl. ¶ 28.

As a second example, item #108 asked for "Sequence number or other designation to identify records relating to the same alien." Dkt. No. 1-5. IIDS does not contain one single identifier for the same 'alien' that would then be sequential in nature and carry across each Data Extract, Transform, Load (ETL) cycle change. Jones Decl. ¶ 28.

As a third example, item #69(4) asked for "level of security" as a sub-bullet for #69 "type of facility in which the individual was detained where the Form I-247N was sent including[.]" Dkt. No. 1-5. IIDS does not contain the level of security of an original arresting or conviction authority and is unable to report this. Jones Decl. ¶ 41.

16

As a fourth example, items #102–104 asked for "DTA_REQ_ACCEPT_IND", "DTA_REQ_DEATH_TRANSF_IND", and "DTA_REQ_ENVELOPE_IND" and are all examples of historical data fields that no longer exist on the Form I-247N form, and therefore are not captured in the system of record for the requested population and cannot be reported on. Jones Decl. ¶ 41.

As noted above, an agency "is not required to create documents that don't exist." *Stuler v. IRS*, No. 05-CV-1717, 2006 WL 891073, at *3 (W.D. Pa. Mar. 31, 2006). Consequently, ICE properly did not produce this category of data points requested by Plaintiffs.

## CONCLUSION

The declarations filed herein and attached exhibits demonstrate that ICE has met its obligations under FOIA and establish that there are no genuine issues as to any material fact in this case. Accordingly, for the reasons set forth above, ICE respectfully requests that this Court grant summary judgment in its favor.

Dated: November   , 2017          GRANT C. JAQUITH
                                   Acting United States Attorney

                                 By: _____
                                     Charles E. Roberts
                                     Assistant United States Attorney
                                     Bar Roll No. 102454

# EXHIBIT M

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN B. LONG ) | |
| ) | |
| and ) | |
| ) | |
| DAVID BURNHAM ) | Civil Action No. 17-cv-00506 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| U.S. IMMIGRATION AND CUSTOMS ) | |
| ENFORCEMENT ) | |
| Defendant. ) | |

## DECLARATION OF MARLA JONES
### IN SUPPORT OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY'S MOTION FOR SUMMARY JUDGMENT

**I.     INTRODUCTION**

I, Marla Jones, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the Unit Chief of the Statistical Tracking Unit ("STU") within Enforcement and Removal Operations ("ERO") Law Enforcement and Systems Analysis ("LESA") at U.S. Immigration and Customs Enforcement ("ICE").  I have held this position since January 2016.  I previously served as the Acting Chief of STU from July 2015 until accepting the position, and prior to that, served as Detention and Deportation Officer subject matter expert within STU since June 2013.  I have served as an officer for ERO since January 2008.  The LESA STU mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2.      The LESA STU is responsible for providing all official ERO reporting to Congress, the White House, and other internal and external stakeholders, in addition to the public through the FOIA.

1

3.      As the Unit Chief for the STU, my official duties and responsibilities include the general management, oversight, and supervision of a staff of Statisticians, Detention and Deportation Officers (Subject Matter Experts), Program Analyst, and Mission Support staff.  The STU is responsible for providing operational reports and strategic analysis to stakeholders and senior leadership on behalf of ERO.

4.      I make this declaration in support of ICE's Motion for Summary Judgment in the above-captioned action.  The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

5.      In my role as the Unit Chief for the STU, I am familiar with the following FOIA requests submitted by Susan Long and David Burnham on behalf of the Transactional Records Access Clearinghouse ("TRAC") to ICE:

      a.  FOIA request 2017-ICFO-08061, dated November 30, 2016, asking for "the latest anonymous data concerning Form I-247/I-247D requests issued for FY 2015 through November 2016."

      b.  FOIA request 2017-ICFO-08062, dated November 30, 2016, asking for "the latest anonymous data concerning Form I-247N requests issued for November 2016."

## II.      DESCRIPTION OF THE EID/IIDS DATA REPOSITORIES

6.      The Enforcement Integrated Database ("EID") is owned and operated by ICE and is used primarily to support the law enforcement activities of certain Department of Homeland Security ("DHS") components, including ICE and U.S. Customs and Border Protection ("CBP").  The EID is the common database repository for all records created, updated, and accessed by a number of software

2

applications. The EID allows ICE officers to manage cases from the time of an alien's arrest, in-processing, or placement into removal proceedings, through the final case disposition (*i.e.*, removal or granting of immigration benefits). It also contains law enforcement sensitive information relating to investigations, enforcement operations, and checks of other law enforcement databases. The EID is a 24x7 operational database with more than 55,000 users. The EID houses data and business rules that are integrated with other systems through direct database connectivity or complex interfaces.

7. The EID captures and maintains information related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and law enforcement investigations and operations conducted by ICE and CBP. The EID provides users with the capability to access a person-centric and/or event-centric view of the data. Users can also print records containing the EID data, which are used for criminal and administrative law enforcement purposes and typically are retained in criminal investigative files, detention files, and Alien Files ("A-Files").

8. As ICE's operational database, the EID is used to store data captured 24 hours a day, by ICE and CBP law enforcement personnel who input or update law enforcement sensitive information about individuals that have been encountered or arrested by ICE or CBP law enforcement components. The data includes information about individuals that will be turned over to ICE, those currently in custody, those that have been released, and those that are targeted for future enforcement actions. The EID is used as data storage throughout the immigration enforcement lifecycle from arrest to removal or release.

9. For the two FOIA requests that are the subject of this litigation, ICE conducted searches utilizing the ICE Integrated Decision Support System ("IIDS"). The IIDS contains a subset of data from the EID database that is updated regularly 3 days a week. When it is provided, it completely replaces the older snapshot/extract with the new data and the older data is not retained.

3

10.     Additionally, the IIDS contains information that is adapted for efficient report writing. While the EID contains information needed for ICE officers and agents to advance the agency's mission to promote homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade, and immigration, the IIDS contains a subset of case and enforcement-related information that is used to create reports for consumption.

11.     The IIDS supports queries of the snapshot EID data for operational or executive reporting purposes.  ICE queries IIDS instead of the EID to protect the integrity of the live data held in the EID operational environment and to prevent the performance of EID from being diminished. For the two FOIA requests that are the subject of this litigation, ICE conducted searches of the IIDS.

### III.     DESCRIPTION OF DETAINER FORMS RELATED TO 2017-ICFO-08061

12.     Under the Priority Enforcement Program ("PEP"), ICE placed a detainer on an alien who had been arrested on state or local criminal charges and for whom ICE possessed probable cause to believe that the alien was both an immigration enforcement priority and removable from the United States.  The legacy detainer form, I-247 Immigration Detainer-Notice of Action, was primarily utilized prior to July 2015, by ICE government employees when preparing and updating the detainer form utilizing EAGLE, which then stores the data points electronically in the EID.  The available data is then brought into IIDS from the EID.  Not all fields on the form are required to be completed, entered, and tracked electronically, and thus some of the data points cannot be reported. Additionally, not all fields on the form have corresponding electronic fields in the EID and those fields are also unavailable for reporting.

13.     The detainer form I-247D, Immigration Detainer-Request for Voluntary Action, was made available electronically in EAGLE to ICE government employees in July 2015, to utilize in place of the legacy I-247 form with the same operational purpose.  See Exhibit 1.  The available data is then

4

brought into IIDS from the EID. Not all fields on the form are required to be completed, entered, and tracked electronically, and thus some of the data points cannot be reported. Additionally, not all fields on the form have corresponding electronic fields in the EID and those fields are also unavailable for reporting.

### IV.     DESCRIPTION OF NOTICE FORMS RELATED TO 2017-ICFO-08062

14.     The form I-247N, Request for Voluntary Notification of Release of Suspected Priority Alien, requests that the receiving state or local LEA notify ICE of the pending release from custody of a suspected priority removable individual at least 48 hours prior to release, if possible. See Exhibit 2. The Form I-247N was made available electronically in EAGLE to ICE government employees in July 2015. The data is then brought into IIDS from the EID for reporting purposes in the same manner as the Form I-247D.

### V.     DESCRIPTIONS OF ERO AND PROGRAM OFFICES TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO PLAINTIFF'S FOIA REQUESTS

15.     ERO enforces the nation's immigration laws. ERO identifies and apprehends removable aliens, detains these individuals when necessary, and removes illegal aliens from the United States. ERO transports removable aliens from point to point, manages aliens in custody or in an alternative to detention program, provides access to legal resources and representatives of advocacy groups, and removes individuals from the United States who have been ordered to be deported. ERO's mission is carried out nationwide by 24 ERO Field Offices, each with its own area of responsibility.

16.     When ERO receives a FOIA tasking from the ICE FOIA Office, the request is submitted to ERO's Information Disclosure Unit ("IDU"). POCs in IDU review the substance of the request. Based on subject matter expertise and knowledge of the program offices' activities within ERO, IDU forwards the FOIA request to specific individuals and component offices, and directs specific employees

5

to conduct searches of their file systems (including both paper files and electronic files). Employees conduct these searches based on their judgment and knowledge of the manner in which they routinely keep records and where they would be reasonably likely to have responsive records, if any. The employees exercise discretion, based on their operational knowledge and subject matter expertise, in choosing the specific search terms utilized to ascertain whether or not potentially responsive documentation exists. Once searches are completed, the individuals and component offices provide any potentially responsive records to the IDU POC, who in turn provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and processes the records, if any, for applicable exemptions prior to release to the requestor.

**VI. THE SEARCH CONDUCTED FOR 2017-ICFO-08061**

17. On December 2, 2016, the ICE FOIA Office tasked ERO with responding to Plaintiffs' FOIA request. A POC in ERO IDU received and reviewed the request. Based upon subject matter expertise and knowledge of the program offices' activities within ERO, IDU determined searches at the headquarters ("HQ") level for potentially responsive documentation should be conducted. Accordingly, IDU tasked LESA, as LESA was reasonably likely to have responsive records.

18. Upon receipt of the initial FOIA request from IDU on December 7, 2017, a FOIA POC in LESA reviewed the substance of the request and, based on their experience and knowledge of their office's practices and activities tasked the STU to search for potentially responsive documentation. From December 7-8, 2016, a STU analyst conducted a line-by-line review of the requested information taking into consideration standard reporting of detainer methodologies as well as consulting the database to query all available responsive detainer information as requested from IIDS. Upon completion of the search, LESA submitted one Excel Spreadsheet to IDU on December 21, 2016. The responsive pages were processed by the ICE FOIA Office and released to the Plaintiffs on January 10, 2017.

19.     Plaintiffs' FOIA Request, 2017-ICFO-08061 sought a total of 148 data points, including sub-bulleted data points contained within the 112 primary line items requested.  LESA STU provided 72 data points to the Plaintiffs in the January 10, 2017 response.  There were 76 data points that Plaintiffs requested that ICE did not provide.

20.     When responding to each data point that was requested, STU's initial determination was whether or not ERO has the specific data point stored in IIDS as requested in the FOIA request.  If the data point exists within IIDS and does not require additional research, analysis, assumptions and/or calculations, or the creation of a new record, ICE provided the data point in in the responsive Excel spreadsheet (72 data points).  If the data point did not exist in IIDS or required additional research, analysis, interpretations, assumptions and/or calculations and ultimately required the creation of new records, ICE did not provide the data point to Plaintiffs.

21.     To provide the following 72 data points, a STU analyst conducted a line-by-line review of the requested information taking into consideration standard reporting of detainer methodologies as well as consulting the database to query all available responsive removal information as requested from IIDS.

22.     There were 72 data points provided to the Plaintiffs in the January 10, 2017 response:

| Item # | Information Requested |
|---|---|
| 1 | Date Form l-247D was issued |
| 2 | Subject of l-247D previously transferred to addressee's custody and DHS intends to resume custody of the subject to complete processing |
| 3 | DHS SUSPECTS THAT THE SUBJECT IS A REMOVABLE ALIEN AND THAT THE SUBJECT IS AN IMMIGRATION ENFORCEMENT PRIORITY BECAUSE HE/SHE: |
| 3 | 1.     Has engaged in or is suspected of terrorism or espionage, or otherwise poses a danger to national security, |
| 3 | 2.     Has been convicted of an offense of which an element was active participation in a criminal street gang, as defined in 18 USC 521(a), or is at least 16 years old and intentionally participated in an organized criminal gang to further its illegal activities, |

7

| 3 | 3.   Has been convicted of an offense classified as a felony, other than a state or local offense for which an essential element was the alien's immigration status, |
|---|---|
| 3 | 4.   Has been convicted of an aggravated felony, as defined under 8 USC 110(a)(43} at the time of conviction, |
| 3 | 5.   Has been convicted of a 'significant misdemeanor,' as defined under DHS policy, and/or |
| 3 | 6.   Has been convicted of 3 or more misdemeanors, not including minor traffic offenses and state or local offenses for which immigration status was an essential element, provided the offenses arise out of 3 separate incidents. |
| 3 | 7. Probable cause exists that the subject is a removable alien (yes/no). |
| 3 | 8. Determination that probable cause exists that the subject is a removable alien based on: |
| 3 | 8 (1). A final order of removal against the subject |
| 3 | 8 (2). The pendency of ongoing removal proceedings against the subject |
| 3 | 8 (3).  Biometric confirmation of the subject's identity and records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law, and/or |
| 3 | 8 (4) Statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law |
| 3 | 9 (1). Has a prior felony conviction or has been charged with a felony offense, |
| 3 | 9 (2). Has three or more prior misdemeanor convictions, |
| 3 | 9 (3). Has a prior misdemeanor conviction or has been charged with a misdemeanor for an offense that involves violence, threats, or assaults, sexual abuse or exploitation, driving under the influence of alcohol or a controlled substance, unlawful flight from the scene of an accident, the unlawful possession or use of a firearm or other deadly weapon, the distribution or trafficking of a controlled substance, or other significant threat to public safety, |
| 3 | 9 (4). Initiated removal proceedings and served a Notice to Appear or other charging document, |
| 3 | 9 (5). Served a warrant of arrest for removal proceedings |
| 3 | 9 (6). Obtained an order of deportation or removal from the United States for this person |
| 3 | 9 (7). Has been convicted of illegal entry pursuant to 8 USC 1325 |
| 3 | 9 (8).  Has illegally re-entered the country after a previous removal or return, |
| 3 | 9 (9).  Has been found by an immigration officer or an immigration judge to have knowingly committed immigration fraud, |
| 3 | 9 (10). Otherwise poses a significant risk to national security, border security, or public safety, and/or |
| 3 | 9 (11).  Other (specify) |

| | |
|---|---|
| 4 | Date Form I-247/I-247D was canceled or Form I-247/I-247D indicates that prior detainer request related to the subject should be disregarded (where applicable) |
| 5 | Reason for cancelation or withdrawal of request |
| 6 | Whether Form I-247/I-247D request indicated it was "operative only upon the subject's conviction" |
| 7 | ICE area of responsibility (AOR) issuing the Form I-247/I-247D |
| 15 | gender |
| 16 | country of birth |
| 17 | country of citizenship |
| 19 | year of birth |
| 20 | date of original entry |
| 23 | original entry status |
| 43 | aggravated felon type |
| 49 | Detainer Threat Level |
| 66 | name of the jail or facility in which the individual was detained where the Form I-247/I-247D was sent |
| 67 | code of the jail or facility in which the individual was detained where the Form I-247/I-247D was sent |
| 68 | city, county and state of the jail or facility in which the individual was detained prior where the Form I-247/I-247D was sent |
| 69 | type of facility in which the individual was detained where the Form I-247/I-247D was sent including: |
| 77 | DTA_ACTIVE_IND |
| 79 | DTA_ACT_INVT_IND |
| 80 | DTA_ACT_OSC_DT |
| 81 | DTA_ACT_OSC_IND |
| 83 | DTA_ACT_WA_IND |
| 84 | DTA_CIV_ID |
| 85 | DTA_CREATE_DT |
| 86 | DTA_DTF ID |
| 87 | DTA_DTLC_CD |
| 88 | DTA_FED_REG_IND |
| 89 | DTA_GTE_ID |
| 90 | DTA_GTE_ID_RETURN_TO |
| 91 | DTA_ID |
| 92 | DTA_INMATE_NBR_ TYPE_ CD |
| 93 | DTA_LIFT_DT |
| 95 | DTA_OTHER_FACILITY |
| 96 | DTA_PREPARE_DT |
| 98 | DTA_RELEASE_DAY |
| 99 | DTA_RELEASE_DT |
| 100 | DTA_RELEASE_MONTH |
| 101 | DTA_RELEASE_YEAR |
| 102 | DTA_REQ_ACCEPT_IND |
| 103 | DTA_REQ_DEATH_TRANSF IND |

| 104 | DTA_REQ_ENVELOPE_IND |
|-----|----------------------|
| 105 | DTA_REQ_NOTIFY_RELEASE_IND |
| 106 | DTA_REQ_RETURN_SIG_IND |
| 107 | DTA_RETURN_BY_FAX_I ND |
| 109 | Subject ID so Form I-247D record can be associated with DHS data on other activity related to this individual |
| 110 | EID Person ID so Form I-247D record can be associated DHS data on other activity related to this individual |
| 112 | Form I-247D so record can be associated with DHS data on other actions related to this Form I-247/I-247D |

23.     The 76 data points requested that were not provided fall into three categories.

24.     Category (1) of data requested but not provided (19 data points) - the data requested asks a question or is an implied question that does not exist itself in the database in the manner requested, and would require research, analysis, assumptions, and/or calculations, and thus would lead to the creation of a new record which did not previously exist.  In order to provide data points that would fall into Category (1), a STU analyst would have to research potential data values in IIDS, the operational use of those values inputted by officers that do exist, and make further assumptions that these data values satisfy the intent of their question.  This additional analysis and calculation will include the creation of new records in response to the questions and implied questions submitted by the Plaintiffs.  For example, item #8 asked for "Following the preparation of the Form I-247/I-247D, ICE administratively arrested individual (yes/no); if yes, date of ICE arrest."  A response to this inquiry requires the STU analyst to conduct additional research/analysis/assumptions and or calculations. This requires a STU analyst to assume that for a single alien, ICE issued a single detainer, when it is possible more than one was issued.  It then requires that ICE assume that an arrest following an issuance of a detainer was the result of the detainer, which appears to be an implied question in Plaintiff's request.  However, the EID contains no data point to reflect if ICE arrested an alien as a result of a detainer.  ICE does not track relationships between detainers being issued and arrests of an alien, thus no data point exists to answer

10

the Plaintiffs question as requested in the FOIA request.  Even if able to overcome these operational and

reporting limitations, STU would then be required to create a new data model to (1) identify the

relationship between detainers and arrests, (2) analyze if the arrest falls after the detainer preparation to

identify the implied relationships, (3) and create a calculation based upon the findings which would

result in the creation of a new record that did not previously exist, nor currently exists or is tracked by

ICE.  A second example, item #25 asked for "U.S. citizen spouse (yes/no)."  This would also require

additional research/analysis/assumptions and calculations as there is no data set in any ICE system

where ICE records the existence of a spouse, much less whether the spouse is a citizen.  While an officer

does have the ability to record information on relatives in case notes, there is no requirement to identify

citizenship much less confirm that accuracy of the self-reported information.  Aside from the operational

limitations, in order to answer this questions submitted by the Plaintiff, the analyst would be required (1)

to build a new data query to comprehensively identify an "alien" record and all reported spousal records

recorded for the "alien" record in the system (2) append the current data model in order pull all relative

information for these identified alien records who had a detainer prepared in the requested timeframe,

(3) analyze citizenship claims and create a flag for U.S. citizenship for those relatives while making

further assumptions  that null information implies either they are not married or other citizenships for

spouses must be Non-U.S. Citizenship.  This would result in the creation of a new record as these are all

currently data points that ICE does not track or record in an operational manner, and thus these data

points do not exist in the IIDS database.

     25.     The following 19 data points which fall into Category (1) and were not provided to

Plaintiffs:

| Item # | Information Requested |
|---|---|
| 8 | Following the preparation of the Form I-247/I-247D, ICE administratively arrested individual (yes/no); if yes, date of ICE arrest. |

| 9 | Following the preparation of the Form I-247/I-247D, individual was booked into ICE Custody (yes/no); and if yes: |
| --- | --- |
| 9 | a. If yes, date booked into ICE custody and |
| 9 | b. If yes, recorded apprehension method. |
| 10 | Following the preparation of the Form I-247/I-247D, OSC was filed in immigration court (yes/no); if yes, date OSC filed and specific charges to support request for removal cited. |
| 11 | Following the preparation of the Form I-247/I-247D, individual was deported (yes/no); if yes, date of deportation, latest processing disposition code, program code and case category at time of departure |
| 25 | U.S. citizen spouse (yes/no) |
| 26 | U.S. citizen parents (yes/no) |
| 27 | U.S. citizen child (yes/no) |
| 28 | charged with a crime (yes/no) [any charge, not restricted to convictions] |
| 33 | convicted of a crime (yes/no) |
| 41 | information on the charge for the specific arrest that gave rise to the I-247/I-247D being placed (did actual charge result (yes/no), date of charge, current status, date of conviction if applicable, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received if applicable) |
| 42 | aggravated felon (yes/no) |
| 59 | whether at the time the Form I-247/I-247D was issued the individual was serving time after conviction for a criminal offense (yes/no) |
| 60 | if the individual was serving time, the information concerning that offense [date of the charge, date of the conviction, date serving sentence began, where the individual was incarcerated at the time the FORM I247/ I-247D was issued, whether facility is a federal, state, or local facility, the facility code, facility name, state, county, city, facility address), NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received] |
| 70 | Was the Form I-247/I-247D issued as part of the 287(g) program (yes/no) |
| 71 | Was the Form I-247/I-247D issued following an IOENT/IAFIS Interoperability match (yes/no) |
| 72 | Was the Form I-247/I-247D issued following an IDENT/IAFIS Interoperability match included in the monthly statistics released for Secure Communities (yes/no) |
| 73 | Was the original Form I-247/I-247D issued as a result of an arrest by the Border Patrol (yes/no) |

26. Category (2) of data requested but not provided (40 data points) - the data requested does not exist in the database as requested and requires ICE to make interpretations and assumptions before building a new record based off of additional analysis and calculations. In order to provide records that would fall into Category (2), a STU analyst would have to research potential data values in IIDS, the

12

operational use of those values inputted by officers that do exist and make further assumptions that these

data values satisfy the intent of the requested terms.  This additional analysis will include the creation of

calculations and new data search and query methodologies as they relate to data that ICE does not track

in the manner in which the data was requested.  For example, item #29 asked for "most serious criminal

charge [any charge, not restricted to convictions]."  A response to this request would require

interpretations and assumptions because this field does not exist within IIDS.  This would require a STU

analyst to (1) interpret or create a definition of the data point requested because it doesn't exist; (2)

review and develop a new method to query or pull data under this new definition which requires

technical modifications that require further validation, testing, and approval; and (3) perform

assumptions and calculations to create a new record that did not exist in IIDS prior to this FOIA request,

and is not a data point that ICE tracks or utilizes in an operational manner.   As a second example, item

#14 asked for "earliest date reflecting presence in the U.S."  This would require a STU analyst to make

interpretations and make assumptions.  First, there is no corresponding data point for "Earliest entry

data".  Second, because the only field for "entry date" is not a mandatory field in EARM that officers

are required to enter into the database.  ICE cannot confirm "earliest date" in the U.S., as an alien may

have been present in the U.S. for years prior to coming into contact with ERO.  This requires a STU

analyst to assume the "earliest date reflecting presence in the U.S." would be the earliest entry date

recorded in the system of record for the alien that has the detainer placed.  Based upon these

assumptions and interpretations, the STU analyst would then be required to: (1) interpret or create a

definition of the data point requested (including comprehensively identifying all recorded entry dates for

a single alien), because the requested data point  doesn't exist; (2) review and develop a new method to

pull data under this new definition which requires technical modifications that require further validation,

testing, and approval; and (3) finally, perform assumptions and calculations to create a new record for a

data point that does not exist in IIDS for this FOIA request.

    27.    The following 40 data points which fall into Category (2) and were not provided to

Plaintiffs:

| Item # | Information Requested |
|---|---|
| 12 | Code of detention facility initially booked into |
| 13 | Name of detention facility initially booked into |
| 14 | Initial book-in date |
| 18 | age |
| 21 | date of last entry |
| 22 | earliest date reflecting presence in U.S. |
| 24 | last entry status |
| 29 | most serious criminal charge [any charge, not restricted to convictions] |
| 30 | date of most serious criminal charge [any charge, not restricted to convictions] |
| 31 | status of most serious criminal charge [any charge, not restricted to convictions] |
| 32 | NCIC code for most serious criminal charge [any charge, not restricted to convictions] |
| 34 | level of most serious criminal conviction (felony, misdemeanor, citation, etc.) |
| 35 | most serious criminal conviction offense |
| 36 | date of most serious criminal conviction |
| 37 | sentence for most serious criminal conviction |
| 38 | NCIC code for most serious criminal conviction offense |
| 39 | information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received) |
| 40 | information on every charge not just the most serious for which a conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.)) |
| 44 | Any and all information used in determining whether the person is or isn't an aggravated felon and particular type |
| 45 | meets requirements if held for mandatory detention (yes/no) |
| 46 | Any and all information used in determining whether or not mandatory detention would be required if held |
| 47 | RC Threat Level |
| 48 | All information used in determining the RC Threat Level for each person |
| 50 | All information used in determining the Detainer Threat Level for each person |
| 53 | Convicted Criminal Ll,L2, L3 |
| 54 | Any and all information used in determining the convicted criminal level for each person |
| 55 | ICE Priority indicator(s): |

14

| 55 | 1. ICE fugitive (and if yes, date of previously issued removal order) |
|----|----------------------------------------------------------------------|
| 55 | 2. Prior removal and return (and if yes, date of previous removal order) |
| 55 | 3. Entered without inspection |
| 55 | 4. Overstayed visa |
| 55 | 5. Recent border crosser |
| 56 | All information used in determining the ICE priority level for each person |
| 57 | Priority per November 20,2014 memorandum on policies for the apprehension, detention, and removal of undocumented immigrants) |
| 58 | Any and all information used in determining Priority per November 20,2014 memorandum |
| 61 | case category at time Form I-247/I-247D issued |
| 62 | program code at time I-247/I-247D issued |
| 74 | name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation streamline, other border patrol program, secure communities, 287(g), etc.) |
| 75 | the apprehension method associated with the latest apprehension |
| 76 | name of the non-ICE agency associated with the original arrest or apprehensio".1 (if applicable) |

28.     Category (3) of data requested but not provided (17 data points) - the data cannot be provided as it does not exist in the database as requested.  For example, item #63 asked for "name of the original arresting or conviction authority."  IIDS does not contain the name of the original arresting or conviction authority and there is nowhere that requires the officer to record this information operationally in ERO's databases.  As a second example, item #108 asked for "Sequence number or other designation to identify records relating to the same alien."  IIDS does not contain one single identifier for the same 'alien' that would then be sequential in nature and carry across each Data Extract, Transform, Load ("ETL") cycle change.[1]

29.     The following 17 data points which fall into Category (3) and were not provided to Plaintiffs:

---

[1] The Extract, Transform, Load (ETL) cycle refers to the process that occurs 3 days a week when the IIDS database is updated with data from the Enforcement Integrated Database (EID).  During the ETL process, data is pulled from the EID (extracted); optimized and reformatted in a way that aids reporting (transformed), and added into the IIDS reporting database (loaded) for use by the reporting tool.

15

| Item # | Information Requested |
|---|---|
| 51 | LESC Ll,L2, L3 |
| 52 | All information used in determining the LESC level for each person |
| 63 | name of the original arresting or conviction authority |
| 64 | city, county and state of the original arresting or conviction authority |
| 65 | date of the original arrest/conviction or book-in |
| 69 | 1. ownership (federal, state, local, private), |
| 69 | 2. type (prison, jail, hospital, other), |
| 69 | 3. special characteristics (juvenile facility, family facility, etc.) |
| 69 | 4. level of security |
| 69 | 5. operated by government vs private company and if private, name of private company |
| 69 | 6. facility under government contract with ICE to provide services (and if yes, contract number, contract date, and organization contract with |
| 69 | 7. facility under government contract with other than ICE to provide services (and if yes, name of government entity contract with, contract number, contract date and organization contract with |
| 78 | DTA_ACT_DEPORT_IND |
| 94 | DTA_OTHER_DFTC_CD |
| 97 | DTA_RDLC_CD |
| 108 | Sequence number or other designation to identify records relating to the same alien |
| 111 | Any other ID recorded in ICE records so that the FormI-247/I-247D record can be associated with other activity or information related to this individual |

## VII.    THE SEARCH CONDUCTED FOR 2017-ICFO-08062

30.    On December 2, 2016, the ICE FOIA Office tasked ERO with responding to Plaintiffs' FOIA request.  A POC in ERO IDU received and reviewed the request.  Based upon subject matter expertise and knowledge of the program offices' activities within ERO, IDU determined searches at the HQ level for potentially responsive documentation should be conducted.  Accordingly, IDU tasked LESA, as LESA was reasonably likely to have responsive records, if any.

31.    Upon receipt of the initial FOIA request from IDU on December 7, 2016, a FOIA POC in LESA reviewed the substance of the request and, based on their experience and knowledge of their office's practices and activities, tasked STU to search for potentially responsive data.  From December 7-8, 2016, a STU analyst conducted a line-by-line review of the requested information taking into

16

consideration standard reporting of detainer methodologies as well as consulted the database to query all available responsive detainer information as requested from IIDS. Upon completion of the search, the LESA submitted one Excel Spreadsheet to IDU on December 13, 2016. The responsive pages were processed by ICE FOIA and released to the Plaintiffs on February 2, 2017.

32.     Plaintiffs' FOIA Request, 2017-ICFO-08062 contained a total of 132 data points, including sub-bulleted data points contained within the 112 primary line items requested. LESA provided 46 data points to the Plaintiffs in the February 2, 2017 response. There were 86 data points that were requested by the Plaintiffs that ICE did not provide.

33.     When responding to each data point that was requested, STU's initial determination was whether or not ERO has the specific data point stored in IIDS as requested in the FOIA request. If the data point exists within IIDS and does not require additional research, analysis, assumptions and/or calculations, or the creation of a new record, ICE provided the data point in in the responsive Excel spreadsheet (46 data points.) If the data point did not exist in IIDS or required additional research, analysis, interpretations, assumptions and/or calculations and ultimately required the creation of new records, ICE did not provide the data point to Plaintiffs.

34.     To provide the following 46 data points, a STU analyst conducted a line-by-line review of the requested information taking into consideration standard reporting of detainer methodologies as well as consulting the database to query all available responsive detainer information as requested from IIDS.

35.     The following 46 data points were provided to the Plaintiffs in the February 2, 2017 response:

| Item # | Information Requested |
|--------|----------------------|
| 1 | Date Form l-247N was issued |

| 2 | Subject of l-247N previously transferred to addressee's custody and DHS intends to resume custody of the subject to complete processing |
|---|---|
| 3 | DHS SUSPECTS THAT THE SUBJECT IS A REMOVABLE ALIEN AND THAT THE SUBJECT IS AN IMMIGRATION ENFORCEMENT PRIORITY BECAUSE HE/SHE: |
| 3 | 1.   Has engaged in or is suspected of terrorism or espionage, or otherwise poses a danger to national security, |
| 3 | 2.   Has been convicted of an offense of which an element was active participation in a criminal street gang, as defined in 18 USC 521(a), or is at least 16 years old and intentionally participated in an organized criminal gang to further its illegal activities, |
| 3 | 3.   Has been convicted of an offense classified as a felony, other than a state or local offense for which an essential element was the alien's immigration status, |
| 3 | 4.   Has been convicted of an aggravated felony, as defined under 8 USC 110(a)(43} at the time of conviction, |
| 3 | 5.   Has been convicted of a 'significant misdemeanor,' as defined under DHS policy, and/or |
| 3 | 6.   Has been convicted of 3 or more misdemeanors, not including minor traffic offenses and state or local offenses for which immigration status was an essential element, provided the offenses arise out of 3 separate incidents. |
| 4 | Date Form l-247N was canceled or Form 1-247 indicates that prior notification request related to the subject should be disregarded (where applicable) |
| 5 | Reason for cancelation or withdrawal of request |
| 7 | ICE area of responsibility (AOR) issuing the Form 1-247N |
| 15 | gender |
| 16 | country of birth |
| 17 | country of citizenship |
| 19 | year of birth |
| 20 |  date of original entry |
| 23 | original entry status |
| 43 | aggravated felon type |
| 49 | Detainer Threat Level |
| 66 | name of the jail or facility in which the individual was detained where the FORM I-247N was sent |
| 67 | code of the jail or facility in which the individual was detained where the Form I-247N was sent |
| 68 | city, county and state of the jail or facility in which the individual was detained prior where the Form l- 247/1-247D was sent |
| 69 |  type of facility in which the individual was detained where the Form I-247N was sent including: |
| 77 | DTA_ACTIVE_IND |
| 79 | DTA_ACT_INVT_IND |
| 84 | DTA_CIV_ID |
| 85 | DTA_CREATE_DT |

18

| 86 | DTA_DTF ID |
| 87 | DTA_DTLC_CD |
| 88 | DTA_FED_REG_IND |
| 89 | DTA_GTE_ID |
| 90 | DTA_GTE_ID_RETURN_TO |
| 91 | DTA_ID |
| 92 | DTA_INMATE_NBR_ TYPE_ CD |
| 93 | DTA_LIFT_DT |
| 95 | DTA_OTHER_FACILITY |
| 96 | DTA_PREPARE_DT |
| 98 | DTA_RELEASE_DAY |
| 99 | DTA_RELEASE_DT |
| 100 | DTA_RELEASE_MONTH |
| 101 | DTA_RELEASE_YEAR |
| 105 | DTA_REQ_NOTIFY_RELEASE_IND |
| 109 | Subject ID so Form I-247N record can be associated with DHS data on other activity related to this individual |
| 110 | EID Person ID so Form I-247N record can be associated DHS data on other activity related to this individual |
| 112 | Form I-247N so record can be associated with DHS data on other actions related to this Form  I-247N |

36.     The 86 data points requested that were not provided, fall into three categories:

37.     Category (1) of data requested but not provided (19 data points) - the data requested asks a question or is an implied question that does not exist itself in the database in the manner requested, and would require research, analysis, assumptions, and/or calculations, and thus would lead to the creation of a new record which did not previously exist.  In order to provide data points that would fall into Category (1), a STU analyst would have to research potential data values in IIDS, the operational use of those values inputted by officers that do exist, and make further assumptions that these data values satisfy the intent of their question.  This additional analysis and calculation will include the creation of new records in response to the questions and implied questions submitted by the Plaintiffs.  For example, item #9 asked for "Following the preparation of the Form I-247N, individual was booked into ICE Custody (yes/no); and if yes..."  A response to this inquiry requires the STU analyst to conduct

19

additional research/analysis/assumptions and or calculations. This requires a STU analyst to make

assume that the many detainers that may be issued to an alien during a time frame resulted in one

detention in ICE custody that occurred on or after the detainer preparation. This requires a STU analyst

to assume that for a single alien, ICE issued a single detainer, when it is possible, and probable that more

than one was issued. It then requires that ICE assume that a book in to ICE custody following an

issuance of a detainer was the result of the detainer, which appears to be an implied question in

Plaintiff's request. There is no indication in the system of record recorded by the officer that the

particular ICE detention was a result of the detainer record as implied by the question, despite there also

being no defined time period post- detainer preparation to confirm this relationship. In other words, the

EID contains no data point to reflect if ICE booked an alien in as a result of a detainer. ICE does not

track relationships between detainers being issued and book-ins of an alien, thus no data point exists to

answer the Plaintiffs question as requested in the FOIA request. Even if able to overcome these

operational and reporting limitations, STU would then be required to create a new data model to (1)

identify the relationship between detainers and ICE detentions, (2) analyze if the detention falls after the

detainer preparation to identify the implied relationships, (3) and create a calculation based upon the

findings which would result in the creation of a new record that did not previously exist, nor currently

exists or is tracked by ICE. As a second example, item #42 asked for "aggravated felon (yes/no)."

There is no single data point in the system that marks a certain person as an aggravated felon.

Therefore, this would require additional research/analysis/assumptions and/or calculations by STU. The

only values that are recorded by an officer in the system that relate specifically to aggravated felonies

are to identify types of aggravated felonies. However, officers are not required to record supporting

information with the Aggravated Felon Type Code or any other criminal information. This requires

STU to (1) build a data model to analyze all criminal information entered, including attempting to

reconcile the requested data point (2) make operational assumptions based upon potential contradictory data for this new definition of an aggravated felon and (3) create a new record to identify an aggravated felon in the system. This would result in the creation of a new record as these are data points that ICE does not track or record in an operational manner, and thus these data points do not exist in the IIDS database.

38. The following 19 data points which fall into Category (1) and were not provided to Plaintiffs:

| Item # | Information Requested |
|---|---|
| 8 | Following the preparation of the Form 1-247N, ICE administratively arrested individual (yes/no); if yes, date of ICE arrest. |
| 9 | Following the preparation of the Form I-247N, individual was booked into ICE Custody (yes/no); and if yes: |
| 9 | a. If yes, date booked into ICE custody and |
| 9 | b. If yes, recorded apprehension method. |
| 10 | Following the preparation of the Form 1-247N, OSC was filed in immigration court (yes/no); if yes, date OSC filed and specific charges to support request for removal cited. |
| 11 | Following the preparation of the Form 1-247N, individual was deported (yes/no); if yes, date of deportation, latest processing disposition code, program code and case category at time of departure |
| 25 | U.S. citizen spouse (yes/no) |
| 26 | U.S. citizen parents (yes/no) |
| 27 | U.S. citizen child (yes/no) |
| 28 | charged with a crime (yes/no) [any charge, not restricted to convictions] |
| 33 | convicted of a crime (yes/no) |
| 41 | information on the charge for the specific arrest that gave rise to the FORM I-247N being placed (did actual charge result (yes/no), date of charge, current status, date of conviction if applicable, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received if applicable) |
| 42 | aggravated felon (yes/no) |
| 59 | whether at the time the Form 1-247N was issued the individual was serving time after conviction for a criminal offense (yes/no) |
| 60 | if the individual was serving time, the information concerning that offense [date of the charge, date of the conviction, date serving sentence began, where the individual was incarcerated at the time the FORM 1-247N was issued, whether facility is a federal, state, or local facility, the facility code, facility name, state, county, city, facility |

| | address), NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received] |
|------|-----------------------------------------------------------------------------------------------------------|
| 70 | Was the Form I-247N issued as part of the 287(g) program (yes/no) |
| 71 | Was the Form I-247N issued following an IOENT/IAFIS Interoperability match (yes/no) |
| 72 | Was the Form I-247N issued following an IDENT/IAFIS Interoperability match included in the monthly statistics released for Secure Communities (yes/no) |
| 73 | Was the original Form I-247N issued as a result of an arrest by the Border Patrol (yes/no) |

39.     Category (2) of data requested but not provided (40 data points) - the data requested does not exist in the database as requested and requires ICE to make interpretations and assumptions before building a new record based off of additional analysis and calculations.  In order to provide records that would fall into Category (2), a STU analyst would have to research potential data values in IIDS, the operational use of those values inputted by officers that do exist and make further assumptions that these data values satisfy the intent of the requested terms.  This additional analysis will include the creation of calculations and new data search and query methodologies as they relate to data that ICE does not track in the manner in which the data was requested.  For example, item #35 asked for "most serious criminal conviction offense."  A response to this request would require interpretations and assumptions because this field does not exist within IIDS.  This would require a STU analyst to (1) interpret or create a definition of the data point requested because it doesn't exist; (2) review and develop a new method to query or pull data under this new definition which requires technical modifications that require further validation, testing, and approval; and (3) perform assumptions and calculations to create a new record that did not exist in IIDS prior to this FOIA request, and is not a data point that ICE tracks or utilizes in an operational manner.  As a second example, item #55 (1)-(5) asked for "ICE Priorities indicator(s)" with further subcategories, and these do not exist in the database as requested.  These "ICE Priorities

indicator(s)," including the subcategories, require assumptions to be made as what these indicators reference. These said "ICE Priorities indicator(s)" are not captured in the system by the officer, and operationally, have no relevancy towards the detainer population(s). From a technical standpoint in order to create a new record to satisfy this request, STU would have to (1) interpret or create definitions based on a series of assumptions that do not align with operational reporting or current ICE policies, (2) define the business requirements and append the data model for detainers, (3) create calculations, including a prioritization, to assign "indicators" that may or may not be accurate, and finally (4) creates a series of new records that did not exist prior to this FOIA request.

40. The following 40 data points which fall into Category (2) and were not provided to Plaintiffs:

| Item # | Information Requested |
|---|---|
| 12 | Code of detention facility initially booked into |
| 13 | Name of detention facility initially booked into |
| 14 | Initial book-in date |
| 18 | age |
| 21 | date of last entry |
| 22 | earliest date reflecting presence in U.S. |
| 24 | last entry status |
| 29 | most serious criminal charge [any charge, not restricted to convictions] |
| 30 | date of most serious criminal charge [any charge, not restricted to convictions] |
| 31 | status of most serious criminal charge [any charge, not restricted to convictions] |
| 32 | NCIC code for most serious criminal charge [any charge, not restricted to convictions] |
| 34 | level of most serious criminal conviction (felony, misdemeanor, citation, etc.) |
| 35 | most serious criminal conviction offense |
| 36 | date of most serious criminal conviction |
| 37 | sentence for most serious criminal conviction |
| 38 | NCIC code for most serious criminal conviction offense |
| 39 | information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received) |
| 40 | information on every charge not just the most serious for which a conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.)) |

23

| 44 | Any and all information used in determining whether the person is or isn't an aggravated felon and particular type |
|----|----|
| 45 | meets requirements if held for mandatory detention (yes/no) |
| 46 | Any and all information used in determining whether or not mandatory detention would be required if held |
| 47 | RC Threat Level |
| 48 | All information used in determining the RC Threat Level for each person |
| 50 | All information used in determining the Detainer Threat Level for each person |
| 53 | Convicted Criminal Ll,L2, L3 |
| 54 | Any and all information used in determining the convicted criminal level for each person |
| 55 | ICE Priority indicator(s): |
| 55 | 1. ICE fugitive (and if yes, date of previously issued removal order) |
| 55 | 2. Prior removal and return (and if yes, date of previous removal order) |
| 55 | 3. Entered without inspection |
| 55 | 4. Overstayed visa |
| 55 | 5. Recent border crosser |
| 56 | All information used in determining the ICE priority level for each person |
| 57 | Priority per November 20,2014 memorandum on policies for the apprehension, detention, and removal of undocumented immigrants) |
| 58 | Any and all information used in determining Priority per November 20,2014 memorandum |
| 61 | case category at time Form I-247N issued |
| 62 | program code at time Form I-247N issued |
| 74 | name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation streamline, other border patrol program, secure communities, 287(g), etc.) |
| 75 | the apprehension method associated with the latest apprehension |
| 76 | name of the non-ICE agency associated with the original arrest or apprehensio".1 (if applicable) |

41. Category (3) of data requested but not provided (27 data points) - the data cannot be provided as it does not exist in the database as requested. For example, item #69(4) asked for "4. level of security" as sub-bullet for #69 "type of facility in which the individual was detained where the Form I-247N was sent including..." IIDS does not contain the level of security of an original arresting or conviction authority and therefore is unable to report this data point. As a second example, items #102-104 asked for "DTA_REQ_ACCEPT_IND", "DTA_REQ_DEATH_TRANSF IND", and

"DTA_REQ_ENVELOPE_IND" which are all examples of historical data fields that no longer exist on the Form I-247N form, and therefore are not captured in the system for the requested population and cannot be reported on.

42. The following 27 data points which fall into Category (3) and were not provided to Plaintiffs:

| Item # | Information Requested |
|--------|----------------------|
| 6 | Whether Form 1-247N request indicated it was "operative only upon the subject's conviction" |
| 51 | LESC L1, L2, L3 |
| 52 | All information used in determining the LESC level for each person |
| 63 | name of the original arresting or conviction authority |
| 64 | city, county and state of the original arresting or conviction authority |
| 65 | date of the original arrest/conviction or book-in |
| 69 | 1. jurisdiction (federal, state, local, private), |
| 69 | 2. type (prison, jail, hospital, other), |
| 69 | 3. special characteristics (juvenile facility, family facility, etc.) |
| 69 | 4. level of security |
| 69 | 5. operated by government vs private company and if private, name of private company |
| 69 | 6. facility under government contract with ICE to provide services (and if yes, contract number, contract date, and organization contract with |
| 69 | 7. facility under government contract with other than ICE to provide services (and if yes, name of government entity contract with, contract number, contract date and organization contract with |
| 78 | DTA_ACT_DEPORT_IND |
| 80 | DTA_ACT_OSC_DT |
| 81 | DTA_ACT_OSC_IND |
| 82 | DTA_ACT_WA_DT |
| 83 | DTA_ACT_WA_IND |
| 94 | DTA_OTHER_DFTC_CD |
| 97 | DTA_RDLC_CD |
| 102 | DTA_REQ_ACCEPT_IND |
| 103 | DTA_REQ_DEATH_TRANSF IND |
| 104 | DTA_REQ_ENVELOPE_IND |
| 106 | DTA_REQ_RETURN_SIG_IND |
| 107 | DTA_RETURN_BY_FAX_I ND |
| 108 | Sequence number or other designation to identify records relating to the same alien |

| | Any other ID recorded in ICE records so that the Form I-247N record can be associated with |
|---|---|
| **111** | other activity or information related to this individual |

## VIII. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my

knowledge and belief. Signed this 8th day of November, 2017.

Marla Jones
Unit Chief, Statistical Tracking Unit
Law Enforcement and Systems Analysis
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009

# EXHIBIT N

**Fields provided by ICE from EID on January 10, 2017, in response to FOIA request dated November 30, 2016 for "the latest anonymous data concerning Form I-247/I-247D requests issued for FY 2015 through November 2016."**

| |
|---|
| Detainer Type |
| Prepare Date |
| Resume Custody Yes No |
| Significant Risk Yes No |
| Criminal Street Gang Yes No |
| Prior Felony Yes No |
| Aggravated Felony Yes No |
| Violent Misdemeanor Yes No |
| Multiple Prior Misd Yes No |
| Active Investigation Yes No |
| Illegal Entry Yes No |
| Illegal Reentry Yes No |
| Immigration Fraud Yes No |
| Other Removal Reason Yes No |
| Other Removal Reason Detail |
| Return By Fax Yes No |
| Return Envelope Include Yes No |
| Return Signature Req Yes No |
| Request Acceptance Yes No |
| Deportation Ordered Yes No |
| Arrest Warrant Served Date |
| Arrest Warrant Served Yes No |
| Osc Served Date |
| Osc Served Yes No |
| Prev Detainer Cancel Yes No |
| Detainer Req Upon Conv Yes No |
| Detainer Lift Date |
| Detainer Lift Reason |
| Aor |
| Gender |
| Birth Country |
| Citizenship |
| Birth Date |
| Entry Date |
| Entry Status |
| Aggravated Felon Type |
| Detainer COL |
| Detainer Detention Facility |

| |
|---|
| Detainer Detention Facility Cd |
| City |
| State |
| Detainer Facility Type |
| Other Detainer Facility Name2 |
| Active Yes No |
| Eid Dta Create Dt |
| Biometric Match Yes No |
| Statements Made Yes No |
| Federal Register Notice Yes No |
| Inmate Number Type Code |
| Notify Release Request Yes No |
| Death Transf Notify Req Yes No |
| Projected Release Day |
| Projected Release Date |
| Projected Release Month |
| Projected Release Year |
| Subject Id |
| Eid Civ Pers Id |
| Eid Civ Id |
| Return to Employee ID |
| Government Employee Id |
| Detainer Id |

# EXHIBIT O

**Fields provided by ICE from EID on October 6, 2017, in response to FOIA request dated November 30, 2016 for "the latest anonymous data concerning Form I-247N requests issued for November 2016."**

| |
|---|
| Detainer Type |
| Prepare Date |
| Resume Custody Yes No |
| Significant Risk Yes No |
| Criminal Street Gang Yes No |
| Prior Felony Yes No |
| Aggravated Felony Yes No |
| Violent Misdemeanor Yes No |
| Multiple Prior Misd Yes No |
| Detainer Lift Date |
| Detainer Lift Reason |
| Aor |
| Gender |
| Birth Country |
| Citizenship Country |
| Birth Date |
| Entry Date |
| Entry Status |
| Aggravated Felon Type |
| Detainer COL |
| Detainer Detention Facility |
| Detainer Detention Facility Cd |
| City |
| State |
| Detainer Facility Type |
| Active Yes No |
| Eid Dta Create Dt |
| Federal Register Notice Yes No |
| Inmate Number Type Code |
| Other Detainer Facility Name |
| Notify Request Release |
| Projected Release Day |
| Projected Release Date |
| Projected Release Month |
| Projected Release Year |
| Subject Id |
| Eid Civ Pers Id |
| Eid Civ Id |
| Return To Employee Id |

| Government Employee Id |
| --- |
| Detainer Id2 |

# EXHIBIT P

U.S. Department of Homeland Security
500 12ᵗʰ Street. SW
Washington, DC 20536-5009



U.S. Immigration
and Customs
Enforcement

April 5, 2012

SUSAN B. LONG
TRANSACTIONAL RECORDS ACCESS CLEARINGHOUSE
SYRACUSE UNIVERSITY
360 NEWHOUSE II
SYRACUSE, NY 13244

### RE:  ICE FOIA Case Number 2010FOIA4313

Dear Dr. Long:

This letter is the third and final response to your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated May 17, 2010. You have requested copies of anonymous alien-by-alien data covered by the Enforcement Case Tracking System and related modules for individuals on whom charging documents were issued from October 1, 2004 to the date of your request.

Your request has been processed under the FOIA, 5 U.S.C. § 552. A search of the ICE Office of Enforcement and Removal Operations (ERO) for records responsive to your request produced Microsoft Access databases for each of the calendar years between 2004 and 2010. Each of those databases was comprised of 5 tables which contained the responsive data. For your convenience, ICE has added a column to each table labeled FY_FOIA_ID which contains a random number generated by ERO as they produced the data. You can use this number to track information about a particular alien across the various tables.

As you are aware from previous discussions and correspondence, ICE is unable to pull data directly from ENFORCE. Instead, we utilize the ICE Integrated Decision Support Database (IIDS) for our reporting needs. IIDS only pulls those fields of data contained in ENFORCE that are necessary to meet the reporting requirements needed for ICE's standard reports to Congress and ICE leadership. While many of the fields of data you have requested are captured by IIDS, several are not. Consequently, ICE is unable to produce data related to items 24, 27, 29, 30, 32, 33, 34, 35, 36, 37, 38, and 39.

In our first interim response, dated December 20, 2011, ICE provided you with data for calendar years 2004 and 2005. In our second interim response, dated February 1, 2012, ICE provided you with data for calendar years 2006 and 2007.

At this time, ICE has completed the processing of the remaining data, which is comprised of data for calendar years 2008 through 2010. To process this data, ICE was required to export the data into 18 Microsoft Excel spreadsheets. After review of those spreadsheets, I have determined that 2 columns will be withheld pursuant to Exemptions 6 and 7(C) of the FOIA as described below.

ICE has applied FOIA Exemptions 6 and 7(C) to protect from disclosure the information contained in the "Date of Birth" and "Apprehension Landmark" columns. This information, in combination with other information contained within the spreadsheets or information available in the public domain, could be used to identify the individual for whom the information pertains.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right privacy. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**FOIA Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination.

You have the right to appeal our withholding determination. Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter to: U.S. Immigration Customs Enforcement, Office of Principal Legal Advisor, U.S. Department of Homeland Security, Freedom of Information Office, 500 12th Street, S.W., Stop 5009 Washington, D.C. 20536-5009, following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

If you need to contact our office about this matter, please refer to FOIA case number **2010FOIA4313**. This office can be reached at (202) 732-0600 or (866) 633-1182.

Sincerely,

FOR

Catrina M. Pavlik-Keenan
FOIA Officer

Enclosure(s):  18 Microsoft Excel Spreadsheets
              Your May 17, 2010 FOIA Request

# EXHIBIT Q

| EXCERPT OF DATA PROVIDED FROM THE EID IN RESPONSE TO MAY 17, 2010 REQUEST | | | |
|---|---|---|---|
| **Person Relationship** | **Relative_Citizenship Country** | **Relative_Birth Country** | **FY_FOIA_ID** |
| Father | MEXICO | MEXICO | 29708 |
| Mother | MEXICO | MEXICO | 29708 |
| Spouse | MEXICO | | 53994 |
| Spouse | MEXICO | | 53994 |
| Spouse | MEXICO | | 53994 |
| Father | MEXICO | MEXICO | 53994 |
| Father | MEXICO | MEXICO | 53994 |
| Father | MEXICO | MEXICO | 53994 |
| Mother | MEXICO | MEXICO | 53994 |
| Mother | MEXICO | MEXICO | 53994 |
| Mother | MEXICO | MEXICO | 53994 |
| Father | UNITED STATES | MEXICO | 54491 |
| Mother | MEXICO | MEXICO | 54491 |
| Father | HONDURAS | HONDURAS | 46039 |
| Mother | HONDURAS | HONDURAS | 46039 |
| Father | MEXICO | MEXICO | 53956 |
| Father | MEXICO | MEXICO | 53956 |
| Father | MEXICO | MEXICO | 53956 |
| Father | MEXICO | MEXICO | 53956 |
| Mother | MEXICO | MEXICO | 53956 |
| Mother | MEXICO | MEXICO | 53956 |
| Father | MEXICO | MEXICO | 51556 |
| Father | MEXICO | MEXICO | 51556 |
| Mother | MEXICO | MEXICO | 51556 |
| Mother | MEXICO | MEXICO | 51556 |
| Father | MEXICO | MEXICO | 51555 |
| Father | MEXICO | MEXICO | 51555 |
| Mother | MEXICO | MEXICO | 51555 |
| Mother | MEXICO | MEXICO | 51555 |
| Spouse | MEXICO | | 51583 |
| Spouse | MEXICO | | 51583 |
| Father | MEXICO | MEXICO | 51583 |
| Father | MEXICO | MEXICO | 51583 |
| Mother | MEXICO | MEXICO | 51583 |
| Mother | MEXICO | MEXICO | 51583 |
| Father | MEXICO | MEXICO | 50690 |
| Father | MEXICO | MEXICO | 50690 |
| Mother | MEXICO | MEXICO | 50690 |
| Mother | MEXICO | MEXICO | 50690 |
| Spouse | MEXICO | | 60557 |
| Spouse | MEXICO | | 60557 |

| Spouse | MEXICO | | 60557 |
|---|---|---|---|
| Father | COLOMBIA | | 50314 |
| Father | COLOMBIA | | 50314 |
| Father | COLOMBIA | | 50314 |
| Father | COLOMBIA | | 50314 |
| Father | COLOMBIA | | 50314 |
| Father | COLOMBIA | | 50314 |
| Father | COLOMBIA | | 50314 |
| Mother | COLOMBIA | | 50314 |
| Mother | COLOMBIA | | 50314 |
| Mother | COLOMBIA | | 50314 |
| Mother | COLOMBIA | | 50314 |
| Mother | COLOMBIA | | 50314 |
| Mother | COLOMBIA | | 50314 |
| Mother | COLOMBIA | | 50314 |
| Father | MEXICO | MEXICO | 53861 |
| Father | MEXICO | MEXICO | 53861 |
| Father | MEXICO | MEXICO | 53861 |
| Father | MEXICO | MEXICO | 53861 |
| Mother | MEXICO | MEXICO | 53861 |
| Mother | MEXICO | MEXICO | 53861 |
| Mother | MEXICO | MEXICO | 53861 |
| Mother | MEXICO | MEXICO | 53861 |
| Father | MEXICO | MEXICO | 53674 |
| Father | MEXICO | MEXICO | 53674 |
| Father | MEXICO | MEXICO | 53674 |
| Father | MEXICO | MEXICO | 53674 |
| Father | MEXICO | MEXICO | 53674 |
| Mother | MEXICO | MEXICO | 53674 |
| Mother | MEXICO | MEXICO | 53674 |
| Mother | MEXICO | MEXICO | 53674 |
| Mother | MEXICO | MEXICO | 53674 |
| Mother | MEXICO | MEXICO | 53674 |
| Spouse | UNITED STATES | | 60681 |
| Spouse | UNITED STATES | | 60681 |
| Spouse | UNITED STATES | | 60681 |
| Spouse | UNITED STATES | | 60681 |
| Spouse | UNITED STATES | | 60681 |
| Father | TOGO | TOGO | 60681 |
| Father | TOGO | TOGO | 60681 |
| Father | TOGO | TOGO | 60681 |
| Father | TOGO | TOGO | 60681 |
| Father | TOGO | TOGO | 60681 |
| Father | HONDURAS | HONDURAS | 53669 |

| Mother | HONDURAS | HONDURAS | 53669 |
|---|---|---|---|
| Father | MEXICO | MEXICO | 59813 |
| Father | MEXICO | MEXICO | 59813 |
| Father | MEXICO | MEXICO | 59813 |
| Father | MEXICO | MEXICO | 59813 |
| Mother | MEXICO | MEXICO | 59813 |
| Mother | MEXICO | MEXICO | 59813 |
| Mother | MEXICO | MEXICO | 59813 |
| Mother | MEXICO | MEXICO | 59813 |
| Father | MEXICO | MEXICO | 60666 |
| Father | MEXICO | MEXICO | 60666 |
| Mother | MEXICO | MEXICO | 60666 |
| Mother | MEXICO | MEXICO | 60666 |
| Father | MEXICO | MEXICO | 61425 |
| Mother | MEXICO | MEXICO | 61425 |
| Spouse | INDIA | | 42598 |
| Spouse | INDIA | | 42598 |
| Spouse | MEXICO | | 46366 |
| Spouse | MEXICO | | 46366 |
| Father | MEXICO | MEXICO | 51319 |
| Father | MEXICO | MEXICO | 51319 |
| Father | MEXICO | MEXICO | 51319 |
| Father | MEXICO | MEXICO | 51319 |
| Father | MEXICO | MEXICO | 51319 |
| Father | MEXICO | MEXICO | 51319 |
| Mother | MEXICO | MEXICO | 51319 |
| Mother | MEXICO | MEXICO | 51319 |
| Mother | MEXICO | MEXICO | 51319 |
| Mother | MEXICO | MEXICO | 51319 |
| Mother | MEXICO | MEXICO | 51319 |
| Mother | MEXICO | MEXICO | 51319 |
| Spouse | MEXICO | | 53951 |
| Spouse | MEXICO | | 53951 |
| Spouse | MEXICO | | 53951 |
| Spouse | MEXICO | | 53951 |
| Father | MEXICO | MEXICO | 53951 |
| Father | MEXICO | MEXICO | 53951 |
| Father | MEXICO | MEXICO | 53951 |
| Father | MEXICO | MEXICO | 53951 |
| Spouse | UNITED STATES | | 39744 |
| Spouse | UNITED STATES | | 39744 |