UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SUSAN B. LONG, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 17-cv-01097 (APM) |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

I.

Plaintiffs Susan B. Long and David Burnham are co-directors of the Transactional Records Access Clearinghouse ("TRAC"), a data gathering, data research, and data distribution organization associated with Syracuse University. *See* Pls.' Mot. for Summ. J., ECF No. 12 [hereinafter Pls.' Mot.], Decl. of Susan B. Long, ECF No. 12-1 [hereinafter Long Decl.], ¶ 2. TRAC's primary purpose is to provide "comprehensive information about the staffing, spending, and enforcement activities of the federal government." *Id.* ¶ 3.

For years, Plaintiffs have submitted monthly Freedom of Information Act ("FOIA") requests to Defendant Immigration and Customs Enforcement ("ICE") seeking certain data within ICE's Enforcement Integrated Database ("EID"). *See* Pls.' Mot., Pls.' Resp. to Def.'s Statement of Facts & Additional Statement of Facts [hereinafter Pls.' Stmt.], ¶¶ 85–88, 90–91; Def.'s Mem. of P. & A. in Opp'n to Pls.' Mot. & Reply to Pls.' Opp'n to Def.'s Mot. for Summ. J., ECF No. 16 [hereinafter Def.'s Reply], Def.'s Resp. to Pls.' Stmt. [hereinafter Def.'s Reply Stmt.], ¶¶ 85–88, 90–91. The EID is an electronic database owned and operated by ICE that "captures and maintains

information relating to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and law enforcement investigations and operations conducted by ICE" and other component agencies within the U.S. Department of Homeland Security ("DHS"). *See* Def.'s Mot. for Summ. J., ECF No. 11 [hereinafter Def.'s Mot.], Decl. of Marla Jones, ECF No. 11-2 [hereinafter Jones Decl.], ¶¶ 6–7; *see also id.* (explaining that the EID is a "common database repository for all records created, updated, and accessed by a number of [DHS] software applications" that "provides users with the capability to access a person-centric and/or event-centric view of . . . data" and "allows ICE officers to manage cases from the time of an alien's arrest, in-processing, or placement into removal proceedings, through the final case disposition"); *id.* ¶ 8 ("The EID is used as data storage throughout the immigration enforcement lifecycle from arrest to removal or release.").

In their monthly FOIA requests,[1] Plaintiffs sought from the EID updated, anonymous case-by-case information about each person whom ICE deported as a result of the Secure Communities Program, an immigration enforcement program administered by ICE, and its temporary successor, the Priority Enforcement Program.[2] Pls.' Stmt. ¶¶ 77–79, 86; *see* Def.'s Reply Stmt. ¶¶ 77–79, 86. As is relevant here, each request identified the specific case-by-case information requested by

---

[1] Plaintiffs submitted their first request for anonymous case-by-case information in 2012 and began renewing this request on a monthly basis in February 2013. Pls.' Stmt. ¶¶ 86–87. Each monthly request sought data from a predetermined start date updated through the most recently completed month at the time of the request. *Id.* ¶ 88. For example, in May 2016, Plaintiffs sought data from fiscal year 2015 through April 2016, and in June 2016, Plaintiffs sought data from fiscal year 2015 through May 2016. *Id.*

[2] The Secure Communities Program and its temporary successor were designed "to target noncitizens for removal who have engaged in criminal activity" by relying upon "computerized automatic matching of fingerprint records submitted to the [Federal Bureau of Investigation ('FBI')] by local law enforcement agencies." Pls.' Stmt. ¶¶ 77, 80; *see* Def.'s Reply Stmt. ¶¶ 77, 80. The FBI automatically transmits these records to DHS, ICE's parent agency, which then "matches the fingerprints against its own databases and, when there is a match, determines whether the arrestee may be deportable." Pls.' Stmt. ¶ 82; *see* Def.'s Reply Stmt. ¶ 82. "Based on ICE's priorities and resources, the agency may then issue an immigration detainer," which is "a request that the arresting agency hold [an] alien for a period of time beyond when the individual would otherwise be held to allow ICE to take that individual into its own custody." Pls.' Stmt. ¶ 83; *cf.* Def.'s Reply Stmt. ¶¶ 83–84.

Plaintiffs, including a list of separately numbered requests describing particular fields of information and data elements that Plaintiffs sought from the EID. Pls.' Stmt. ¶ 91; *see* Def.'s Reply Stmt. ¶ 91; *see, e.g.*, Long Decl., Exs. A–B.[3]

In the past, ICE responded to Plaintiffs' monthly requests by providing "computer extracts furnished as Excel spreadsheet files derived from the EID," Pls.' Stmt. ¶ 94; Def.'s Reply Stmt. ¶ 94,[4] which contained fields of information and data elements that corresponded to at least some of the separately numbered requests, *see* Long. Decl., Ex. F; Jones Decl. ¶¶ 16–27; *cf.* Pls.' Stmt. ¶ 118; Def.'s Reply Stmt. ¶ 118. In January 2017, however, in response to Plaintiffs' FOIA request for data covering fiscal year 2015 through August 2016 ("August 2016 Request"), ICE withheld many of the fields that it previously provided in response to Plaintiffs' requests covering earlier, overlapping time periods—including a virtually identical request submitted by Plaintiffs several months earlier, which covered fiscal year 2015 through December 2015 ("December 2015 Request"). *See* Pls.' Stmt. ¶¶ 114–15, 118, 129; Def.'s Reply Stmt. ¶¶ 114–15, 118, 129; Def.'s Reply, Second Decl. of Marla Jones, ECF No. 16-1 [hereinafter Suppl. Jones Decl.], ¶¶ 14–16; *see also* Long Decl., Ex. C (comparing numbered requests submitted in December 2015 Request and August 2016 Request); *cf.* Jones Decl. ¶¶ 16, 37.

---

[3] Plaintiffs' requests described the fields of information that Plaintiffs sought from the EID because ICE has refused to identify those fields by name or other descriptors, pursuant to FOIA Exemption 7(E). *See* Pls.' Stmt. ¶¶ 89–90; Def.'s Reply Stmt. ¶¶ 89–90. ICE's withholding of such information is the subject of litigation in another case currently pending before this court. *See Long v. ICE*, No. 14-cv-109-APM (D.D.C. filed Jan. 29, 2014).

[4] Although these spreadsheets are derived from the EID, ICE did not query the EID itself in searching for responsive records; instead, it searched the Integrated Decision Support System ("IIDS"), a snapshot of a subset of data from the EID that is updated regularly three days a week. *See* Def.'s Mot., Def.'s Statement of Facts, ¶¶ 32–34, 38. The IIDS "manages case information and the reporting of case information" and "supports DHS requirements to query EID data for operational or executive reporting purposes." *Id.* ¶¶ 36–37. Because "ICE has not asserted that it may withhold fields or data elements that exist in the EID if they do not exist in the IIDS (or, indeed, that there are any such fields or data elements)," "the distinction between the two databases is not material" to the parties' dispute. Pls.' Mot., Mem. of P. & A. in Supp. of Pls.' Mot. & in Opp'n to Def.'s Mot. [hereinafter Pls.' Mem.], at 3 n.1. Thus, like Plaintiffs, *see id.*, the court will refer to the EID as the only relevant database containing potentially responsive records.

In denying Plaintiffs' administrative appeal of the agency's response to the August 2016 Request, ICE reasoned that these fields did not exist in the EID and, accordingly, that Plaintiffs were not entitled to them under FOIA. *See* Pls.' Stmt. ¶¶ 145–46; Def.'s Reply Stmt. ¶¶ 145–46; *see also* Long Decl., Ex. H. Plaintiffs brought this FOIA action to challenge that determination and to compel ICE to produce data responsive to what Plaintiffs dub the "disappearing fields"—that is, the fields of information and corresponding data elements from the EID that ICE provided in response to the December 2015 Request, but not the August 2016 Request. *See generally* Compl., ECF No. 1.

Before the court are the parties' cross-motions for summary judgment. *See* Def.'s Mot.; Pls.' Mot. After thorough review of the parties' briefs and accompanying materials, the court concludes that this matter cannot be resolved on the present record. As discussed below, there remains a genuine dispute of material fact concerning whether the requests at issue require ICE to create new records. Accordingly, the parties' motions are denied without prejudice.

II.

FOIA requires that federal agencies, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . ., shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), provided those records are not exempt from disclosure, *id.* § 552(b); *see also Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) ("FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982))). "A request that 'reasonably describes' the records sought triggers the agency's obligation to search for and disclose all responsive records unless the records fall within one of the statutory exemptions." *Ctr. for the Study of Servs. v. U.S. Dep't of*

*Health & Human Servs.*, 874 F.3d 287, 288 (D.C. Cir. 2017) (citations omitted). FOIA authorizes district courts "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). Where, as here, the agency contends that the information sought is not subject to disclosure under FOIA, "[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' or have not been 'improperly' 'withheld.'" *Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 735 (D.C. Cir. 2017) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)).

Most FOIA cases are appropriately resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party, and a fact is "material" only if it is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). "In FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Aguiar*, 865 F.3d at 734–35 (internal quotation marks omitted).

III.

As discussed, the parties' dispute here concerns ICE's response to Plaintiffs' August 2016 Request. Specifically, Plaintiffs challenge ICE's withholding of data responsive to the fields of information provided in response to Plaintiffs' December 2015 Request, but not their August 2016 Request. These "disappearing fields," and the specific numbered requests to which they correspond in both the December 2015 and August 2016 Requests, can be summarized as follows, *see* Long Decl., Ex. F; *see also* Long Decl., Exs. A–B; *cf.* Suppl. Jones Decl. ¶¶ 14–16:

| Fields provided in response to December 2015 Request but not August 2016 Request | Corresponding numbered requests in December 2015 and August 2016 Requests |
|---|---|
| Non-Criminal ICE Priorities | (7) "Priority levels based upon November 20, 2014 announced criteria" |
| | (17) "ICE fugitive (yes/no) . . ." |
| | (18) "Prior removal or return (yes/no) . . ." |
| | (19) "EWI (yes/no) . . ." |
| | (20) "Visa violator: a. overstayed visa (yes/no)" |
| | (20) "Visa violator: . . . b. other type of visa violator (yes/no)" |
| Detainer Prepare Date | (22) "Was I-247/I-247D issued for individual before removal (yes/no), and date issued" |
| | (23) "Was I-247N issued for individual before removal (yes/no), and date issued"[5] |
| Detainer Facility City; Detainer Facility State | (26) "City, county and state of the jail or facility in which the individual was detained prior where the I-247/I-247D/I-247N was sent" |
| Detainer Threat Level | (27) "Detainer Threat Level (or corresponding Notice Threat Level)" |
| Charged with Crime | (43) "Charged with a crime (yes/no) [any charged, not restricted to convictions]" |
| Criminal Charge; Criminal Charge Code; Criminal Charge Date; | (54) "Information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of |

---

[5] "ICE issues detainers using a form called an I-247. Over time, there have been variations of the I-247 form, which have sometimes resulted in different letter designations such as I-247D and I-247N." Pls.' Stmt. ¶ 84; *see* Def.'s Reply Stmt. ¶ 84.

6

| Criminal Charge Status;<br>Criminal Conviction Date;<br>Criminal Conviction Sentence Days;<br>Criminal Conviction Sentence Months;<br>Criminal Conviction Sentence Years | offense (felony, misdemeanor, citation, etc.), sentence received)"<br><br>(55) "Information on every charge not just the most serious for which a conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.))" |
|---|---|
| Aggravated Felon | (57) "Aggravated Felon (yes/no)" |
| Removal Current Program | (60) "Latest program code before departure" |
| Case Category Time of Arrest | (61) "Case category at the time of latest arrest" |
| Latest Arrest Current Program Code;<br>Latest Arrest Current Program | (62) "Program code at the time of latest arrest" |
| Latest Apprehension Date | (63) "Date of latest arrest" |
| Cause Arrest Current Program | (64) "Name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation streamline, other border patrol program, 287(g), etc.)" |
| Latest Apprehension Method | (65) "The apprehension method associated with the latest apprehension" |
| Final Order Yes No | (66) "Ordered removed by court, where order has become final (yes/no)"<br><br>(68) "Administratively ordered removed, where order has become final (yes/no)" |
| Reinstated Final Order | (70) "Reinstatement of prior removal order (yes/no)" |
| Reinstated Final Order Date | (71) "Date of latest reinstatement of prior removal order" |
| Prior Removal | (74) "Prior removal (yes/no)" |
| Most Recent Prior Depart Date | (75) "Date of latest prior removal" |

ICE, for its part, disputes Plaintiffs' contention that the agency was obligated to produce the "disappearing fields" in response to the August 2016 Request. ICE argues that it appropriately withheld data from the EID in response to the numbered requests outlined above,[6] because

---

[6] To be sure, ICE emphasizes that it "conducted a search for *all* requests by Plaintiffs, even the otherwise objectionable and improper requests," and that "[a]ll records found were released." Def.'s Reply at 7 (citing Suppl. Jones Decl. ¶ 6). Thus, by referring to ICE's withholding of "data from the EID," the court does not intend to suggest that such data points are existing agency records. As discussed below, the court finds that there is still a genuine dispute of material fact as to this issue.

responding to those requests would have required the agency to create new records or conduct research to answer questions, neither of which is required under FOIA, *cf.* Def.'s Mot., Mem. of Law in Supp. [hereinafter Def.'s Mem.], at 6–7, 10–18; Def.'s Reply at 2–6. *See generally Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 269 (D.D.C. 2012) (explaining that "'the FOIA imposes no duty on the agency to create records'" or "to conduct research by 'answer[ing] questions disguised as a FOIA request'" (alteration in original) (first quoting *Forsham v. Harris*, 445 U.S. 169, 186 (1980); then quoting *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987))).

In so arguing, ICE concedes that neither "sorting a pre-existing database of information to make information intelligible," nor "extracting and compiling data . . . as to any discrete pieces of information that [an] agency does possess in its databases," amounts to the creation of a new agency record. Def.'s Mem. at 7. "In responding to a FOIA request for 'aggregate data,' an agency need not create a new database or . . . reorganize its method of archiving data, but if the agency already stores records in an electronic database, searching that database does not involve the creation of a new record." *Id.* (citing *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 270). Importantly, ICE also concedes that "a search for 'data points' or 'points of data' means a search of records." Def.'s Reply at 4–5 (citing *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 271); *see also Nat'l Sec. Counselors*, 898 F. Supp. 2d at 271 (distinguishing between the production of a "listing or index of the contents of a database" and "particular points of data (*i.e.*, the records themselves)," because a listing or index "would not necessarily have existed prior to a given FOIA request"). Nevertheless, ICE asserts that in this case, Plaintiffs' requests command the agency to go above and beyond such requirements by essentially asking the agency "to create new methods of organizing archival data or . . . answer[] . . . specific interrogatories." Def.'s Reply at 3. And,

8

although ICE previously provided data in response to virtually identical requests to those at issue here, ICE contends that it should not be penalized for going above and beyond what the FOIA requires in the past. Def.'s Mem. at 18 ("ICE's change in practices, and its refusal to continue making discretionary releases not required by FOIA, in no way shows that it has failed to comply fully with what is required under FOIA." (citing cases)); *accord* Def.'s Reply at 6–7. Accordingly, ICE asks the court to find that the agency has identified and produced all non-exempt records and enter summary judgment in its favor. *See* Def.'s Mem. at 6–18; Def.'s Reply at 2–9.[7]

In support of its motion, ICE submits two declarations from Marla Jones, the Unit Chief of the Statistical Tracking Unit ("STU") within Enforcement Removal Operations' Law Enforcement Systems and Analysis Division at ICE. *See generally* Jones Decl.; Suppl. Jones Decl. Jones explains that the numbered requests challenged by Plaintiffs—i.e., those corresponding with the "disappearing fields"—generally fall into two categories.[8] *See* Suppl. Jones Decl. ¶¶ 14–16. The

---

[7] ICE also asks the court to enter summary judgment in its favor with respect to the adequacy of its search. *See* Def.'s Mem. at 3–6. The court does not reach that issue, however, as Plaintiffs do not challenge the reasonableness of ICE's search in their Complaint. *See* Pls.' Mem. at 12 n.15; Compl.

[8] According to Jones, there are three requests challenged by Plaintiffs that do *not* fall within these two categories—requests 7, 63, and 71. Suppl. Jones Decl. ¶ 15. In her supplemental declaration, Jones excludes request 7 from her discussion of the "disappearing fields" because she states that ICE did not produce data responsive to this request in responding to either the December 2015 Request or the August 2016 Request. *Id.* Jones's silence as to request 7, however, is problematic for two reasons. First, Plaintiffs' complaint makes clear that Plaintiffs intend to challenge the agency's response to that request. *See* Compl. ¶ 18. Second, Plaintiff Susan Long's declaration directly contradicts Jones's statement that ICE did not provide data in response to request 7 in responding to the December 2015 Request. *See* Pls.' Reply Mem. in Further Supp. of Pls.' Mot., ECF No. 19, Second Decl. of Susan B. Long, ECF No. 19-1, ¶ 58 (asserting that Jones's statement that no data was provided in response to request 7 was "not true" and further attesting that a field labeled "Non-Criminal ICE Priorities" was provided in response to Plaintiffs' December 2015 Request (citing Long Decl., Ex. F)); *see also* Pls.' Stmt. ¶¶ 138–39; Def.'s Reply Stmt. ¶¶ 138–39 (admitting that ICE previously released a field titled "Non-Criminal ICE Priorities" to Plaintiffs). Furthermore, while Jones does offer some explanation for not providing data in response to request 7 in her initial declaration, *see* Jones Decl. ¶¶ 33–34, 54–55 (explaining that the agency did not provide such data because "it [did] not exist in the database as requested"), that explanation is insufficient for the same reasons discussed below with respect to the two general categories of requests. A dispute of fact therefore remains as to request 7.
 As to the other two requests—requests 63 and 71—Jones excludes those requests from her discussion of the "disappearing fields" because she states that the agency *did* provide data in response to Plaintiffs' August 2016 Request. According to Plaintiffs, however, the data provided in response to their August 2016 Request does not correspond with the data provided in response to previous requests. *See* Pls.' Stmt. ¶¶ 132–34 (noting that while ICE previously provided a field called "Latest Apprehension Date" in response to request 63, it did not do so in responding to Plaintiffs' August 2016 Request, and that the "Arrest Date" field provided in response to the August 2016 Request

first category consists of requests for data that "ask[] a question or [are] implied question[s] that do[] not exist . . . in the database in the manner requested, and require[] research, analysis, assumptions, and/or calculations," and, therefore, would "[lead] to the creation of a new record which did not previously exist." *Id.* ¶ 17. The second category consists of requests for data that "does not exist in the database as requested and require[s] ICE to make interpretations and assumptions before building a new record based off of additional analysis and calculations." *Id.* ¶ 19. For the reasons that follow, the court finds that Jones's explanations as to these two categories are insufficient to sustain the agency's burden at the summary judgment stage. On the present record, a genuine dispute of material fact remains as to whether producing the "disappearing fields" and corresponding data elements in response to Plaintiffs' August 2016 Request would require ICE to manipulate data in a way that "crosses the all-important line" between searching the EID and extracting and compiling existing data, on the one hand, and either creating a record or conducting research to answer a question, on the other. *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 270–71; *see id.* at 269.

A.

Beginning with the first category of requests—requests 17, 18, 19, 20a, 20b, 22, 23, 43, 66, 68, 70, and 74, *see* Suppl. Jones Decl. ¶ 18—Jones states that in order to provide responsive data, an STU analyst would have to "research potential data values in [the EID] [as well as] the operational use of those values inputted by officers that do exist" and "make further assumptions that these data values satisfy the intent of [Plaintiffs'] question," *id.* ¶ 17. This "additional

---

does not appear to be coextensive with the missing field); *id.* ¶¶ 136–37 (noting that the data provided in response to request 71 "does not provide the responsive information ICE earlier provided with respect to this request, which consisted of a field ICE called 'Reinstated Final Order Date'"); *see also* Long Decl. ¶¶ 33–34 (same). While Jones is in the best position to address any such discrepancy, she declines to do so in her declarations. Accordingly, the court will not enter summary judgment for either party with respect these requests.

analysis," Jones reasons, would include "the creation of new records in response to Plaintiffs' implied questions." *Id.* ¶ 17.

Jones's declarations suffer from several shortcomings, as applied to the first category of requests. First, the court does not have explanations as to the majority of the individual requests that correspond with the "disappearing fields" challenged in Plaintiffs' Complaint and which Jones claims seek answers to questions which do not exist in the EID. While Jones offers a few examples to help illustrate the "additional analysis" that is required in order to respond to this first category of requests, she is silent as to most of the individual requests at issue here. *See id.* ¶¶ 17–18. In a case such as this one, where ICE previously has provided fields and data elements in response to virtually identical requests, individualized explanations as to why FOIA does not obligate ICE to produce the same fields and data elements are essential. Such individualized explanations would help the court understand why the agency now interprets certain numbered requests to ask a question, as opposed to seek fields and data elements in the EID that indicate the existence or nonexistence of some event or state of facts. *See* Long Decl. ¶ 22 (explaining that over time, Plaintiffs have learned that the EID "contains many fields and data elements that indicate either the existence or nonexistence of some event or state of facts" and that such fields have "typically [been] labeled by *ICE* as 'Yes No' fields" (emphasis added)); *id.* ¶ 23 (noting that Plaintiffs have followed ICE's "'yes/no' pattern" to describe particular EID fields and data elements in their monthly requests because ICE has refused to provide Plaintiffs with the names of those fields). They also would shed light on the nature of the "additional analysis" required to respond to each request—something the court cannot discern from either the conclusory statements quoted above or Jones's explanations as to *other* requests pertaining to different types of data. *Cf. Aguiar*, 865 F.3d at 737 (denying summary judgment to agency on "agency record" issue where court "simply

[did] not know enough about the software to credit either of the [agency's] arguments: that it does not have the software, or that it did not 'obtain' and does not 'control' the software in a way that satisfies the legal definition of an 'agency record'"); *Prison Legal News v. Samuels*, 787 F.3d 1142, 1149–50 (D.C. Cir. 2015) (holding, albeit in context of deciding whether an agency properly redacted records pursuant to a particular FOIA exemption, that while an agency "may justify its withholdings and redactions category-of-document by category-of-document, . . . . [t]he range of circumstances included in the category must characteristically support an inference that the statutory requirements for [the] exemption are satisfied" (cleaned up)).

Second, even to the extent Jones offers a specific explanation as to a particular request, her explanations lack sufficient detail to allow the court to conclude that ICE has satisfied its burden of demonstrating that the data requested is not subject to disclosure under FOIA. In other words, not only are Jones's explanations too generic to apply across the board to all requests, as discussed above, but they also fail to adequately support the agency's position that responding to even those requests specifically referenced by Jones requires the creation of a new record.

Take request 22, for example. That request reads: "Was [detainer] issued for individual before removal (yes/no), and date issued." [9] Long Decl., Ex. B; *see* Long Decl., Ex. A; Long Decl., Ex. F; *cf.* Jones Decl. ¶ 50; Suppl. Jones Decl. ¶ 17. As noted above, ICE previously provided a field titled "Detainer Prepare Date" in responding to a virtually identical request. According to Jones, ICE did *not* provide this field, let alone any other data, in responding to Plaintiffs' August 2016 Request because:

> A response to [request 22] required a STU analyst to conduct [the following] additional research/analysis/assumptions/calculations: (1) the analyst had to assume that for a single alien identified as a Secured Communities removal match, ICE issued a single detainer,

---

[9] In the August 2016 Request, request 22 actually refers to a "I-247/I-247D" instead of a detainer. As noted above, *see supra* note 5, ICE issues detainers on some variation of a "I-247" form.

> when it is possible more than one was issued and this detainer may or may not be responsive to the Secure Communities identification or associated removal; (2) and it then required that the analyst assume that the removal following an issuance of a detainer was the result of the detainer and thus the implied Secure Communities match. However, the EID/IIDS contains no data point to reflect that ICE removed the alien as a result of a detainer. The analyst was required to create a new data model to (3) identify the relationship between detainers and removals; (4) analyze if the detainer preparation date falls prior to the removal associated with the Secured Communities match to identify the implied relationships; and, (5) create a calculation based upon the findings to create a new record that did not previously exist, and is not a data point or relationship that ICE currently tracks in the EID or IIDS databases.

Suppl. Jones Decl. ¶ 17. This explanation makes little sense to the court. It is not at all clear why an analyst would have to assume that only a single detainer exists, when Plaintiffs simply sought to know whether *a* detainer exists. Furthermore, as Plaintiffs point out, they do not seek information about individuals removed "as a result of a detainer." Pls.' Mot., Mem. of P. & A. in Supp. of Pls.' Mot. & in Opp'n to Def.'s Mot. [hereinafter Pls.' Mem.], at 36. Rather, their request pertains to the date of issuance of any detainer issued prior to the removal of a person pursuant to the Secure Communities Program—not whether there is a causal connection between the detainer, if one exists, and the removal. *Id.*; *see also* Pls.' Reply Mem. in Further Supp. of Pls.' Mot., ECF No. 19, Second Decl. of Susan B. Long, ECF No. 19-1 [hereinafter Suppl. Long Decl.], ¶ 46. Jones fails to meaningfully address this argument in her supplemental declaration, *see* Suppl. Jones Decl. ¶ 17; instead, she simply reiterates her previous position that there is no data value identifying whether "a removal is a result of a detainer form being prepared operationally," *id.* ¶ 26. *Compare* Jones Decl. ¶ 50, *with* Suppl. Jones Decl. ¶ 17.

Jones's explanations as to the remaining requests referenced in her declarations fall short for similar reasons. These explanations not only lack sufficient detail, *see, e.g.*, Suppl. Jones Decl.

13

¶ 17 (discussing request 74[10]), but they also are premised on a contention that is indirectly called into question by Plaintiffs' evidence concerning other requests that fall within this first category.[11] Thus, the court finds that summary judgment is inappropriate as to the first category of requests.

B.

The court reaches the same conclusion with respect to the second category of requests—requests 26, 27, 54, 55, 57, 60, 61, 62, 64, 65, and 75. *See* Suppl. Jones Decl. ¶ 20; *see also id.* ¶ 19 (noting that, as with the first category of requests, in order to provide data responsive to the second category, an STU analyst would need to "research potential data values in [the EID] [as well as] the operational use of those values inputted by officers that do exist," and "make further assumptions that these data values satisfy the intent of the requested terms"); *id.* (explaining that the "additional analysis" would include "the creation of calculations and new data search and query methodologies as they relate to data that ICE does not track in the manner . . . requested"). As with the first category, Jones only offers an explanation as to a handful of requests, *see id.* ¶ 19 (addressing only requests 55 and 75), and even those explanations lack sufficient detail to allow the court to conclude that responding to the requests would require the creation of new data points,

---

[10] Jones incorrectly refers to this request as request 18.

[11] Jones's brief discussion of requests 70 and 74 are premised on the contention that "providing yes/no responses in place of empty data sets" requires the creation of new records. *See* Suppl. Jones Decl. ¶ 9; *see also id.* ¶ 17. Plaintiffs, however, have presented evidence suggesting that the agency may not have created "yes/no responses," at least with respect to *some* requests that fall within this first category. In her supplemental declaration, Plaintiff Susan Long states that ICE has provided blank data points—even in response to the requests following the "yes/no" format. *See* Suppl. Long Decl. ¶ 54–55. For example, Long explains that for the disappearing field "Final Order Yes No," which corresponds with requests 66 and 68, *see supra*, the spreadsheet ICE provided in response to Plaintiffs' December 2015 Request "contained a total of 1,639 entries with the value of 'NO' recorded, 71,698 entries with the value of 'YES' recorded, and 316,002 entries that were blank," Suppl. Long Decl. ¶ 55. If ICE merely created yes/no entries that did not previously exist, as Jones claims, then Long posits that "it is unlikely that the data would sometimes record 'NO' and other times leave an entry blank to indicate the same thing—that a no final order had been issued." Suppl. Long Decl. ¶ 55.

While the examples cited by Long pertain to requests that are not among those specifically addressed by Jones in her declarations, *compare id.*, *with* Suppl. Jones Decl. ¶¶ 9, 17, Jones expressly intends her discussion of the aforementioned requests to serve as an example for *all* requests that fall within the first category, *see* Suppl. Jones Decl. ¶¶ 17–18. Thus, contradictory record evidence as to some requests gives the court pause as to others, particularly when coupled with the overall lack of detail offered in support of those other requests specifically referenced by Jones.

as opposed to the extraction and compilation of existing ones. Because ICE concedes that the latter action is required under FOIA, *see* Def.'s Mem. at 7, and instead argues that Plaintiffs' requests require the agency to undertake "additional efforts" that constitute the creation of a new record, *see id.* at 9; *cf.* Def.'s Reply at 3–6, it is important that the court be able to determine precisely what those efforts would entail. The court cannot make that determination on the present record. *See, e.g.*, Pls.' Mem. at 26 (explaining that, despite the agency's attempt to "trifurcate the issue," the three-step process described by Jones in discussing the second category of requests, *see generally* Jones Decl. ¶ 52, "collapse[s] into one familiar requirement"—that ICE search for fields and data elements in the EID that correspond with Plaintiffs' requests—under closer scrutiny); Suppl. Jones Decl. ¶ 13 (reiterating, in response to Plaintiffs' argument, that the agency's additional analysis "included the creation of calculations and new data search and query methodologies," without any further explanation).

\* \* \*

In sum, while ICE is correct that its decision to make certain discretionary disclosures in the past does not undermine its claim that such disclosures are not required under FOIA, the court is not persuaded that the "disappearing fields" fit that bill here, at least based on the present record. Stated differently, while an agency can change its mind, the court is not convinced that the reasons offered by ICE in this case justify its change of heart. As discussed above, most of the reasons offered by ICE are neither request nor data-point specific. And, even to the extent ICE's declarant addresses a particular request or data point in her declarations, she relies upon generic explanations and hyper-technical rhetoric to describe the "additional analysis" purportedly demanded by Plaintiffs' requests. This makes it difficult for the court to discern whether producing the

"disappearing fields" in response to Plaintiffs' August 2016 Request truly requires ICE to create new agency records.

IV.

In light of the foregoing, the court denies Defendant's Motion for Summary Judgment, ECF No. 11, and Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 12, without prejudice. The parties shall appear for a Status Conference on October 10, 2018, at 10:00 a.m. in Courtroom 10 to discuss further proceedings in this matter.

Dated: September 28, 2018

Amit P. Mehta
United States District Judge